IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

ALEJANDRO JURADO JIMENEZ et al., )
)
Plaintiffs, )
) Civil Action No. 12 cv 209
v. )
) Judge Griesbach
GLK FOODS, LLC and RYAN A. DOWNS, )
)
Defendants. )
)
)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PROCEED AS A COLLECTIVE ACTION AND FOR APPROVAL OF NOTICE TO 2010-2011 H-2B WORKERS**

This is an action by migrant agricultural workers to recover unpaid wages, liquidated damages, and other relief pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1871, and Wisconsin statutory and common law. Plaintiffs' FLSA claims, set forth in Counts I and II, allege that defendants (1) shifted travel, recruitment, and immigration-related costs to their H-2B guest worker employees which in turn unlawfully brought plaintiffs' and other H-2B workers' first week wages below the federal minimum wage and (2) failed to pay their H-2B workers overtime for all overtime worked. Certain of these workers, identified in Count II, also allege being required to work off-the-clock.

The FLSA claims are brought as an opt-in collective action under 29 U.S.C. § 216(b), which authorizes plaintiffs to proceed on behalf of themselves "and all other employees similarly situated." Plaintiffs now request this Court: (1) to conditionally certify Counts I and II as a collective action; (2) to approve the Proposed Notice and plaintiffs' proposal to organize and

1

advertise, via radio and flyers, a meeting in Mexico to meet with as yet unidentified H-2B workers; (3) to direct defendants to produce the names, last-known addresses, visa numbers and a copy of the passports of their 2010 and 2011 H-2B workers, and identify the towns in Mexico from which they recruited the putative FLSA class members within 14 days; and (4) to allow a four month opt-in period from the date of mailing.

Plaintiffs represent an opt-in class of Mexican migrant workers recruited to travel to Wisconsin to work in defendants' sauerkraut cannery in Bear Creek, Wisconsin. Compl. at ¶¶ 12, 17. Plaintiffs and putative class members worked lawfully in the United States pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), which authorizes employers to obtain temporary visas for foreign workers ("H-2B workers") after obtaining certification by the U.S. Department of Labor that U.S. workers were not available. *Id.* ¶ 10. In order to obtain certification, defendants averred that all H-2B workers would perform the same job duties, work in the same location, over the same time period (August – November), and be paid the same hourly wage. *Id.* ¶ 13. In the 2010 and 2011 seasons, defendants were approved by the Department of Labor to employ 110 and 143 H-2B workers, respectively. *Id.* ¶ 16.

## I.   Plaintiffs Were Subjected to Common Unlawful Employment Practices.

Defendants subjected all of the plaintiffs and the other H-2B workers to common FLSA violations in both 2010 and 2011. First, defendants violated the FLSA minimum wage requirements during the first work week of 2010 and 2011 by failing to reimburse the plaintiffs for visa processing, travel expenses, and other costs incurred for defendants' benefit. This drove the workers' first week wages below minimum wage. *See Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002) (finding FLSA violation where employer's failure to reimburse expenses drove H-2A workers' first week wages below the minimum required by

2

law); *Travel and Visa Expenses of H-2B Workers Under the FLSA*, U.S. Department of Labor, Wage and Hour Division, Field Assistance Bulletin No. 2009-2 (August 21, 2009) ("employers are responsible for paying the transportation and visa expenses of H-2B employees, where shifting these costs to employees would effectively bring their wages below the FLSA minimum wage in their first workweek of employment") (attached as Ex. A, at A-1). In addition, in 2011, defendants failed to pay overtime wages for time worked in excess of forty (40) hours per week during the final weeks of work. Finally, defendants required some workers, in 2011, to work off-the-clock.[1]

### A. Failure to pay minimum wage during the first week of work in 2011 and 2010

Plaintiffs bore the costs of their H-2B visas. These costs included the visa application fee; the fee for the attorney, provided by defendants, who assisted in the preparation of the visa paperwork; the costs of travel, in buses provided by defendants, to Mexico City or to Matamoros, Mexico to be interviewed by the American consulate; lodging, at hotels selected by defendants; meals during the multi-day trip from their home villages to the worksite in Wisconsin; and the border entry fee.[2] These expenses were business expenses of the employer, incurred by the workers primarily for the benefit of the employer, and therefore should have been reimbursed by defendants in the first workweek. *See Arriaga,* 305 F.3d at 1242 (travel and visa costs "are an

---

[1] Plaintiffs are not required to show that every H-2B worker in 2011 suffered an off-the-clock violation. *See Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 580775, at *4 (N.D. Ill. Feb. 22, 2012) ("the mere fact that there may be some employees who did not work off-the-clock and who therefore will not opt-in … does not relieve [defendant] of its obligation to defend itself in a collective action formed by the employees who contend that they were required to do work off-the-clock.").

[2] Ex. B, Mr. Arroyo Garcia ¶¶ 12-31; Mr. Arroyo Lopez ¶¶ 12-25; Mr. Jurado Jimenez ¶¶ 10-26; Mr. Jurado Jurado ¶¶ 10-28, 35-49; Mr. Jurado Rangel ¶¶ 10-25, 34-53; Mr. Martinez Velez ¶¶ 10-23, 31-48; Mr. Robles Medina ¶¶ 10-26, 34-49; and Mr. Rosas Jurado ¶¶ 11-24, 32-46.

3

inevitable and inescapable consequence" of having foreign workers employed in the United States). In both 2010 and 2011, no worker received any reimbursement for such expenses in the first workweek.[3] In both years, the H-2B workers thus were effectively paid far less than minimum wage during their first week of work; in fact, several workers worked at a loss. In 2011, for instance, Mr. Arroyo Lopez was required to spend $1,614 to obtain his H-2B visa and work for defendants; he grossed only $414 during his first week of work.[4] Mr. Jurado Jurado grossed $227, but was required to expend $622.[5] The story was the same in 2010, except that the workers received a partial reimbursement of $121 at the end of the second week of work.[6] For instance, Mr. Robles Medina was required to pay $533, and he grossed only $314 during the first week of work.[7] Similarly, Mr. Rosas Jurado incurred $349 in expenses and grossed only $300 during his first week of work.[8] The defendants' practice of failing to reimburse H-2B workers' costs during the first workweek resulted in an across-the-board FLSA violation, and requires Count I be treated as a collective action.[9]

---

[3] Ex. B, Mr. Arroyo Garcia ¶¶ 36-37; Mr. Arroyo Lopez ¶ 34-35; Mr. Jurado Jimenez ¶ 30-31; Mr. Jurado Jurado ¶¶ 30, 53; Mr. Jurado Rangel ¶¶ 29, 57-58; Mr. Martinez Velez ¶¶ 26, 52-53; Mr. Robles Medina ¶¶ 30, 53-54; and Mr. Rosas Jurado ¶¶ 27, 50.

[4] Ex. B, Mr. Arroyo Lopez at ¶¶ 32-33.

[5] Ex. B, Mr. Jurado Jurado ¶¶ 51-52.

[6] Ex. B, Mr. Jurado Jurado ¶ 31; Mr. Jurado Rangel ¶ 30; Mr. Robles Medina ¶30-21; and Mr. Rosas Jurado ¶ 28-29.

[7] Ex. B, Mr. Robles Medina ¶¶ 27-29.

[8] Ex. B., Mr. Rosas Jurado ¶¶ 26-27.

[9] Plaintiffs relied on http://www.x-rates.com/d/MXN/USD/hist2011.html to determine the exchange rate for the 2010 expenses to be 12.766 Mexican pesos to one U.S. dollar and the rate for the 2011 expenses to be 12.2322 Mexican pesos to one U.S. dollar.

### B. Failure to pay overtime and requiring workers to work off the clock in 2011

In 2011, defendants failed to pay workers overtime wages for time worked in excess of forty (40) hours per week during the final weeks of work. As indicated in the paystubs of the workers who have submitted affidavits, in the week ending September 18, 2011 each affiant was paid only the standard hourly rate for nine overtime hours.[10] In addition, in the week ending September 25, 2011, Mr. Arroyo Garcia, Mr. Arroyo Lopez, and Mr. Robles Medina were paid the standard hourly rate for 31 overtime hours.[11]

In addition, Mr. Rosas Jurado and Mr. Jurado Rangel affirm that after being fired on September 19, 2011, they worked that entire day. Ex. B, Mr. Rosas Jurado ¶ 54; Mr. Jurado Rangel ¶ 60. The next day, defendants arranged for a bus to take the fired workers to Laredo, Texas. Prior to boarding the bus, they received their final paychecks. *Id.* These paychecks did not contain any compensation for the eight hours worked on the day they were fired. *Id.* Mr. Rosas Jurado spoke to other workers on the bus to Laredo who had this same experience. *Id.* ¶55. Defendants' uniform payment practices resulted in common FLSA violations and Count II should proceed as a collective action.

### II. Plaintiffs Have Established That They Are Similarly Situated to Other H-2B Workers Employed by Defendants for Purposes of § 216(b).

Section 216(b) of the FLSA gives workers the right to sue collectively on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b). Most courts, including

---

[10] Ex. A., Mr. Arroyo Garcia ¶ 38 ; Mr. Arroyo Lopez ¶ 36; Mr. Jurado Jimenez ¶ 32; Mr. Jurado Jurado ¶54; Mr. Jurado Rangel ¶59; Mr. Martinez Velez ¶ 54; Mr. Robles Medina ¶ 55; and Mr. Rosas Jurado ¶51.

[11] Ex. B, Mr. Arroyo Garcia ¶ 38; Mr. Arroyo Lopez ¶ 36; Mr. Robles Medina ¶ 55.

this one, have adopted a two-step approach to determine whether the representative plaintiffs are "similarly situated" to the potential plaintiffs. In *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-488, 2008 WL 5263750, at *2 (E.D. Wis. Dec. 18, 2008), this Court explained:

> During the first step, the court must determine whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. If so, notice may be sent to other potential members of the class. Then, typically upon a defense motion for decertification at the close of discovery, the court proceeds to step two, at which point it must determine whether plaintiffs who have opted in are, in fact, similarly situated.

*Id.* (internal citations omitted). The first step, often called conditional certification, "is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). It is well-settled that the conditional certification standard should be generously applied to effectuate the FLSA's remedial purpose and to permit workers to pursue their FLSA claims collectively. *See Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (quotation marks omitted) (standard "typically results in conditional certification of a representative class."); *Howard v. Securitas Security Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *5, 8 (N.D. Ill. Jan. 20, 2009) (necessary factual showing is "minimal" and "modest").

Courts have found complaint allegations, affidavits, and opt-in consent forms to be sufficient evidence to conditionally certify a representative action. *See, e.g., DeKeyser*, 2008 WL 5263750, at *3-5 (conditionally certifying class of approximately 4,000 based on seven affidavits, 67 opt-in forms, and allegations in complaint)*; Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629-30 (W.D. Wis. 2009) (conditionally certifying class of hundreds based on five

6

declarations and complaint); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (affidavits by three plaintiffs "sufficient to constitute a preliminary showing" that farmworkers were similarly situated for collective action purposes). Plaintiffs easily satisfy the lenient standard for conditional certification of FLSA claims.

First, defendants' applications to the Department of Labor establish that all H-2B workers would be treated uniformly. They would all work from 7:00 a.m. to 4:00 p.m. as "trim line operators," described by defendants as required to "[c]ut, clean, trim, core, shred, and dump cabbage into barrels; add salt, cover barrels with lid; weigh barrels and apply labels."[12] Ex. C, Defendants' 2011 and 2010 H-2B applications at C-6; C-16. Defendants' applications further certified that all the H-2B workers would work at the same location (*Id.* C-7; C-17); during the same months of the years (*Id.* C-4; C-14); and be paid the same hourly wage (*Id.* C-8; C-18). As to the alleged FLSA violations, plaintiffs have personal knowledge that the unlawful pay practices identified *supra*, at 3-5, affected the other H-2B workers because plaintiffs traveled from their homes in Mexico to Wisconsin with the other H-2B workers, lived in the same barracks with the other workers, observed the hours worked by the other workers, and worked alongside the other workers at a single worksite. Ex. B, Plaintiffs' Affidavits ¶ 8. Plaintiffs spoke to other H-2B workers about the fact that defendants did not reimburse them for in-bound travel or for recruitment or immigration expenses within the first week of work in 2010 or

---

[12] Although the DOL certification was limited to trim line operators, defendants required a few H-2B workers to operate a forklift and prepare meals for the H-2B workers. Ex. B, Plaintiffs' Affidavits at ¶ 8. "[P]laintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Jirak v. Abbott Labs, Inc.*, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008); *see also Smallwood v. Illinois Bell Telephone Co.*, 710 F. Supp. 2d 746, 750-51 (N.D. Ill. 2010) (similarity of jobs of putative class "not of ultimate import" at conditional certification stage).

7

2011.[13] In terms of the failure to pay overtime, in addition to the affidavit testimony cited *supra,* a sample of plaintiffs' paystubs from 2011 establish that they were not paid the overtime rate for time worked in excess of 40 hours per week for the last two weeks of work. Ex. D, multiple examples of plaintiffs' paystubs from the pay periods ending September 18 and September 25, 2011.

This case is particularly well-suited for conditional certification because of the undeniably strong interest in the litigation on the part of the putative class. *See DeKeyser*, 2008 WL 5263750, at *5 (noting, "[a]s sixty-seven individuals [out of a putative class of 4,000] have already opted into this litigation prior to the dissemination of any court-approved notice, there is sufficient interest in the litigation to support conditional certification."). In this case, with a potential class of up to two hundred fifty-three (253) H-2B workers, sixty-two (62) individuals (almost a quarter of the total putative class) opted into the litigation prior to the filing of the complaint, and an additional 7 individuals have opted in since the filing of the Complaint.

Plaintiffs' FLSA claims raise exactly the sort of class-wide challenges contemplated by the FLSA's collective action procedure. *De Luna-Guerrero v. North Carolina Growers Ass'n.,* 338 F. Supp. 2d 649, 654-55 (E.D.N.C. 2004) (holding, "this action falls within the theoretical framework governing [FLSA] class actions," where H-2A plaintiffs allege defendants' reimbursement policy resulted in common FLSA minimum wage violations). Indeed, in nearly identical cases involving proposed classes of H-2B workers, district courts have routinely certified collective actions. *E.g.*, *Teoba v. Trugreen Landcare, LLC,* No. 10-CV-6132, 2011 WL 3555729 (W.D.N.Y Aug. 11, 2011) (approving notice to FLSA class of H-2B workers); *Gaxiola*

---
[13] Ex. B, Mr. Arroyo Garcia ¶ 37; Mr. Arroyo Lopez ¶ 35; Mr. Jurado Jimenez ¶ 31; Mr. Jurado Jurado ¶¶ 32; Mr. Jurado Rangel ¶¶ 31, 58; Mr. Martinez Velez ¶¶ 28, 53; Mr. Robles Medina ¶¶ 31, 54; and Mr. Rosas Jurado ¶ 29.

*v. Williams Seafood of Arapahoe, Inc.*, No. 4:08-CV-134-H(3) (E.D.N.C. June 16, 2009) (conditionally certifying collective action by H-2B workers) (Ex. E, at E-1); *Garcia v. Frog Island Seafood, Inc.*, 2:06-CV-46-BO (E.D.N.C. Aug. 13, 2007) (Ex. E, at E-8); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 1:05-CV-1473-CC (N.D. Ga. Oct. 18, 2005) (same) (Ex. E, at E-80); *see also Galaviz-Cedillo v. Georgia Cantaloupe Co., Inc.*, No. 5:05-CV-085 (DF) (M.D. Ga. June 22, 2005) (order conditionally certifying FLSA collective action by H-2A workers) (Ex. E, at E-99); *Vergara-Perdomo v. Wendell Roberson, Inc.*, No. 1:04-CV077 (WLS) (M.D. Ga. Feb. 9, 2005) (same) (Ex. E, at E-101); *Duque-Tovar v. Georgia Growers Ass'n.*, No. 1:03-CV-128-2 (WLS) (M.D. Ga. Sept. 29, 2004) (same) (Ex. E, at E-106).[14] This Court should conditionally certify as a collective action:

> All workers employed by defendants in Bear Creek, Wisconsin at any time in 2010 or 2011 pursuant to defendants' H-2B applications approved by the U.S. Department of Labor.

### III. The Proposed Notice, Sent Via Mail, and an In-Person Meeting Are Essential to Prevent the Expiration of Putative Plaintiff's Claims.

"No employee shall be a party plaintiff to [a FLSA collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought." 29 U.S.C. § 216(b); *see also Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1102 (7th Cir. 2004). Notice to putative class members of a pending FLSA claim must be "timely, accurate and informative." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Prompt FLSA notice is particularly important because the statute of limitations

---

[14] The orders cited herein that are not available on Westlaw are contained in Ex. E.

continues to run on each individual worker's claims until that worker files a consent with the court.  *See* 29 U.S.C. § 216(b).[15]

The facts and circumstances here create a compelling case for expeditious notice by multiple methods.  Most potential plaintiffs speak little or no English and are not well-versed in their legal rights in the United States. Ex. B, Plaintiffs' Affidavits ¶¶ 1, 6. Likewise, potential opt-in plaintiffs are migrant guestworkers from remote areas of Mexico with slow and unreliable mail service, who likely do not have regular access to international phone and fax services. *Id.* ¶¶ 3, 5.  Although many plaintiffs are from villages within proximity of each other, many do not know their fellow GLK co-workers' full names or addresses. *Id.* ¶ 9.

Plaintiffs seek approval to mail the proposed notice, in Spanish, to each class member for whom plaintiffs can obtain a mailing address from defendants. Ex. F, Proposed Notice.  To account for likely gaps in putative class members' contact information and poor mail delivery in rural Mexico, plaintiffs also request leave to organize and advertise an in-person meeting between plaintiffs' counsel and putative class members in Mexico.  Plaintiffs would advertise the meeting via radio announcements and, if practical, post flyers advertising the meeting in public locations in towns identified by defendants as towns from which workers were recruited.

Numerous courts have recognized the particular challenges in providing timely, accurate and informative notice to migrant workers, and have therefore approved a variety of methods. *See Lima v. International Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 801-802 (E.D. La. 2007) (permitting publication, radio and internet announcements and contact with consulates, in

---

[15] A request for a tolling of the statute of limitations is not ripe at this time, but plaintiffs reserve the right to request tolling later in these proceedings. *See Curless v. Great American Real Food Fast, Inc.*, No. 3:10-cv-00279, 2012 WL 143602, at*4-5 (S.D. Ill. Jan. 18, 2012). Furthermore, willful violations of FLSA extend the statute of limitations to three years. 29 U.S.C. § 255(a).

addition to direct mail); *Marroquin v. Canales,* 236 F.R.D. 257, 261-62 (D. Md. 2006) (approving the posting of copies of the notices at two dozen social service agencies and consulates, and announcing the lawsuit in multiple print media, radio and internet outlets); *Rivera v. Brickman Group, Ltd.*, No. 05-1518, 2006 WL 680926, at *2 (E.D. Pa. March 10, 2006) (permitting direct mail, telephone calls, hand-delivery of notices, and in-person meetings in Mexico).  In the present case, allowing notification of an in-person meeting will address the difficulties of international telephone and fax communication and will allow opt-in plaintiffs to return signed consent forms to plaintiffs' counsel in person rather than relying on the unpredictable mail and fax services. The radio announcement will assist in reaching putative class members, consistent with the "broad, remedial purpose" of the FLSA. *DeKeyser*, 2008 WL 5263750, at *5 (citations omitted).

**IV.     Defendants Should Disclose, Within 14 Days, Identifying Information for all 2010 and 2011 H-2B Workers, Including Production of Passports for all Workers and Identify the Towns in Mexico from which Workers Were Recruited.**

To facilitate notice to the FLSA class, plaintiffs request the Court to order defendants to produce, in a computer-readable format, the names, last-known addresses, telephone numbers, passport numbers and visa numbers for all H-2B workers employed by defendants in Bear Creek in 2010 or 2011, within 14 days.  *See, e.g., Howard,* 2009 WL 140126, at *9 (ordering defendants to turn over a list of names and last-known addresses of the putative class members in a computer-readable format within 10 working days); *Garcia*, *supra* (production within 14 days) (Ex. E, at E-9); *De Leon-Granados*, *supra* (same) (Ex. E, at E-82).

To facilitate plaintiffs' proposed in-person meeting, plaintiffs request the Court to order defendants (a) to produce copies of the H-2B workers' passports, because they indicate the town

11

where the person was born, and (b) identify the towns from which workers were recruited in 2010 and 2011.

## V. The Court Should Approve Plaintiffs' Proposed FLSA Notice and Consent Forms and Set a Four-Month Opt-In Period for Responses.

Plaintiffs believe a four month opt-in period, following the mailing of the notices, is appropriate here given the substantial logistical barriers to class member notice and participation. *See Diaz v. Quality Crab Co., Inc.*, No. 2:10-CV-15-H, 2011 WL 4498939, at *3 (E.D.N.C. Sept. 27, 2011) (six-month opt-in period for class of H-2B workers); *Gonzalez v. Ridgewood Landscaping, Inc.*, No. H-09-2992, 2010 WL 1903602, at *8 (S.D. Tex. May 10, 2010) (four-month opt-in period for Spanish speaking putative class members, many of whom live in other countries); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007) (nine-month opt-in period because many prospective plaintiffs are transient laborers); *Roebuck*, 239 F. Supp. 2d at 240-41 (nine-month FLSA notice period for class of migrant farm workers). In order for court-authorized notice to offer a meaningful opportunity to join this suit, plaintiffs' counsel will need at least four months to locate and effectively notify potential class members of their opportunity to opt-in to this action.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request this Court: (1) to conditionally certify Counts I and II as a collective action; (2) to approve the Proposed Notice and plaintiffs' proposal to organize a meeting in Mexico to meet with as yet unidentified H-2B workers; (3) to direct defendants to produce the names, last-known addresses, visa numbers and a copy of the passports of their 2010 and 2011 H-2B workers, and identify the towns from which

12

they recruited the putative FLSA class members within 14 days; and (4) to allow a four-month opt-in period from the date of mailing.

Dated: June 11, 2012

Respectfully submitted,

s/ Mary M. Rowland
One of Plaintiffs' Attorneys

Matthew J. Piers
Mary M. Rowland
José J. Behar
Jenna Miara
Attorneys for Plaintiffs
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
　　　　mrowland@hsplegal.com
　　　　jbehar@hsplegal.com
　　　　jmiara@hsplegal.com

Weeun Wang
Attorney for Plaintiffs
Farmworker Justice
1126 16th Street, N.W., Suite 270
Washington, D.C. 20036
(202) 293-5420 ext. 308
E-mail: wwang@farmworkerjustice.org

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2012, a copy of the foregoing documents was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated of the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

        s/ Mary M. Rowland
        One of Plaintiffs' Attorneys