**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| ALEJANDRO JURADO JIMENEZ et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 12 cv 209 |
| v. | ) | |
| | ) | Judge Griesbach |
| GLK FOODS, LLC and RYAN A. DOWNS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR AUTHORIZATION OF COURT-APPROVED NOTICE TO
H-2B WORKERS EMPLOYED IN 2010 AND/OR 2011**

This is an action by migrant workers from Mexico, who were recruited by defendants to work as "trim-line laborers," processing cabbage into sauerkraut at defendants' cannery plant in Bear Creek, Wisconsin. They came to work for defendants as part of the federal government's "H-2B" guest-worker program, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), which authorizes employers like GLK to recruit and employ foreign workers on a temporary basis, after certifying that domestic workers are not available to fill the positions.

For the 2010 season, GLK employed approximately 100 H-2B workers.[1] For the 2011 season, GLK recruited and imported approximately 100 H-2B workers.[2] Seventy-three H-2B

_____

[1] Factual statements made throughout this memorandum are supported by affidavits from nineteen workers as well as by documents produced by GLK in discovery. The affidavits are appended as Exhibit B to this memorandum. Regarding the number of H-2B workers employed by GLK during the seasons relevant here, *see* Ex. B, Mr. Martinez Velez Aff. ¶ 7; Mr. Jurado Rangel Aff. ¶ 7; Mr. Jurado Jurado Aff. ¶ 7; and Mr. Rosas Jurado Aff. ¶ 7; Mr. E. Robles Medina Aff. ¶ 7; Mr. Jimenez Rosas Aff. ¶ 7; Mr. Loredo Hernandez Aff. ¶ 7; Mr. Chavez

1

workers from 2010 and 2011 are already plaintiffs in this case. By this motion, plaintiffs seek authorization to send notice to the remaining approximately 100 guest workers who worked alongside them at GLK in 2010 and/or 2011, notifying them of the pendency of this action and the opportunity to "opt in."

Specifically, plaintiffs seek "conditional certification" pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C §§ 201-291 ("FLSA"), of the claim they have brought in Count I of their First Amended Complaint. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who, in turn become parties to a collective action only by filing written consent with the court. § 216(b)." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013).

The gravamen of plaintiffs' claim in Count I is that defendants violated the FLSA by failing to reimburse plaintiffs and other similarly situated H-2B workers, in their first week of work, for the expenses the workers incurred—for in-bound travel, recruitment, immigration and related costs—in order to work for GLK during the 2010 and 2011 seasons. A "collective action" under Section 216(b) provides a vehicle for aggregate litigation of FLSA claims, allowing "an

---

Rangel Aff. ¶ 7; Mr. Chavez Jimenez Aff. ¶ 7; Mr. J. Robles Medina Aff. ¶ 7; and Mr. Ruiz Mendoza Aff. ¶ 7.

[2] Ex. B, Mr. Dimas Jimenez Aff. ¶ 7; Mr. Arroyo Martinez Aff. ¶ 5; Mr. Arroyo Garcia Aff. ¶ 7; Mr. Martinez Velez Aff. ¶ 7; Mr. Jurado Rangel Aff. ¶ 7; Mr. Nuñez Perez Aff. ¶ 7; Mr. Jurado Jurado Aff. ¶ 7; and Mr. Rosas Jurado Aff. ¶ 7; Mr. Jurado Jimenez Aff. ¶ 7; Mr. Martinez Gonzalez Aff. ¶ 7; Mr. E. Robles Medina Aff. ¶ 7; Mr. Jimenez Rosas Aff. ¶ 7; Mr. Loredo Hernandez Aff. ¶ 7; Mr. Chavez Rangel Aff. ¶ 7; Mr. Aguilar Cardenas Aff. ¶ 7; Mr. Chavez Jimenez Aff. ¶ 7; Mr. J. Robles Medina Aff. ¶ 7; Mr. Arroyo Lopez Aff. ¶ 7; Mr. Mendez Baca Aff. ¶ 7; and Mr. Ruiz Mendoza Aff. ¶ 7.

Case 1:12-cv-00209-WCG   Filed 05/08/13   Page 2 of 21   Document 41

action to recover" wages under the FLSA "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Defendants' FLSA liability in this case arises as follows: Under the FLSA, if making H-2B workers' bear the out-of-pocket expenses they incurred for in-bound travel, recruitment, and immigration fees would "effectively bring their wages below the FLSA minimum wage in their first workweek of employment," then an H-2B employer must reimburse those costs to the workers, by or before the end of the workers' first workweek, to avoid that outcome.[3]

Every one of the H-2B workers employed by GLK in 2010 and 2011 incurred expenses of this kind, sometimes referred to, in shorthand, as "*Arriaga* expenses, *see e.g., Arriaga v. Florida Pacific Farms, LLC,* 305 F.3d 1228 (11th Cir. 2002), in order to work for GLK. None of them were reimbursed by GLK for these expenses before or by the end of the first workweek. And the wage amounts they received, reduced by the unreimbursed expenses they had incurred, uniformly pushed each of their first week's wages below the federally-mandated and guaranteed minimum wage (which cannot be modified by contract or otherwise[4]). *See* Ex. C, Ms. Garreton Chavez Aff. ¶ 9. All of them therefore share a common claim for reimbursement, making a "collective action" under FLSA § 216(b) appropriate in this case.

Accordingly, plaintiffs now move for a court order: (1) conditionally certifying Count I as a collective action; (2) approving both the Proposed Notice attached hereto as Exhibit A and

---

[3] *Travel and Visa Expenses of H-2B Workers Under the FLSA*, U.S. DOL Wage and Hour Division, Field Assistance Bulletin No. 2009-2 (August 21, 2009) (attached as Ex. F, at 1).

[4] *Molina v. First Line Solutions, LLC*, 566 F. Supp. 2d 770, 778 (N.D. Ill. 2007) (explaining that it is well settled that a worker's rights under the FLSA cannot be modified by contract).

3

plaintiffs' proposal to organize a meeting in Mexico to meet with as yet unidentified H-2B workers; (3) directing defendants to produce the names, last-known addresses, telephone numbers, visa numbers, and copies of the passports of their 2010 and 2011 H-2B workers and to identify the towns in Mexico from which they recruited their H-2B workers within 10 days; and (4) allowing a four-week opt-in period.

*       *       *

In section I of this memorandum, we summarize the material facts and show that this case meets the threshold requirement for issuing notice pursuant to § 216(b), specifically, that plaintiffs and other H-2B workers employed by GLK during 2010 and 2011 are "similarly situated" with regard to their claims for underpayment of first-week wages, as alleged in Count I of plaintiffs' First Amended Complaint. In section II, we describe the collective action procedure of 29 U.S.C. § 216(b), including its differences from Fed. R. Civ. P. 23. In section III, we discuss the terms of the Proposed Notice attached hereto as Exhibit A.

I.    **Plaintiffs and All Other H-2B Workers at GLK in 2010 and 2011 Are Similarly Situated For Purposes of § 216(b).**

The work that H-2B workers perform is almost always hard, unpleasant, and poorly paid.[5] In fact, the almost universally unfavorable terms and conditions of H-2B employment are very often the reason why H-2B employers, like GLK, are in a position to certify, as required by

---

[5] *See generally* "Picked Apart: The Hidden Struggles of Migrant Worker Women in the Maryland Crab Industry," American University Washington College of Law and Centro de los Derechos del Migrante, Inc. (2010), *available at* http://www.cdmigrante.org/wp-content/uploads/2012/01/PickedApart.pdf (hereinafter "Picked Apart"); "Close to Slavery: Guestworker Programs in the United States," Southern Poverty Law Center (2d ed. 2013), *available at* http://www.gpn.org/splcenter.org.SPLCguestworker.pdf (hereinafter, "Close to Slavery"). Both reports are attached in Exhibit H.

federal law, that no domestic workers are available to fill the positions.[6] But federal law provides H-2B workers with some protections and among those protections is coverage under the FLSA. *Travel and Visa Expenses of H-2B Workers Under the FLSA*, U.S. DOL Wage and Hour Division, Field Assistance Bulletin No. 2009-2 (August 21, 2009) (Ex. F); *Teoba v. Trugreen Landcare LLC*, 769 F. Supp. 2d 175, 183 (W.D.N.Y. 2011); *De Leon-Granados v. Eller & Sons*, 581 F. Supp. 2d 1295, 1309-10 (N.D. Ga. 2008); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 124 (E.D.N.C. 2011).

Because H-2B employment is covered by the FLSA, H-2B workers enjoy the same protections against wage deductions and cost-shifting as other covered workers. In particular, as relevant to this case, covered workers are protected against having to bear unreimbursed expenses, incurred primarily for the benefit of the employer, when those expenses reduce their wages below the federally-guaranteed minimum wage. *See Marshall v. Root's Restaurant*, 667 F.2d 559, 560 (6th Cir. 1982) (finding FLSA violations from employer's failure to reimburse workers for required uniforms); 29 C.F.R. § 531.36(b) (restricting many wage deductions and shifting of costs "to the extent that they reduce the wages of the employee in any such workweek below the minimum required by the Act").

Count I of plaintiffs' First Amended Complaint in this case alleges a violation of this black-letter principle in the particular context of H-2B employment. As applied to H-2B employment, this rule against shifting employment-related expenses to employees means that, as a matter of law, H-2B employers must reimburse H-2B workers for the cost of their in-bound travel, recruitment, immigration and related expenses before or by the end of the first workweek,

---

[6] Ex. H, "Picked Apart," at 8-9; "Close to Slavery," at 21, 31.

5

if those expenses, left unreimbursed, would push the worker's wages for the first workweek below the federally-mandated minimum wage.[7] The gravamen of plaintiffs' claim in Count I is that: both in 2010 and 2011, GLK failed to reimburse its H-2B workers for the cost of their in-bound travel, recruitment, immigration, and related expenses before or by the end of the first workweek; that as a result of the magnitude of the expenses the workers incurred, and GLK's failure to reimburse them, the workers' effective wages for their first workweek consequently fell significantly below the federally-mandated statutory minimum wage; and that, therefore, a judgment should be entered against the defendants for violation of the FLSA, requiring them to pay back wages owed to the workers, to raise their first week's wages to the federally-mandated minimum.

For purposes of this motion, the expenses that GLK's H-2B workers uniformly incurred, GLK's failure to reimburse them before or by the end of their first workweek, and the resulting effect on the workers' first week's wages, are established by:

---

[7] *See Arriaga v. Florida Pacific Farms, LLC,* 305 F.3d at 1242-1244 (holding that visa and transportation expenses incurred by H-2A workers are primarily for the benefit of the employer and must be reimbursed if they bring the first weeks' wages below the minimum wage); *Teoba v. Trugreen Landcar*e, *LLC*, 769 F. Supp 2d at 185 (extending *Arriaga*'s holding to H-2B workers and finding that recruiting fees, transportation and visa costs must be reimbursed if they bring the worker's first weeks wages below the minimum wage); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d at 127 (extending *Arriaga* holding to H-2B workers and finding employer responsible for visa expenses and transportation fees); *Rivera v. Brickman Group, Ltd.*, No. 05-cv-1518, 2008 WL 81570, *2 (E.D. Pa. Jan. 7, 2008) (same); *Rosales v. Hispanic Employee Leasing Program, LLC*, No. 1:06-CV-877, 2008 WL 363479 (W.D. Mich. Feb. 11, 2008) (same); *De Leon-Granados*, 581 F. Supp. 2d at 1312 (finding H-2B workers incurred passport, visa and transportation fees primarily for benefit of employer in violation of FLSA); *See* Ex. F, *Travel and Visa Expenses of H-2B Workers Under the FLSA*, U.S. DOL Wage and Hour Division, Field Assistance Bulletin No. 2009-2 (August 21, 2009).

(a)     The affidavits of 19 plaintiffs that have been filed in support of this motion, which document and establish the categories and magnitude of the visa, travel, recruitment costs, and related expenses they and the rest of their cohort incurred to work for GLK;

(b)     Defendants' payroll records, produced in discovery in this case;

(c)     Defendants' interrogatory responses and third-party deposition testimony, submitted with this memorandum; and

(d)     The affidavit of Monica Garreton Chavez, a paralegal for plaintiffs' counsel, who, having reviewed the plaintiffs' records and the payroll records produced by GLK in discovery in this case, summarizes those records, and the proof they provide both (1) that no H-2B worker was reimbursed for the expenses they incurred for the benefit of GLK and (2) that the wage amounts paid for the affiants' first workweek, after taking into account the expenses they incurred, fell short, indeed hundreds of dollars short, of the federally-mandated minimum.

This evidence makes a more than ample showing that all H-2B workers employed by GLK in 2010 and 2011 are "similarly situated" for purposes of FLSA § 216(b), making conditional certification of an opt-in collective action appropriate with regard to Count I of plaintiffs' First Amended Complaint.

### A.  The H-2B Workers Employed By GLK in 2010 and 2011 Are Each Similarly Situated In That They All Incurred Considerable Expenses, For GLK's Benefit, In Order To Work For GLK.

As evidenced by the 19 affidavits from plaintiffs submitted in support of this motion, the plaintiffs in this case and the rest of their cohort uniformly made large cash outlays, often with considerable hardship, in order to come to work for GLK. They would not have made these outlays except to work at GLK. All of the workers uniformly paid more than $348 U.S. dollars in 2010 and $307 U.S. dollars in 2011 to start work with GLK, for one or more of the following items: (a) "recruitment" fees;[8] (b) fees to obtain Mexican passports; (c) visa processing fees; (d)

---

[8] *See* Ex. H, "Picked Apart," *supra* n. 5, at 14-15; "Close to Slavery," *supra* n.5, at 9-13.

Case 1:12-cv-00209-WCG   Filed 05/08/13   Page 7 of 21   Document 41

travel expenses; (d) lodging, food, and other subsistence while their visas were processed and

approved; and (e) border-crossing fees charged by USCIS.[9]

As a matter of law, the workers incurred these *Arriaga* expenses for GLK's benefit.

*Arriaga*, 305 F.3d at 1236; *Salazar-Martinez*, 781 F. Supp. 2d at 195; *De Leon-Granados*, 581 F.

Supp. 2d at 1308; *Travel and Visa Expenses of H-2B Workers Under the FLSA*, U.S. DOL Wage

and Hour Division, Field Assistance Bulletin No. 2009-2 (August 21, 2009) (Ex. F). And

factually, GLK agents oversaw the recruitment, travel and immigration process for the workers,

including organizing transportation, accommodations and visa processing for each group of GLK

workers and largely determined both the categories and magnitude of the *Arriaga* expenses the

workers incurred. The legal claim for reimbursement of these expenses is common to all the

workers, they share a unitary legal theory, and the majority of expenses incurred by the workers

are also uniform, since they stayed in the same hotels, traveled in the same buses, and obtained

---

[9] There is some variation in the specific expenses incurred by each worker (in that, for example,
some paid recruitment fees while others did not). As a matter of law, these variations are
immaterial (and, indeed, minor variations in damages exist in virtually every FLSA collective
action). The variations are immaterial because in every case, notwithstanding minor variations in
the precise expenses incurred, every worker employed by GLK as an H-2B worker in 2010 or
2011 incurred expenses that: (a) were not reimbursed, (b) are recoverable under the FLSA and
the rule in *Arriaga,* and (c) were so large as to reduce the workers' first week's wages below the
federally- guaranteed minimum. All the workers therefore share a common legal claim for
reimbursement of *Arriaga* expenses under a unitary legal theory, namely, that the amounts they
incurred are reimbursable under the FLSA and *Arriaga,* that GLK's failure to reimburse their
*Arriaga* expenses reduced their first week's wages below the federally-mandated minimum, and
that the resulting payment of wages below the federally-mandated minimum violated the FLSA.
*See* Ex. B, Mr. Dimas Jimenez Aff. ¶ 36; Mr. Arroyo Martinez Aff. ¶ 34; Mr. Arroyo Garcia Aff.
¶ 35; Mr. Martinez Velez Aff. ¶¶ 28, 58; Mr. Jurado Rangel Aff. ¶¶ 30, 62; Mr. Nuñez Perez Aff.
¶ 34; Mr. Jurado Jurado Aff. ¶¶ 34, 59; and Mr. Rosas Jurado Aff. ¶¶ 32, 58; Mr. Jurado Jimenez
Aff. ¶ 31; Mr. Martinez Gonzalez Aff. ¶ 33; Mr. E. Robles Medina Aff. ¶¶ 32, 61; Mr. Jimenez
Rosas Aff. ¶¶ 31, 59; Mr. Loredo Hernandez Aff. ¶¶ 34, 58; Mr. Chavez Rangel Aff. ¶¶ 29, 34;
Mr. Chavez Jimenez Aff. ¶¶ 28, 56; Mr. J. Robles Medina Aff. ¶¶ 32, 61; Mr. Arroyo Lopez Aff.
¶ 36; Mr. Mendez Baca Aff. ¶ 30; and Mr. Ruiz Mendoza Aff. ¶¶ 33, 63.

8

visas in the same location at the same time.[10] With regard to the categories and magnitude of the expenses they incurred, and the benefit to GLK of their having incurred them, the workers are all "similarly situated" for purposes of Section 216(b).

### B. GLK Treated All The Workers Similarly, Reimbursing None Of Them For Their Travel, Immigration and Related Expenses At or Before The End of their First Work Week.

GLK's failure to reimburse *Arriaga* expenses to its H-2B workers is established by GLK's own payroll records. Those records document the number of hours worked by H-2B workers during their first workweeks in 2010 and 2011, the wages they received, and the hourly wage rates paid. They show no reimbursements. [11]

In addition, GLK's failure to reimburse these expenses is also established by the 19 affidavits from plaintiffs submitted with this memorandum, which likewise attest that no such reimbursements were made to any H-2B worker in the first workweek.[12]

---

[10] GLK workers traveled each year in 3 to 4 groups as determined by GLK agents. GLK agents organized the travel and visa process and, in some cases, accompanied the workers. As a result, the workers in each group incurred substantially the same *Arriaga* expenses. Ex. B, Mr. Dimas Jimenez Aff. ¶¶ 14-29; Mr. Arroyo Martinez Aff. ¶¶ 10-28; Mr. Arroyo Garcia Aff. ¶¶ 12-29; Mr. Martinez Velez Aff. ¶¶ 14-25, 37-55; Mr. Jurado Rangel Aff. ¶¶ 14-27, 41-60; Mr. Nuñez Perez Aff. ¶¶ 10-27; Mr. Jurado Jurado Aff. ¶¶ 15-31, 41-56; and Mr. Rosas Jurado Aff. ¶¶ 14-29, 41-56; Mr. Jurado Jimenez Aff. ¶¶ 14-31; Mr. Martinez Gonzalez Aff. ¶¶ 12-26; Mr. E. Robles Medina Aff. ¶¶ 14-29, 42-58; Mr. Jimenez Rosas Aff. ¶¶ 15-28, 39-56; Mr. Loredo Hernandez Aff. ¶¶ 15-31, 43-58; Mr. Chavez Rangel Aff. ¶¶ 14-26, 39-55; Mr. Chavez Jimenez Aff. ¶¶ 13-26, 37-53; Mr. J. Robles Medina Aff. ¶¶ 13-29, 42-58; Mr. Arroyo Lopez Aff. ¶¶ 13-31; Mr. Mendez Baca Aff.¶¶ 13-30; and Mr. Ruiz Mendoza Aff. ¶¶ 12-30, 44-60.

[11] *See* Ex. C, Ms. Garreton Chavez Aff. ¶ 9.

[12] Ex. B, Mr. Dimas Jimenez Aff. ¶¶ 30-31, 42; Mr. Arroyo Martinez Aff. ¶¶ 35-36; Mr. Arroyo Garcia Aff. ¶¶ 36-37; Mr. Martinez Velez Aff. ¶¶ 29, 35, 60-61, 67; Mr. Jurado Rangel Aff. ¶¶ 30, 38, 63-64, 70; Mr. Nuñez Perez Aff. ¶¶ 28-29, 42; Mr. Jurado Jurado Aff. ¶¶ 35, 60, 65; and Mr. Rosas Jurado Aff. ¶¶ 32, 38, 59, 63, 66; Mr. Jurado Jimenez Aff. ¶¶ 35-36, 41; Martinez

Finally, GLK's failure to reimburse these expenses is also confirmed by GLK's response to plaintiffs' interrogatory No.11 and by deposition testimony. Plaintiffs' Interrogatory No. 11 asked defendants to "identify for each H-2B worker, the amount(s) and date(s) that … you paid or reimbursed the worker for recruitment, immigration or travel expenses" *See* Ex. E. Defendants' response states as follows:

> GLK Foods contracted with LaborQuest for recruiting, visa processing and transportation of H2B workers in 2010 and 2011 and with Dianne Guerrero and the Associates in 2006. Upon information and belief, LaborQuest subcontracted some of the responsibilities to Florida East Coast Travel [sic] Inc. GLK Foods paid LaborQuest for its services and related expenses.

This response does not contend that GLK reimbursed any H-2B worker for the *Arriaga* expenses he incurred. Instead, it states that "upon information and belief" LaborQuest and Florida East Travel Services, as agents for Defendants, may have reimbursed H-2B workers for their expenses. Representatives of each company, however, testified at their depositions that neither company provided any reimbursements to H-2B workers and such reimbursements were the responsibility of defendants. Deposition of Jorge Garcia 119:9-124:6; 136:7-16; 161:16-24; 164:1-7; Deposition of Thomas Robinson 40:20–48:10; 281:11–291:23; 335:14–340:17.

### C. As A Result of the Expenses The Workers Incurred, and GLK's Failure To Reimburse Them For Those Expenses, The Workers' Earnings For Their First Workweek Fell Well Below The Federally-Mandated Minimum Wage.

The plaintiffs' affidavits and defendants' business records provide the Court with evidence sufficient to establish both the *Arriaga* expenses that the workers incurred the amounts

---

Gonzalez Aff. ¶¶ 27-28, 39; Mr. E. Robles Medina Aff. ¶¶ 33-34, 62-63, 70; Mr. Jimenez Rosas Aff. ¶¶ 32, 61-62, 67; Mr. Loredo Hernandez Aff. ¶¶ 34, 61, 66; Mr. Chavez Rangel Aff. ¶¶ 30, 32, 60-61, 66; Mr. Chavez Jimenez Aff. ¶¶ 29, 31, 35, 58-59, 64; Mr. J. Robles Medina Aff. ¶¶ 33-34, 39, 62-63, 70; Mr. Arroyo Lopez Aff. ¶¶ 36-37, 45; Mr. Mendez Baca Aff. ¶¶ 31-32, 39; and Mr. Ruiz Mendoza Aff. ¶¶ 34, 41, 64-65, 69.

they received in wages for their first workweek, and simple arithmetic establishes that the difference between *Arriaga* expenses incurred and wages received resulted in earnings *well below* the federally mandated minimum; indeed, many workers worked at a loss during their first week at GLK.[13]

As evidence of this outcome and its uniformity, plaintiffs are submitting the affidavits of 19 plaintiffs, all attesting to the same predicament: large expenditures to come to Wisconsin, unreimbursed by the defendants during the first week of work, reducing their first week's earnings below the minimum wage. The affiants have personal knowledge that defendants' unlawful practices affected all H-2B workers across-the-board because the affiants traveled together with the other workers from Mexico to Wisconsin, lived in the same barracks, and worked side-by-side in Wisconsin.

The affidavits submitted with this motion provide specifics. In 2011, for instance, Mr. Arroyo Lopez was required to spend approximately $1,614 to obtain his H-2B visa and work for defendants; he grossed only $414.40 during his first week of work.[14] Mr. Chavez Jimenez was required to expend about $720 but grossed only $338.77.[15] Mr. Nuñez Perez was required to

---

[13] Ex. B, Mr. Dimas Jimenez Aff. ¶ 36; Mr. Arroyo Martinez Aff. ¶ 34; Mr. Arroyo Garcia Aff. ¶ 35; Mr. Martinez Velez Aff. ¶¶ 29, 59; Mr. Jurado Rangel Aff. ¶¶ 30, 62; Mr. Nuñez Perez Aff. ¶ 34; Mr. Jurado Jurado Aff. ¶¶ 34, 59; and Mr. Rosas Jurado Aff. ¶¶ 32, 58; Mr. Jurado Jimenez Aff. ¶ 34; Martinez Gonzalez Aff. ¶ 33; Mr. E. Robles Medina Aff. ¶¶ 32, 61; Mr. Jimenez Rosas Aff. ¶¶ 32, 60; Mr. Loredo Hernandez Aff. ¶¶ 34, 60; Mr. Chavez Rangel Aff. ¶¶ 30, 59; Mr. Chavez Jimenez Aff. ¶¶ 29, 57; Mr. J. Robles Medina Aff. ¶¶ 32, 61; Mr. Arroyo Lopez Aff. ¶ 35; Mr. Mendez Baca Aff. ¶ 30; and Mr. Ruiz Mendoza Aff. ¶ 63.

[14] Ex. B, Mr. Arroyo Lopez Aff. ¶¶ 30, 35.

[15] Ex. B, Mr. Chavez Jimenez Aff. ¶¶ 54, 57.

spend approximately $608 but grossed only $414.40.[16] Similarly, in 2010, plaintiffs worked for

wages far below the minimum wage in their first work week as a result of the recruitment, travel

and visa expenses they incurred.[17] Mr. Eduardo Robles Medina was required to pay about $500

but grossed only $298.30 during the first week of work.[18] Mr. Rosas Jurado incurred about $500

in expenses but grossed only $299.87 during his first week.[19]

      In addition, plaintiffs have submitted the affidavit of Ms. Garreton Chavez. Having

reviewed and summarized the payroll records produced by GLK, Ms. Garreton Chavez attests

that they show no reimbursements to H-2B workers for travel, immigration, or related expenses,

and that these during the first week of work in 2010 or 2011. Regarding the 19 affiants who

provide detailed accounts of their expenses that reduced the workers' first weeks' wages, Ms.

Garreton Chavez's analysis shows that their wages fell short, indeed hundreds of dollars short, of

---

[16] Ex. B, Mr. Nuñez Perez Aff. ¶¶ 27, 34.

[17] In 2011, the workers received no reimbursement at any time for travel, visa and recruitment. In 2010, according to defendants' payroll records, the workers received an additional $121 in their paychecks at the end of the *second* week of work. That payment may or may not have been intended as a reimbursement for expenses, but it only represented a fraction of the workers' actual expenses and, in addition, failed to comply with the FLSA's requirement of reimbursements by or before the end of the *first* week of work. *See* Ex. B, Mr. Jurado Jurado Aff. ¶ 35; Mr. Jurado Rangel Aff. ¶ 31; Mr. E. Robles Medina Aff. ¶33; and Mr. Rosas Jurado Aff. ¶ 33; Mr. J. Robles Medina Aff. ¶ 33; Mr. Martinez Velez Aff. ¶ 30; Mr. Loredo Hernandez Aff. ¶ 35; Mr. Chavez Jimenez Aff. ¶ 30, Mr. Chavez Rangel Aff. ¶ 31; Mr. Ruiz Mendoza Aff. ¶ 34; and Mr. Jimenez Rosas Aff. ¶ 33.

[18] Ex. B, Mr. Eduardo Robles Medina Aff. ¶¶ 29, 32.

[19] Ex. B., Mr. Rosas Jurado Aff. ¶¶ 29, 32.

Case 1:12-cv-00209-WCG   Filed 05/08/13   Page 12 of 21   Document 41

the federally-mandated minimum.[20] In several cases, the workers actually made less during their first week than they were required to pay in travel and visa expenses.[21]

These facts more than suffice to show that all H-2B workers employed by GLK in 2010 and 2011 are similarly situated under the FLSA Count I of plaintiffs' First Amended Complaint as an opt-in collective action under Section 216(b).

## II. The Conditions For Conditional Certification of an FLSA Opt-In Collective Action Have Been Met.

Many courts, including this one, have adopted a two-step approach for evaluating motions to conditionally certify an FLSA collective action and for court-authorized notice under Section 216(b). *See DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-488, 2008 WL 5263750, *2 (E.D. Wis. Dec. 18, 2008).

As a "first step," courts determine whether the "plaintiff has demonstrated a 'reasonable basis' for believing that she is similarly situated to potential class members." *Schroeder v. Humana, Inc.*, No. 12-C-0137, 2012 WL 5931886, *4 (E.D. Wis. Nov. 27, 2012). Factual support for this showing typically is made "in the form of affidavits, declarations, deposition testimony, or other documents" in order to demonstrate "some 'factual nexus . . . or a common

_____

[20] Ex. C, Ms. Garreton Chavez Aff. ¶¶ 10,11. Plaintiffs relied on http://www.x-rates.com/average/?from=MXN&to=USD&year=2010 and http://www.x-rates.com/d/MXN/USD/hist2011.html to determine the exchange rate for the 2010 expenses to be 12.766 Mexican pesos to one U.S. dollar and the rate for the 2011 expenses to be 12.2322 Mexican pesos to one U.S. dollar.

[21] Ex B, Mr. Martinez Velez Aff. ¶¶ 29, 59; Mr. Jurado Jimenez Aff. ¶ 34; Mr. E. Robles Medina Aff. ¶ 32; Mr. Jimenez Rosas Aff. ¶¶ 32, 60; Mr. Loredo Hernandez Aff. ¶¶ 34, 60; Mr. Chavez Jimenez Aff. ¶¶ 29, 57; Mr. J. Robles Medina Aff. ¶ 32; Mr. Arroyo Lopez Aff. ¶ 35; Mr. Nuñez Perez Aff. ¶34; Mr. Jurado Jurado Aff. ¶¶ 34, 59; Mr. Jurado Rangel Aff. ¶¶ 30, 62; Mr. Rosas Jurado Aff. ¶ 32; Mr. Arroyo Martinez Aff. ¶ 34; Mr. Arroyo Garcia Aff. ¶ 35; Mr. Chavez Range Aff.l ¶¶ 30, 59; and Mr. Ruiz Mendoza Aff. ¶ 33.

13

policy that affects all the collective members.'" *Id.* (quoting *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011)). Although not a "mere formality," this is a "lenient standard." *Id.*

Subsequently, at "step two," after notice has been sent and members of the collective have had the opportunity to opt-in, the court determines "whether plaintiffs who have opted in "are, in fact, similarly situated." *Id* at *5.

The evidence submitted in connection with this motion amply satisfies plaintiffs' burden at "step one." Plaintiffs in this case have made far greater than a "modest factual showing" that "can connect them to 'other potential plaintiffs as victims of an unlawful practice.'" *Musch v. Domtar Industries, Inc.*, 252 F.R.D. 456, 458 (W.D. Wis. 2008) (quoting *Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006)).

GLK's recruitment, hiring and procurement of H-2B workers in 2010 and 2011 was standardized and implemented in such a way that recruitment, travel, visa and transportation processes and resulting *Arriaga* expenses for the workers were largely uniform. The workers brought to work for GLK were all subjected to the same unlawful practice – GLK effectively paid them less than the minimum wage in their first week of work by requiring them to bear the burden of *Arriaga* expenses, which they had incurred for the benefit of GLK.

The evidence submitted by plaintiffs in support of this motion would satisfy even Rule 23's more rigorous standards—although there are decades of precedent distinguishing the standards for conditionally certifying an FLSA opt-in collective action from the more rigorous

14

standards attendant to Rule 23 opt-out classes.[22] Plaintiffs' claim in Count I presents clear predominating questions that will "generate common answers" and will drive the resolution of the litigation for all H-2B workers employed by GLK during 2010 and/or 2011, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), and these common questions, and the corresponding common answers, include, at a minimum: (a) whether the FLSA requires reimbursement of recruitment, visa, travel, immigration and/or other related expenses if shifting them to H-2B workers would push their first week's wages below the federally mandated minimum; (b) which of those expenses must be reimbursed; and (c) the existence of GLK's across-the-board policy or practice of not reimbursing them to H-2B workers.

"The only individual issues [here]—issues found *in virtually every* class action in which damages are sought—concern the amount of harm to particular class members," *Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 363 (7th Cir. 2012) (emphasis added), and those kinds of differences in damages amounts are not an impediment to certification of an opt-in or opt-out class. Quite to the contrary.

As the Seventh Circuit emphasized in *Butler*, cases like this one are classic examples of instances in which aggregate litigation becomes "efficient not only in cost, but also in efficacy" for a straightforward reason: "the stakes" for any individual member of the collective "would be too small to justify the expense of suing," and the number of potential members of the collective

---

[22] *See Jirak v. Abbot Laboratories, Inc.*, 566 F.Supp.2d 845, 847 (N.D. Il. 2008); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004); *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1247 (11th Cir. 2003); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001); *Heckler v. DK Funding*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007); *Flores v. Lifeway Foods*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *see also Genesis Healthcare v. Symczyk*, 133 S. Ct. 1523, 1529 (2003) ("Rule 23 actions are fundamentally different from collective actions under the FLSA").

15

is in the dozens, not the thousands or millions. *Id.* at 362. In such cases, damages do not prevent

certification. Instead, "if necessary," damages can be addressed "by individual hearings to

determine the damages sustained by each class member" *after* a classwide determination of the

liability issue. *Id. See also Harris v. comScore, Inc.*, 2013 WL 1339262 *10 (N.D. Ill., April 2,

2013) (same).

Moreover, in this case, the damages incurred by the H-2B workers were standardized

expenses imposed or charged by the defendants rather than individually and uniquely incurred by

each worker. As part of GLK's recruitment process, GLK agents divided the workers into

groups. Each group traveled together on buses arranged by GLK, applied for visas with agents

designated by GLK, stayed in hotels chosen by GLK, and took taxis arranged by GLK agents.[23]

The visa, passport, and border crossing fees incurred by workers were also standardized.[24] As

such, the expenses incurred by the workers were generally standardized by GLK and are

therefore appropriate for collective action resolution.

---

[23] Ex. B, Mr. Chavez Jimenez Aff. ¶¶ 15-23, 41-51; Mr. Martinez Gonzalez Aff. ¶¶ 14-23; Mr. Jurado Jimenez Aff. ¶¶ 19-28; Mr. Rosas Jurado Aff. ¶¶ 15-25,44-53; Mr. Jurado Jurado Aff. ¶¶ 16- 27, 43-53; Mr. Nuñez Perez Aff. ¶¶ 13-24; Mr. Jurado Rangel Aff. ¶¶ 16-24, 45-57; Mr. Martinez Velez Aff. ¶¶ 15-22, 42-53; Mr. Arroyo Garcia Aff. ¶¶ 15-26; Mr. Arroyo Martinez Aff. ¶¶ 13-25; Mr. Ruiz Mendoza Aff. ¶¶ 16-26, 45-57; Mr. Mendez Baca Aff. ¶¶ 14-24; Mr. Arroyo Lopez Aff. ¶¶ 15-27; Mr. Chavez Rangel Aff. ¶¶ 15-23, 42-53; Mr. Jimenez Rosas Aff. ¶¶ 16-25, 43-54; Mr. Dimas Jimenez Aff. ¶¶ 15-26, Mr. E. Robles Medina Aff. ¶¶ 15-25, 43-55; Mr. Loredo Hernandez Aff.¶¶ 16-27, 44-55; and Mr. J. Robles Medina Aff. ¶¶ 14-25; 43-55.

[24] Ex. B, Mr. Dimas Jimenez Aff. ¶ 27; Mr. Arroyo Martinez Aff. ¶ 12, 26; Mr. Arroyo Garcia Aff. ¶¶ 27; Mr. Martinez Velez Aff. ¶¶ 14, 23, 38-39, 54; Mr. Jurado Rangel Aff. ¶¶ 15, 25, 41-44, 58; Mr. Nuñez Perez Aff. ¶¶ 12, 25; Mr. Jurado Jurado Aff. ¶¶ 15, 28, 41-42, 54; and Mr. Rosas Jurado Aff. ¶¶ 14, 6, 41-43, 54; Mr. Jurado Jimenez Aff. ¶¶ 14-16, 29; Martinez Gonzalez Aff. ¶¶ 12-13, 24; Mr. E. Robles Medina Aff. ¶¶ 14, 26, 56; Mr. Jimenez Rosas Aff. ¶¶ 15, 26, 40-42, 55; Mr. Loredo Hernandez Aff. ¶¶ 15, 28, 43, 56; Mr. Chavez Rangel Aff. ¶¶ 14, 24, 40, 54; Mr. Aguilar Cardenas Aff. ¶¶ 13-27; Mr. Chavez Jimenez Aff. ¶¶ 14, 24, 38-39, 52, 40-53; Mr. J. Robles Medina Aff. ¶¶ 13, 26, 56; Mr. Arroyo Lopez Aff. ¶ 28; Mr. Ruiz Mendoza Aff. ¶¶ 14, 27, 58; and Mr. Mendez Baca Aff. ¶¶ 13, 25.

This case is also particularly well-suited for conditional certification because of the already demonstrated strong interest on the part of the workers. *See DeKeyser*, 2008 WL 53750, at *5 (noting, "[a]s sixty-seven individuals [out of a putative class of 4,000] have already opted into this litigation prior to the dissemination of any court-approved notice, there is sufficient interest in the litigation to support conditional certification"). Out of a potential cohort of about 200 H-2B workers, sixty-two (62) (almost a quarter of the total H-2B cohort) had already joined the litigation prior to the filing of the Complaint, and an additional 7 individuals have since opted in.

Motions to authorize notice and a collective action have been approved in many other cases similar to this one.[25] In this case, this Court should conditionally certify this case as a collective action on behalf of:

> All workers employed by defendants in Bear Creek, Wisconsin at any time in 2010 or 2011 pursuant to defendants' H-2B applications approved by the U.S. Department of Labor.

---

[25] *See De Luna-Guerrero v. North Carolina Growers Ass'n.*, 338 F. Supp. 2d 649, 655 (E.D.N.C. 2004) (holding, "[this] action falls within the theoretical framework governing [FLSA] class actions," where H-2A plaintiffs allege defendants' reimbursement policy resulted in common FLSA minimum wage violations). Indeed, in nearly identical cases involving proposed collective actions on behalf of H-2B workers, district courts have routinely granted certification. *See, e.g.*, *Teoba v. Trugreen Landcar*e, *LLC*, No. 10-CV-6132, 2011 WL 3555729 (W.D.N.Y. Aug. 11, 2011) (approving notice to FLSA class of H-2B workers); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, No. 4:08-CV-134-H(3) (E.D.N.C. June 16, 2009) (conditionally certifying collective action by H-2B workers); *Garcia v. Frog Island Seafood, Inc.*, 2:06-CV-46-BO (E.D.N.C. Aug. 13, 2007) (same); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 1:05-CV-1473-CC (N.D. Ga. Oct. 18, 2005) (same); *see also Galaviz-Cedillo v. Georgia Cantaloupe Co., Inc.*, No. 5:05-CV-085 (DF) (M.D. Ga. June 22, 2005) (order conditionally certifying FLSA collective action by H-2A workers); *Vergara-Perdomo v. Wendell Roberson, Inc.*, No. 1:04-CV077 (WLS) (M.D. Ga. Feb. 9, 2005) (same); *Duque-Tovar v. Georgia Growers Ass'n.*, No. 1:03-CV-128-2 (WLS) (M.D. Ga. Sept. 29, 2004) (same). The orders cited herein that are not available on Westlaw are contained at Exhibit G.

## III. Both Written Notice and an In-Person Meeting Are Essential to Prevent the Expiration of Potential Opt-In Plaintiffs' Claims.

Notice is particularly important in FLSA cases because, unlike the procedure under Rule 23, for an FLSA opt-in "class," the statute of limitations continues to run on each individual worker's claims until that worker files a consent with the court, becoming a party plaintiff.[26] 29 U.S.C. § 216(b); *see also Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1102 (7th Cir. 2004).

In this case, most potential opt-in plaintiffs speak little or no English.[27] They are migrant workers from remote areas of Mexico with slow and unreliable mail service, who likely do not have regular access to international phone and fax services.[28] Although many plaintiffs are from villages within proximity of each other, many do not know their fellow GLK co-workers' full

---

[26] Pursuant to the parties' tolling agreement entered on July 13, 2012, the statute of limitations is tolled for the Count I claims of the 2010 H-2B workers. ECF No. 26-1. Either party may terminate the tolling agreement upon 60 days' notice. The statute of limitations on the claims of 2011 H-2B workers has not been tolled. Plaintiffs' First Amended Complaint asserts that defendants' FLSA violations were willful and thus subject to a three-year statute of limitations. *See* 29 U.S.C. § 255(a).

[27] Ex. B, Mr. Dimas Jimenez Aff. ¶ 1; Mr. Arroyo Martinez Aff. ¶ 1; Mr. Arroyo Garcia Aff. ¶ 1; Mr. Martinez Velez Aff. ¶ 1; Mr. Jurado Rangel Aff. ¶ 1; Mr. Nuñez Perez Aff. ¶ 1; Mr. Jurado Jurado Aff. ¶ 1; and Mr. Rosas Jurado Aff. ¶ 1; Mr. Jurado Jimenez Aff. ¶ 1; Mr. Martinez Gonzalez Aff. ¶ 1; Mr. E. Robles Medina Aff. ¶ 1; Mr. Jimenez Rosas Aff. ¶ 1; Mr. Loredo Hernandez Aff. ¶ 1; Mr. Chavez Rangel Aff. ¶ 1; Mr. Chavez Jimenez Aff. ¶ 1; Mr. J. Robles Medina Aff. ¶ 1; Mr. Arroyo Lopez Aff. ¶ 1; Mr. Mendez Baca Aff. ¶ 1; and Mr. Ruiz Mendoza Aff. ¶ 1.

[28] Ex B, Mr. Dimas Jimenez Aff. ¶ 5; Mr. Arroyo Garcia Aff. ¶ 5; Mr. Martinez Velez Aff. ¶ 5; Mr. Jurado Rangel Aff. ¶ 5; Mr. Nuñez Perez Aff. ¶ 5; Mr. Jurado Jurado Aff. ¶ 5; and Mr. Rosas Jurado Aff. ¶ 5; Mr. Jurado Jimenez Aff. ¶ 5; Mr. Martinez Gonzalez Aff. ¶ 5; Mr. E. Robles Medina Aff. ¶ 5; Mr. Jimenez Rosas Aff. ¶ 5; Mr. Loredo Hernandez Aff. ¶ 5; Mr. Chavez Rangel Aff. ¶ 5; Mr. Chavez Jimenez Aff. ¶ 5; Mr. J. Robles Medina Aff. ¶ 5; Mr. Arroyo Lopez Aff. ¶ 5; Mr. Mendez Baca Aff. ¶ 5; and Mr. Ruiz Mendoza Aff. ¶ 5.

names or addresses.[29] Plaintiffs seek approval to mail the proposed notice, in Spanish, to each H-2B worker employed by GLK in 2010 or 2011 for whom defendants can provide or plaintiffs can independently find a mailing address. *See* Ex. A, Proposed Notice. To account for likely gaps in potential opt-in workers' contact information and poor mail delivery in rural Mexico, plaintiffs also request leave to organize and advertise in-person meetings between a representative of plaintiffs' counsel and potential opt-in plaintiffs in Mexico in public locations in towns identified by defendants as towns from which workers were recruited.

   **A. Defendants Should Disclose, Within 10 Days, Identifying Information For All 2010 and 2011 H-2B Workers, Including Production of Passports For All Workers and Identification of the Towns in Mexico From Which Workers Were Recruited.**

   To facilitate notice, plaintiffs request the Court to order defendants to produce, in a computer-readable format, the names, last-known addresses, telephone numbers, passport numbers, and visa numbers for all H-2B workers employed by defendants in Bear Creek in 2010 or 2011, within 10 days. *See, e.g., Howard*, 2009 WL 140126, at *9 (ordering defendants to turn over a list of names and last-known addresses of the putative class members in a computer-readable format within 10 working days).

   To facilitate plaintiffs' proposed in-person meetings, plaintiffs also request the Court to order defendants to (a) produce copies of the H-2B workers' passports, because they indicate the

---

[29] Ex. B, Mr. Dimas Jimenez Aff. ¶ 8; Mr. Arroyo Martinez Aff. ¶ 6; Mr. Arroyo Garcia Aff. ¶ 8; Mr. Martinez Velez Aff. ¶ 8; Mr. Jurado Range Aff.l ¶ 8; Mr. Nuñez Perez Aff. ¶ 8; Mr. Jurado Jurado Aff. ¶ 8; and Mr. Rosas Jurado Aff. ¶ 8; Mr. Jurado Jimenez Aff. ¶ 9; Mr. Martinez Gonzalez Aff. ¶ 8; Mr. E. Robles Medina Aff. ¶ 8; Mr. Jimenez Rosas Aff. ¶ 8; Mr. Loredo Hernandez Aff. ¶ 9; Mr. Chavez Rangel Aff. ¶ 8; Mr. Chavez Jimenez Aff. ¶ 8; Mr. J. Robles Medina Aff. ¶ 8; Mr. Arroyo Lopez Aff. ¶ 8; Mr. Mendez Bac Aff.a ¶ 8; and Mr. Ruiz Mendoza Aff. ¶ 8.

town where the person was born, and (b) identify the towns from which workers were recruited in 2010 and 2011.

**B.  The Court Should Approve Plaintiffs' Proposed Notice and Consent Forms and Set a Four-Week Opt-In Period for Responses.**

Once defendants have provide plaintiffs with information to locate and identify potential collective members, plaintiffs believe a four-week long opt-in period, following the mailing of the notices, will be sufficient to allow for additional plaintiffs to opt-in.[30]

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request this Court: (1) to conditionally certify Count I as a collective action; (2) to approve the Proposed Notice[31] and plaintiffs' proposal to organize a meeting in Mexico to meet with as yet unidentified H-2B workers; (3) to direct defendants to produce the names, last-known addresses, telephone numbers, visa numbers and a copy of the passports of their 2010 and 2011 H-2B workers, and

---

[30] Courts have routinely provided much longer opt-in periods than the four-weeks requested by plaintiffs where workers live outside of the United States and are difficult to locate. *See Gonzalez v. Ridgewood Landscaping, Inc.*, No. H-09-2992, 2010 WL 1903602, at *8 (S.D. Tex. May 10, 2010) (four-month opt-in period for Spanish speaking putative collective members, many of whom live in other countries); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007) (nine-month opt-in period because many prospective plaintiffs are transient laborers); *Roebuck*, 239 F. Supp. 2d at 240-41 (nine-month FLSA notice period for collective of migrant farm workers).  In the interest of economy and efficiency and given the relatively small number (under 100) of absentees in this action, however, plaintiffs only request a four-week period after notice is sent for additional plaintiffs to opt-in.  The information –as requested by this motion –provided by defendants regarding the identity, contact information, and location of recruitment of all potential opt-ins is essential to effective notice in this case.  Given their experience representing migrant workers from Mexico, plaintiffs' counsel are confident they will be able to expediently provide notice to potential opt-in plaintiffs once defendants have provided the necessary information.

[31] Plaintiffs' counsel will translate the notice and consent forms into Spanish upon approval of the English-language versions.

identify the towns from which they recruited the putative FLSA collective members within 10 days; and (4) to allow a four-week opt-in period from the date of mailing.

Dated: May 8, 2013                              Respectfully submitted,

                                                s/ Joshua Karsh
                                                One of Plaintiffs' Attorneys

Matthew J. Piers                                Weeun Wang
José J. Behar                                   Attorney for Plaintiffs
Joshua Karsh                                    Farmworker Justice
Jenna Miara                                     1126 16th Street, N.W., Suite 270
Attorneys for Plaintiffs                        Washington, D.C. 20036
Hughes Socol Piers Resnick & Dym, Ltd.          (202) 293-5420 ext. 308
70 W. Madison Street, Suite 4000                E-mail: wwang@farmworkerjustice.org
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
        jbehar@hsplegal.com
        jkarsh@hsplegal.com
        jmiara@hsplegal.com