**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

ALEJANDRO JURADO JIMENEZ, et al.,

      Plaintiffs,

    v.                                    Case No. 12-cv-209

                                                  JURY DEMAND

GLK FOODS, LLC and RYAN A. DOWNS,

      Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR CONDITIONAL
CERTIFICATION AND COURT-APPROVED NOTICE TO H-2B WORKERS
EMPLOYED IN 2010 AND 2011**

        Plaintiffs' Motion for Authorization of a Court-approved Notice to H-2B Workers employed by GLK in 2010 and 2011 should be denied because it fails to demonstrate that they and other putative class members were victims of an unlawful "common policy or plan" that deprived them of compensation under the Fair Labor Standards Act ("FLSA"). To the extent that the Plaintiffs have produced admissible evidence of pre-employment expenses allegedly incurred in 2010 and 2011, GLK was not required by law to reimburse them for such expenses. Accordingly, Plaintiffs have failed to meet their burden, and their motion must be denied.

**FACTUAL BACKGROUND**

        Defendant GLK Foods, LLC, (hereinafter "GLK"), is a Wisconsin limited liability company, is the largest sauerkraut producer in the world, and the maker of America's top selling brands of sauerkraut. It operates a sauerkraut cannery in Bear Creek, Wisconsin. Defendant

Ryan A. Downs is a resident of Wisconsin, and President of GLK. (Dkt. 42, ¶¶6-8, Answer to Amended Complaint; Affidavit of Tom Palmer, Exhibit A hereto).

At various times, GLK has employed H-2B workers from Mexico to perform cutting and trimming work in its Bear Creek facility. Relevant to this motion, GLK employed H-2B workers from Mexico in 2010 and 2011. (Dkt. 42, ¶¶6-8, Answer to Amended Complaint; Affidavit of Tom Palmer, Exhibit A hereto). In both of those years, GLK contracted with LaborQuest, USA, a Florida corporation, to manage the H-2B petition process along with the coordination of visa processing for and transportation of workers to Wisconsin. LaborQuest held itself out as an "H2 employer agent, working as an outsourced HR service for small to mid-sized companies." Labor Quest purports to "direct and manage guest worker programs for its clients which includes: the filing of all DOL/USCIS petitions, the placement and tracking of required advertising, and coordinating the visa processing & transportation for all guest workers." See, http://www.laborquest.com/aboutus.html. LaborQuest's owner is Tom Robinson. (Affidavit of Tom Palmer, Exhibit A hereto).

In turn, LaborQuest subcontracted portions of the GLK work with another service, Florida East Coast Travel Services, Inc.. (hereinafter, "FLECTS") GLK was informed that LaborQuest and FLECTS would, jointly, coordinate the H-2B certification process, assist in obtaining visas for the H-2B workers, and coordinate the travel for the workers in Mexico to the United States. In exchange, GLK paid Labor Quest and FLECTS fees for their services, as well as fees for visa-processing and transportation costs from the border of Mexico to Bear Creek, Wisconsin. (Affidavit of Tom Palmer, Exhibit A hereto).

During these years, GLK understood from LaborQuest and FLECTS that the monies it paid them would cover H-2B certification fees, visa processing and related fees for the workers,

as well as transportation to Wisconsin. Contrary to the affidavits submitted on behalf of Plaintiffs' motion, at no point did GLK or Ryan A. Downs authorize LaborQuest, FLECTS or any other person, including but not limited to, Elias Vera, to charge "recruiting fees" as described in the plaintiffs' affidavits, to any H-2B worker. If such fees were in fact collected by Elias Vera or others, Defendants never received any such recruiting fees, directly or indirectly, from any worker. (Affidavit of Tom Palmer, Exhibit A hereto).

## I.     REQUIRED SHOWING FOR ISSUING NOTICE

Where a collective action is proper, courts have the discretion to send notice of an FLSA claim under 29 U.S.C. §216(b) to individuals who are similarly situated to the named plaintiffs. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-488, 2008 U.S. Dist. Lexis 102318, at *5 (E.D. Wis. Dec. 18, 2008). While the Seventh Circuit has not addressed the issue, courts in this district and others apply a two-step method in determining who is similarly situated and, thus, entitled to notice. First, courts permit notice to be sent if a named plaintiff can make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan *that violated the law*." *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. Lexis 68942, at *8 (E.D. Wis. Sept. 11, 2008) citing *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006)(emphasis supplied). The second step typically occurs after discovery, when the defendant asks the court to determine whether the opt-in plaintiffs are in fact similarly situated. *Espenscheid v. DirectSat USA*, LLC, No. 09-cv-625, 2010 U.S. Dist. Lexis 55579, at *17 citing *Austin*, 232 F.R.D. at 605.

At this first step, the plaintiffs must demonstrate that there is some nexus that connects them to other potential plaintiffs as victims of an common unlawful practice. *Williams v. Cargill Meat Solutions Corp.*, No. 09-C-1006, 2010 U.S. Dist. Lexis 72025, at *4 (E.D. Wis. June 30,

2010); *Espenscheid*, 2010 U.S. Dist. Lexis 55579, at *16-17 citing *Sjoblom v. Charter Communications*, LLC, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008). The burden to make such a showing at the conditional certification "is not a mere formality." *Adair*, 2008 U.S. Dist. Lexis 68942, at *9 (citations omitted).

The initial step serves as an important and functional step in the certification process. Where the plaintiff has not made at least a modest showing that certification is appropriate, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Id.*

## II. PLAINTIFF HAS FAILED TO SHOW A "COMMON POLICY OR PLAN" THAT DEPRIVED THE PUTATIVE CLASS FROM COMPENSATION UNDER THE FLSA.

A collective action under Section 216(b) of the FLSA may not be conditionally certified, and notice may not be authorized, unless Plaintiffs provide admissible proof of an unlawful policy. *See Williams v. Cargill Meat Solutions Corp.*, No. 09-cv-1006, 2010 WL 2643405 (E.D. Wis. June 30, 2010). Plaintiffs offer no competent evidence of a common policy that violated the law because none exists. Rather, GLK followed the requirements of the H-2B Program and the FLSA.

Plaintiffs' motion is based on a fundamental misinterpretation of the requirements of the H-2B program - that GLK was required to pay any and all of their pre-employment expenses. Applying that flawed premise to their first week FLSA claim, Plaintiffs then assume that such pre-employment expenses, including inbound travel, immigration, recruitment and related expenses, were incurred primarily for GLK's benefit. (Dkt. 41, Plaitniffs' Memorandum, p. 8). Thus, they argue, their first weeks' wages were reduced by those benefits incurred on behalf of

4

GLK below the prevailing minimum wage rate.   However, as will be shown below, no law or

regulation requires GLK to reimburse Plaintiffs' pre-employment expenses, and according these

expenses are not tantamount to improper deductions under the FLSA.  Significantly, the only

federal circuit court to address whether pre-employment costs *for H-2B workers* must be

incurred by an employer concluded they were not.  *See Castellanos-Contreras v. Decatur Hotels,*

*LLC*, 622 F.3d 393 (5th Cir. 2010).

## A.  No Law Or Regulation Requires Payment For Pre-Employment Expenses

No statute or regulation expressly states that inbound travel expenses must be advanced

or reimbursed by an employer of an H-2B worker.  *See Castellanos-Contreras*, 622 F.3d at 400

(noting the H-2B Program requires *outbound* travel expenses to be paid for H–2B workers under

certain circumstances, but not inbound travel); *see also* 8 U.S.C. § 1184(c)(5)(A) (requiring

payment of outbound transportation costs in certain circumstances for H–2B workers).  By

contrast, inbound transportation costs are expressly required to be paid under certain

circumstances for *H-2A* workers.  *See* 20 C.F.R. § 655.122(h) (requiring payment of inbound

transportation costs in certain circumstances for H–2A workers).

These differences are significant, because the H-2 Program was specifically redesigned

by Congress in 1986 to "separat[e] agricultural from non-agricultural workers in the

administrative scheme."  *See Sweet Life v. Dole,* 876 F.2d 402, 406 (5th Cir. 1989).

Accordingly, the regulations governing the H-2A visa have historically contained a number of

requirements designed to prevent the exploitation of H-2A workers that were not present in the

H-2B regulations.  For instance, the H-2A regulations specify that the agricultural job offer must

include free housing, meals or cooking facilities, guaranteed employment for at least 3/4 of a

contract period, and reimbursement for the employee's transportation costs. *See* 20 CFR § 655.122.

Historically, the regulations governing H-2B workers contains no such requirements.[1] Regarding immigration expenses, no law or regulation specifically provides that fees for the employee side of the visa application process must be paid by the employer. *See* 22 C.F.R. § 40.1(l)(1) (requiring non-immigrant visa applicants, such as Plaintiffs, to submit processing fees when they apply for visas). On the other hand, an H-2B employer is required to pay its own fees for the application to hire H-2B workers. *See* 8 C.F.R. §§ 103.7(a) and (b) (requiring that a U.S. employer submit certain forms and filing fees to become an H–2B visa sponsor). These regulations thus provide that each party will bear his or its respective costs associated with the H-2B Program.

Similarly, no law or regulation requires an H-2B employer to pay for recruiting expenses. In fact, even the Plaintiff's genesis case-in-chief, *Arriaga*, did not require reimbursement of recruitment expenses. *See Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1244-46 (11th Cir. 2002). The statutory and regulatory silence as to reimbursement of pre-employment expenses demonstrates a legislative intent not to require reimbursement of such expenses for H-2B workers.

---

[1] Subsequent to events in this matter, on February 1, 2012, the DOL issued a final rule on the H-2B Program amending its regulations and, among other things, extending the inbound transportation reimbursement requirements to the H-2B Program. *See Temporary Non-agricultural Employment of H-2B Aliens in the United States*, 77 Fed. Reg. 10038 (Feb. 21, 2012) (codified at 20 C.F.R. § 655.18) ("2012 Final Rule"). On April 26, 2012, however, the 2012 Final Rule was preliminarily enjoined by the U.S. District Court for the Northern District of Florida in *Bayou Lawn and Landscape Services, et al. v. Solis et al.*, 12-CV-00183 (April 26, 2012), and was never implemented. Plaintiffs' Memo in Support fails to mention these events.

6

### B. The Pre-Employment Expenses Are Not Primarily for the Benefit of GLK

Under the FLSA, employment expenses paid for by workers, but which are incurred primarily for the benefit of the employer, are considered "kick-backs" of wages to the employer and are treated as the equivalent of deductions from the employees' wages. *See* 29 C.F.R. § 531.35 (prohibiting employers from requiring employees to pay for their own "tools of the trade" where the cost of such tools purchased by the employee cuts into the minimum or overtime wages). Such deductions must be reimbursed by the employer to the extent that they effectively result in workers' weekly wages being below the minimum wage. *See* 29 C.F.R. § 531.36.

The FLSA regulations describe "tools of the trade" to include items like safety caps, explosives, lamps, electric power, company police or security, taxes and insurance on employer buildings, railway fare for maintenance-of-way railway workers, and uniforms as the types of items not subject to deduction from the employees' wages. *See* 29 C.F.R. § 531.32. As these examples illustrate, a cost must be directly connected to the principal job activity to be considered to be primarily for the employer's benefit.

These costs are distinct from the pre-employment expenses for which Plaintiffs seek reimbursement because they are inseparable from the job itself. By contrast, Plaintiffs alleged expenses were merely incidental to the work they performed for GLK, and were unique to them because of their individual situation. Any benefit GLK derived from the employee-incurred pre-employment expenses is tangential to the performance of the actual productive work for which they were hired.[2] And while the pre-employment expenses may have enabled Plaintiffs to

---

[2] The bulk of the alleged pre-employment expenses Plaintiffs claim they incurred in 2011 relate to recruiting fees allegedly paid to Elias Vera. (Dkt. 42, Exh. B). Plaintiffs' affidavits do not demonstrate that any alleged recruiting fees demanded by Vera and paid to him by the Plaintiffs were a result of GLK's actions. (Notably, Plaintiffs produce no receipts or documentation as to these alleged fees). As demonstrated by the affidavit of GLK Financial Officer Thomas J. Palmer, GLK never authorized Vera or any other person to request or collect recruiting fees from

qualify for and report to work, they were not part and parcel of the job itself, like required training, a required uniform or a specific tool of the trade. *See Heder v. City of Two Rivers*, 295 F.3d 777, 782 (7th cir. 2002) (requiring reimbursement from employees for cost of training programs, which are an employment condition).

With respect to the transportation costs in particular, FLSA regulations deem travel expenses to be for the employer's benefit only when the expenses are "an incident of and necessary to the employment." 29 C.F.R. § 531.32(c). Thus, it is not enough that Plaintiffs had to obtain a visa and travel into the United States in order to perform work for GLK. While it may have been "necessary" for Plaintiffs to travel to the United States in order to secure a job with GLK, the travel and other related costs are in no way "incident of and necessary to" Plaintiffs' employment to perform work for GLK.

The pre-employment expenses are not primarily for the benefit of the employer because H-2B workers derive very substantial benefits themselves. Foreign workers seeking employment under the H-2B Program often travel great distances, far from family, friends, and home, to accept the offer of employment. Their travel not only allows them to earn money—typically far more money than they could have in their home country over a similar period of time—but also allows them to live and engage in non-work activities in the United States. The fact that H-2B workers travel such great distances to obtain work in the United States indicates that the travel greatly benefits those employees. *See* Charles C. Mathes, *The Department of Labor's Changing Policies Toward The H-2B Temporary Worker Program: Primarily For The Benefit of Nobody*, 80 Fordham L. Rev. 1801, 1814-16 (March 2012).

H-2B workers and GLK never received any such fees. The only admissible evidence before the Court shows that GLK obtained no benefits from any alleged recruiting fees paid to Vera. Accordingly, those alleged expenses cannot be the basis for their FLSA claim.

Consistent with this analysis, the Fifth Circuit concluded that H-2B employee pre-employment costs are not primarily for the benefit of H-2B employers and that a "visa and physical presence at the job site are not 'tools' particular to this 'trade' within the meaning of the applicable regulations." *See Castellanos-Contreras*, 622 F.3d at 400-01.[3]

The United States District Court for the District of Nevada has applied the Fifth Circuit's reasoning to the context of the H-2A program concluding that an H-2A employer was not required under the FLSA to reimburse its employees for their inbound transportation and subsistence costs. *See Rivera, et al. v. Peri & Sons Farms, Inc.*, 805 F. Supp.2d 1042 (D. Nev. 2011). The court observed that the FLSA regulations do not require reimbursement of "travel expenses incurred for a worker to move to a town to begin work in the first instance." *Id*. at 1048. For example, the court noted that "[i]f a worker from Ohio desires to work in Nevada, he has to pay his own way to the state, and any reimbursement for that travel would be a gratuity." *Id*. Consequently, the court concluded that the pre-employment travel expenses incurred by an employee to begin work in the first instance are not covered under the FLSA.[4]

---

[3] In 2009, the DOL issued a Field Assistance Bulletin maintaining that pre-employment expenses are primarily for the benefit of the H-2B employer. *See Travel and Visa Expenses of H-2B Workers Under the FLSA*, U.S. DOL Wage and Hour Division, Field Assistance Bulletin No. 2009-2 (Aug. 21, 2009). The bulletin, however, was published less than a year after the DOL had issued a Final Rule concluding that pre-employment expenses were *not* primarily for the benefit of the H-2B employer. *See Labor Certification Process and Enforcement for H-2B Workers and other Technical Changes*, 73 Fed. Reg. 78,020 (Dec. 19, 2008) (withdrawn by 74 Fed. Reg. 13,261 (Mar. 26, 2009). In any event, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) (internal quotation omitted); *see also Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 599 (7th Cir. 2012) cert. granted, 133 S. Ct. 1240 (U.S. 2013) (noting that courts which have reached varied conclusions on whether employers must compensate employees for time spent putting on and taking off their work clothes have nonetheless come together in spurning the "gyrating agency letters on the subject.") (internal quotation omitted).

[4] Tellingly, the Eleventh Circuit has backed away from its holding in *Arriaga* that a plaintiff's one-time travel to his employer rendered the travel "necessary" to his employment. Instead, the court has subsequently held that employees' time spent traveling on buses and going through airport security is not compensable under the FLSA due to the absence of any work-related activity before the employees' arrival at their work sites. *See Bonnilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir.), cert. denied, 552 U.S. 1077 (2007). Another reason for why *Arriaga* should therefore not be applied here.

Defendants do not concede that Plaintiffs actually incurred the expenses they claim in their affidavits or that the amounts they may have incurred resulted in a violation of the FLSA. Notably, other than their own-self serving testimony (repeated almost verbatim in each affidavit) only seven of the nineteen affidavits actually attached any documentary evidence showing pre-employment expenditures. (See, Dkt. 41-2). Some of those only attached a $6 receipt for payments at the border: See, Affidavits of Jose Javier Chavez Rangel, J. Jesus Jimenez Rosa, Lucio Loredo Hernandez. The only documentary evidence submitted in connection with the affidavits all date from 2011; there is no documentary evidence of any pre-employment expenditures in 2010.

In any event, even if Plaintiffs' claims regarding incurring pre-employment expenses are true, Plaintiffs motion should still be denied because, as demonstrated above, GLK was not legally obligated to reimburse those expenses. Because Plaintiffs have failed to demonstrate that GLK was legally required to pay the in-bound expenses they allegedly incurred, they have failed to point to an unlawful practice or policy on GLK's part that violated the FLSA. Accordingly, their motion for conditional certification must be denied.

## III. ISSUES REGARDING PLAINTIFFS' PROPOSED NOTICE AND PROCEDURES

If the Court does permit conditional certification of a class in this matter, Defendants has two objections to Plaintiffs' Proposed Notice and Opt-In Consent or related procedures. (Dkt. 41, Exh. A, hereinafter "Proposed Notice").

First, the Proposed Notice contains a section (Dkt. 41, Exh. A, p.4) discussing retaliation against the workers for joining in or discussing this lawsuit. As none of the plaintiffs are employed by GLK, because GLK has not employed any of the plaintiffs or potential plaintiffs

since 2011 and is not participating in the H-2B program this year, that portion of the notice is unnecessary and could cause confusion as to the grounds for opting into the case.

Second, Plaintiffs argue that notice should be provided both in writing and by an "in-person meeting." Dkt. 41, pp. 18-19. Defendants do not object to the time period for notice proposed by plaintiffs (four weeks after Defendants have provided last known addresses and other identifying information.) However, Defendants object to court-authorized "in-person" meetings between a "representative of plaintiffs' counsel and potential opt-in plaintiffs in Mexico in public locations." *Id.* Because this Court will have no practical means of monitoring how such meetings are conducted and what discussions may occur there, it should not lend its imprimatur and authority to any such meeting. To the extent that the Court "authorizes" such meetings as requested, it should direct Plaintiffs' counsel and its representatives that they must limit the scope of the discussion in such meetings to the wording used in the Notice. Additionally, if the Court authorizes such meetings, it should make clear that the costs of those meetings will be borne by the Plaintiffs or their counsel and that Defendants' counsel must be apprised, with reasonable advance notice, of the time and location of those meetings.

Additionally, Plaintiffs request that Defendants disclose, within 10 days, information regarding the H-2B workers last known contact information, including copies of passports, to assist in providing notice. To the extent the Court grants this motion, Defendants should be provided ten business days from the entry of an order granting conditional certification to provide such information to Plaintiffs" counsel.

## CONCLUSION

For all of the above stated reasons, Plaintiffs' motion for conditional class certification as to their 2010-2011 first week FLSA claims should be denied.


Dated: May 29, 2013

<div style="margin-left:40%">

Michael Aldana
State Bar No. 1020233
Sean M. Scullen
State Bar No. 1034221


s/Michael Aldana
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee, WI  53202-4497
(414) 277-5000
Attorneys for Defendants

</div>


Direct inquires to:

Michael Aldana
(414) 277-5151
michael.aldana@quarles.com