IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| ALEJANDRO JURADO JIMENEZ et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 12 cv 209 |
| v. ) | |
| ) | Judge Griesbach |
| GLK FOODS, LLC and RYAN A. DOWNS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR AUTHORIZATION OF COURT-APPROVED NOTICE**

In their Response to Plaintiffs' Motion for Authorization of Court Approved Notice, Defendants do not argue—much less demonstrate—that there are meaningful differences between the named plaintiffs and potential opt-in plaintiffs that would counsel against issuing notice to potential opt-ins. Rather, Defendants mainly assert that their common policy of paying H-2B visa workers less than the required minimum wage does not violate the Fair Labor Standards Act ("FLSA"). This argument fails for at least two reasons.

First, Defendants misapprehend Plaintiffs' burden at the collective certification stage. Plaintiffs request permission to notify potential opt-in plaintiffs of this litigation and so need only show that the putative class members are similarly situated to the named plaintiffs with regards to a common policy that arguably violates the FLSA. The U.S. Department of Labor ("DOL") and numerous federal courts have accepted Plaintiffs' theory of relief, making their claim an arguably meritorious one. Thus, because Defendants failed to file a motion to dismiss

under Fed. R. Civ. P. 12(b)(6) and have not moved for summary judgment, the legal sufficiency of Plaintiffs' FLSA claim is not properly before the Court.

Second, even if the Court were to consider Defendants' improper legal arguments, Defendants are wrong on the law. Simply stated, the FLSA requires that H-2B workers, just like every other non-exempt worker, be reimbursed during their first week of work for pre-employment expenses incurred primarily for the benefit of the employer, if the failure to reimburse would reduce their wages below the FLSA minimum. Courts around the country have found that the FLSA's single narrow exception to this mandate does not apply to pre-employment expenses incurred by temporary visa workers.

Finally, Defendants object to Plaintiffs' proposed inclusion of standard anti-retaliation language in the Notice, and assert that Defendants should be allowed to attend in-person meetings between Plaintiffs' counsel and potential opt-in plaintiffs in Mexico. These contentions are similarly without merit. Plaintiffs' proposed anti-retaliation language is straightforward and non-controversial, and there is no legal justification for Defendants' presence at any in-person meeting between Plaintiffs' counsel and potential plaintiffs.

## I. BECAUSE PLAINTIFFS' FLSA CLAIM IS ARGUABLY MERITORIOUS, THE COURT SHOULD NOT CONSIDER DEFENDANTS' MERITS ARGUMENTS AT THE CONDITIONAL CERTIFICATION STAGE.

Defendants claim that "[a] collective action under…the FLSA may not be conditionally certified…unless Plaintiffs provide admissible proof of an unlawful policy." Defendants' Response, ECF No. 43 at 4. Defendants dispute that their policy violated the FLSA, and thus ask that Plaintiffs' motion for conditional certification be denied. *Id.* Defendants misstate the law. In order for a district court to grant conditional certification of a FLSA collective action, the named plaintiffs need only make a modest *factual* showing that they and their co-workers were

2

Case 1:12-cv-00209-WCG   Filed 06/26/13   Page 2 of 16   Document 48

subjected to a common policy by their employer. The workers need only show that this policy *arguably* violated their FLSA rights, because "the determination at this initial phase of inquiry does not involve adjudication of the merits of the claims." *Brabazon v. Aurora Health Care, Inc.*, No. 10-CV-714, 2011 WL 1131097 at *3 (E.D. Wis. Mar. 28, 2011) (citing *Espenscheid v. DirectSat USA, LLC*, 2010 WL 2330309 at *6 (W.D. Wis. June 4, 2010)). Because Plaintiffs have easily made the necessary factual showing, the Court should conditionally certify their FLSA claim as a collective action.

The FLSA authorizes aggrieved workers to sue on their own behalf and on behalf of their co-workers "similarly situated." 29 U.S.C. § 216(b). "Significantly, the focus of [the "similarly-situated"] inquiry is 'not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their *allegations* that the law has been violated.'" *Brabazon*, 2011 WL 113107 at *3, (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)) (emphasis added). At the conditional certification stage, the named plaintiffs need only demonstrate some modest *factual* nexus that connects them to other potential plaintiffs as victims of an arguably FLSA-violative practice. *Schroeder v. Humana Inc.*, No. 12-C-0137 2012 WL 5931886 at *4 (E.D. Wis. Nov. 27, 2012); *Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006); *Sjoblom v. Charter Commc'ns., LLC*, 571 F. Supp. 2d 961, 971 (W.D. Wis. 2008).

A district court may not deny conditional certification based on the legal merits unless the underlying FLSA claim is facially meritless. *See Bouaphaeko v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 n.19 (N.D. Iowa 2008) (denial of certification on the merits appropriate only if a plaintiffs' claim were "completely deficient"). Where the representative plaintiffs' FLSA claim is even arguably meritorious, district courts in the Seventh Circuit consistently refuse to

3

adjudicate the claim's underlying merits at the conditional certification stage.[1] As described below, Plaintiffs' FLSA claim is more than arguably meritorious, having been adopted by the DOL and numerous federal courts.[2] Thus, the Court should give no weight to Defendants' legal merits arguments.

## II. ALL PLAINTIFFS WERE SUBJECTED TO DEFENDANTS' UNLAWFUL COMMON POLICY OR PLAN THAT VIOLATED THE FLSA.

Defendants suggest that Plaintiffs have failed to provide sufficient evidence that they incurred recruitment, visa, and transportation expenses in 2010 or 2011. Defendants' Response, ECF No. 43 at 8. Even if Plaintiffs did incur such expenses, Defendants argue that "no statute or regulation expressly states" that Defendants were required to pay for or reimburse any of these expenses, and that they were not incurred primarily for Defendants' benefit. *Id.* at 5. Consequently, Defendants argue, Plaintiffs cannot demonstrate that they were subject to an "unlawful common policy or plan" that violated the FLSA. These arguments are wrong.

### A. **Plaintiffs incurred recruitment, travel and visa expenses necessary to work for GLK under the H-2B visa program.**

Plaintiffs have presented sufficient evidence that they incurred similar visa, inbound travel, and recruitment expenses to work for Defendants. In their affidavits, nineteen

---

[1] *See, e.g., Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011); *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 971 ("Plaintiff's [FLSA] claims may be precluded…as defendants argue. However, this question is not before the court."); *Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10 C 4763, 2011 WL 1548964 (N.D. Ill. Apr. 21, 2011); *Marshall v. Amsted Indus., Inc.*, No. 10-CV-0011-MJR-CJP, 2010 WL 2404340 at *5 (S.D. Ill. June 16, 2010); *Espenscheid v. DirectSat USA, LLC*, No. 09-C-625, 2010 WL 2330309 at *6 (W.D. Wis. June 4, 2010).

[2] *See, e.g., Morante-Navarro v. T & Y Pine Straw, Inc.*, 350 F.3d 1163, 1166 n.2 (11th Cir. 2003); *Teoba v. Trugreen Lawncare LLC*, 769 F.Supp.2d 175, 182-183 (W.D.N.Y. 2011); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 125 (E.D.N.C. 2011); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1312-13 (N.D. Ga. 2008); *Rosales v. Hispanic Employee Leasing Program*, No. 1:06-CV-877, 2008 WL 363479 (W.D. Mich. Feb. 11, 2008); *Rivera v. Brickman Group*, No. 05-1518, 2008 WL 81570 at *2 (E.D. Pa. Jan. 7, 2008); *Recinos-Recinos v. Express Forestry, Inc.*, No. CIV.A. 05-1355, 2006 WL 197030 at *13-14 (E.D. La. Jan. 24, 2006).

representative Plaintiffs describe visa-related expenses they incurred, including consular interview and processing fees, photographs, and necessary copies.[3] Their transportation costs included buses arranged by Defendants' agent from their hometowns to the city where Defendants had scheduled their visa interviews; taxis to the consulate or embassy for the interviews; buses to the U.S.-Mexico border; lodging costs at hotels selected by Defendants' agent; and food costs along the way. These charges were all incurred as part of the travel and visa process organized and arranged by Defendants and their agents, and cost each Plaintiff between $307 and $720 U.S. dollars prior to receiving any wages from Defendants.[4] Finally, Defendants' agents charged some Plaintiffs upwards of $1,000 U.S. dollars in illegal recruitment fees in order to be put on "the list" to work for GLK.[5]

In support of their affidavits, Plaintiffs have produced receipts and copies of other expense records. (Exhibit B.) Documents produced by LaborQuest, a company GLK hired to assist with the 2010 and 2011 H-2B process, corroborate Plaintiffs' hotel stays, bus arrangements, and visa fees. (Exhibit C.) According to LaborQuest, the U.S. Consulate informed GLK that it had received reports from workers of having paid recruiting fees. Deposition of Jorge Garcia ("Garcia Dep.") (Exhibit D) at 56:8–23; 58:4–59:22; Deposition of Thomas Robinson ("Robinson Dep.") (Exhibit E) at 29:11–30:2. Defendants' own emails also confirm that they delayed the arrival of some workers in Bear Creek for Defendants' convenience and

---

[3] Plaintiffs' Motion for Authorization of Court-Approved Notice, ECF No. 40, Exhibit A.
[4] Though beyond the scope of this motion, because the workers in 2010 and 2011 were also terminated only 4-5 weeks into their contracts, most workers effectively earned almost no wages from GLK after subtracting their necessary pre-employment expenditures. *See* e.g., Plaintiffs' Motion, Ex. A, Mr. Arroyo Garcia ¶44, Mr. Arroyo Lopez ¶45; Mr. Arroyo Martinez ¶43; Mr. Chavez Jimenez ¶64; Mr. Chavez Rangel ¶66; Mr. Dimas Jimenez ¶44; Mr. Jimenez Rosas ¶67; Mr. Jurado Jimenez ¶41. Ex. A, Affidavit of Monica Garreton Chavez and Summarizing Chart.
[5] Plaintiffs' Motion, Ex. A, Mr. Arroyo Garcia ¶¶10-12; Mr. Arroyo Lopez ¶¶11-13; Mr. Arroyo Martinez ¶¶9-11; and Mr. Ruiz Mendoza ¶¶12-13.

5

business prerogatives, which increased those workers' hotel expenses as they waited for GLK's go-ahead. (Exhibit F.) Finally, GLK employees have confirmed that workers actually bore these expenses. Deposition of Rafael Jimenez Arroyo ("Jimenez Arroyo Dep.") (Exhibit G) at 53:24–54:23.

### B. Defendants were required to reimburse Plaintiffs to the extent that their travel, visa, and recruitment expenses brought their first weeks' wages below the FLSA minimum.

The FLSA requires all covered employers to pay their employees a minimum wage. 29 U.S.C. § 206(a). This requirement indisputably applies to foreign temporary workers in both the H-2A and H-2B programs. *See* 20 C.F.R. § 655.135(e) (H-2A workers); 20 C.F.R. § 655.20(a) (H-2B workers).

The minimum wage must be paid to the worker "free and clear." 29 C.F.R. § 531.35 (FLSA-covered employers); 20 C.F.R. § 655.20(b) (H-2B workers). In other words, the employer cannot shift expenses onto the worker that effectively require the worker to labor for wages that fall below the federal minimum. There is one — and only one — narrow exception to the requirement that workers be paid the minimum wage free and clear: An employer may charge a worker some reasonable amount for "facilities" it customarily provides to the worker, that primarily benefit the worker, and that are furnished for the worker's convenience—even if that would reduce the worker's effective hourly wage below the FLSA minimum. 29 U.S.C. § 203(m). These "facilities" include things like lodging, food, and supplies a worker might purchase at the company store. 29 C.F.R. § 531.32.

Apart from this narrow exception, all other costs that are not for the benefit of the workers but "primarily for the benefit or convenience of the employer" must be borne by the employer. 29 C.F.R. § 531.3(d)(1). These include, but are not limited to, tools, uniforms, and

6

"transportation charges where such transportation is an incident of and necessary to the employment." 29 C.F.R. § 531.32(c). This rule essentially "prohibits any arrangement that 'tend[s] to shift part of the employer's business expense to the employees…to the extent that it reduce[s] an employee's wage below the statutory minimum.'" *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594 (11th Cir. 2011) (citations and internal quotation marks omitted).

The DOL is charged with enforcement and interpretation of the FLSA, and it issues regulations, interpretative memoranda, and guidance to ensure compliance. Unless plainly erroneous or inconsistent, the DOL's interpretations of the FLSA are entitled to judicial deference. *Long Island Care at Home v. Coke*, 551 U.S. 158, 174 (2007).

Since at least 2009—the year before GLK's employment of the 2010 H-2B worker plaintiffs in this case—the DOL has interpreted the FLSA to require employers to pay for or reimburse an H-2B worker's incoming travel and visa expenses to the extent that not doing so would drive that worker's wages below the FLSA minimum in the first week.[6] DOL Field Assistance Bulletin 2009-2 ("DOL Bulletin") sets forth in detail the DOL's interpretation.[7] The DOL adopted the Eleventh Circuit's reasoning in *Arriaga v. Florida Pacific Farms. L.L.C.*, 305 F.3d 1228, 1242 (11th Cir. 2002), holding that employers of H-2A workers were responsible for these incoming expenses under the FLSA regulations described above, prohibiting cost-shifting. *See* 29 C.F.R. § 531.3(d)(1) and § 531.32(c). Because the FLSA does not differentiate between H-2B and H-2A workers, the DOL found that these regulations apply with equal force to the

---

[6] *See also* the DOL's Ninth Circuit *amicus* brief urging reversal of *Rivera v. Peri & Sons Farms, Inc.*, 805 F. Supp. 2d 1042 (D. Nev. 2011), cited by Defendants. *Rivera* concerns only the H-2A program, but the DOL applies its interpretation of FLSA to the H-2B program as well. DOL Amicus Brief in support of Plaintiffs-Appellants in *Rivera v. Peri & Sons Farms, Inc.*, No. 11-17365. (Exhibit H.) The brief is available at http://www.dol.gov/sol/media/briefs/rivera(A)-01-19-2012.htm.

[7] DOL Field Assistance Bulletin 2009-2 ("DOL Bulletin") (Exhibit I), available at http://www.dol.gov/whd/FieldBulletins/FieldAssistanceBulletin2009_2.htm.

7

H-2B program. The DOL explained that, in both programs, visa and travel expenses are "incident of and necessary to the employment" of these foreign workers and are thus the responsibility of the employer. Ex. I, DOL Bulletin at 11-12.

### C. The H-2B workers incurred travel, visa, and recruitment expenses primarily for Defendants' benefit.

The DOL has concluded that the travel and visa expenses necessarily incurred by H-2A and H-2B temporary visa workers are primarily for the employer's benefit, and this conclusion is a sound one. These visa programs allow employers to circumvent U.S. labor markets and employ workers under wages and working conditions that are not attractive to U.S. workers. Thus, the costs incurred are primarily for the benefit of the employer. Indeed, "such travel and visa costs 'are an inevitable and inescapable consequence' of having foreign workers employed in the United States and these costs arise out of the employment of such workers." Ex. I, DOL Bulletin at 4–5. While Defendants are correct that low-skilled guest workers get the benefit of employment from this arrangement, that is not the proper inquiry. Instead, the proper inquiry is who derives the *primary* benefit of the transportation, visa and recruitment expenses. DOL has made the considered judgment that the employer, not the employee, does. And that makes sense: work is always of some benefit to the employee, but the necessary pre-employment expenses of foreign labor programs primarily benefit the employer. Without the foreign workers, the employer's business would presumably suffer or even fail, since the employer has certified to the DOL that it could not obtain a sufficient domestic workforce. *See* Defendants' 2010 and 2011 Applications for H-2B Workers (Exhibit J). Moreover, H-2B workers are employed under severely restrictive conditions. The H-2B visa sought by the employer allows the employees to work only for the employer identified on the H-2B visa, and only for a temporary period of time specified by that employer. Unlike domestic workers, there is no possibility of permanent

8

employment, wage increases or advancement for temporary visa workers. *See generally* 20 C.F.R. § 655 Subparts A (H-2B workers) and B (H-2A workers).

As noted above, all of Defendants' 2010 and 2011 H-2B workers paid significant sums for bus fares, visa fees, hotel stays, border charges, food, and incidentals. In addition to these costs, the sum of which alone brought the workers' wages below the minimum wage in their first weeks of work, some workers were charged recruiting fees by Defendants' agents involved in the recruitment and travel arrangement process. Defendants argue that they are not responsible for the workers' recruitment fees, asserting that Defendants never authorized anyone to collect recruitment fees, never received any such fees, and derived no benefit from the fees. Defendants' Response, ECF No. 43 at 7 n.2. Defendants admit, however, that they delegated essentially all of their H-2B recruiting duties to one of their full-time supervisors, Rafael Jimenez Arroyo. Deposition of Betty Miller ("Miller Dep.") (Exhibit K) at 61:9–62:8; 81:15–82:10; 84:21–85:2; Deposition of Donna Lorge ("Lorge Dep.") (Exhibit L) at 36:17–37:8; 44:6–17; 50:3–14. In 2010 and 2011, with Defendants' knowledge, Mr. Jimenez Arroyo enlisted the help of two sub-recruiters to recruit new workers, maintain the master list, and assist with transportation and visa arrangements. Ex. G, Jimenez Arroyo Dep. at 37:1–8; 123:23–124:1; 125:15–18; Ex. K, Miller Dep. at 61:17–62:8. One or more of the sub-recruiters then charged workers illegal recruitment fees.[8]

Defendants were aware that recruitment fees were being charged and that doing so was unlawful under the H-2B regulations. Even so, they made no effort to supervise their head-recruiter or sub-recruiters. Ex. L, Lorge Dep. at 43:10–44:17; Ex. K, Miller Dep. at 86:25–87:15. "[A]n employer's responsibility under the FLSA extends beyond merely promulgating rules to

---

[8] Plaintiffs' Motion, Ex. A, Affidavits of Mr. Arroyo Garcia ¶¶10-12; Mr. Arroyo Lopez ¶¶11-13; Mr. Arroyo Martinez ¶¶9-11; and Mr. Ruiz Mendoza ¶¶12-13.

9

actually enforcing them." *Espenscheid,* 2010 WL 2330309 at *7. Defendants gave Jimenez Arroyo and his associates no guidelines on carrying out recruitment and provided no supervision. Ex. G, Jimenez Arroyo Dep. at 51:1–4; 188:8–12; Ex. K, Miller Dep. at 93:13–18; *see also Espenscheid*, 2010 WL 2330309 at *7 (citing 29 C.F.R. § 785.13) ("[Management] cannot sit back and accept the benefits without compensating for them…. Management has the power to enforce the rule and must make every effort to do so.") Thus, Defendants are responsible for all these fees under the FLSA.

It is exactly facts such as these that have caused the overwhelming majority of courts to conclude that the recruitment, travel, and visa costs associated with the H-2B program are for the benefit of the employer and so are to be borne by the employer. As the court explained in *Salazar-Martinez v. Fowler Brothers Inc*., 781 F. Supp. 2d 183, 197 (W.D.N.Y. 2011), these expenses "are created by the employer because of the nature of the employer's business, or expenses which the employer brings upon himself by the way he chooses to conduct his business, [and so] are primarily for the benefit of the employer." *Salazar-Martinez*, 781 F. Supp. 2d at 195 (H-2A workers' pre-employment travel and visa costs were primarily for the benefit of the employer as a matter of law; factual issues remained regarding recruitment fees). [9]

### D. Defendants failed to reimburse its H-2B workers as required by the FLSA.

The travel, visa, and recruitment expenses described by the Plaintiffs and corroborated by documents and deposition testimony amount to between $307 and $1,779 per worker. Ex. A ,

---

[9] Defendants' invocations of *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393 (5th Cir. 2010) and *Rivera v. Peri & Sons Farms, Inc.*, 805 F. Supp. 2d 1042 (D. Nev. 2011) miss the mark: First, the *Arriaga* court's reasoning is equally persuasive in the H-2B context; unsurprisingly, then, the cases cited by defendants are true outliers. *See, e.g.,* cases listed above at n.2. Moreover, *Castellanos-Contreras* was decided prior to the issuance of DOL's Field Bulletin 2009-2; the agency's current interpretation is well-reasoned and entitled to deference.

10

Affidavit of Monica Garreton Chavez and Summarizing Chart. Defendants' payroll records and Plaintiffs' paystubs confirm that these expenses, when treated as *de facto* pay deductions, pushed all workers' first weeks' wages well below the federal minimum. *Id.* Defendants have not produced any documents or made any assertion indicating that they reimbursed any H-2B workers for these expenses in their first work-week. Instead, Defendants' employees confirmed that in each year, every H-2B worker was subject to a common policy regarding reimbursements. In 2010, the workers were reimbursed only $121, and not until *after* the first week of work. Ex. K, Miller Dep. at 160:14–164:7. In 2011, the workers were not reimbursed at all. Ex. L, Lorge Dep. at 108:12–16; 109:8–11; Deposition of Gina Pahl ("Pahl Dep.") (Exhibit M.), at 36:3–42:25. In fact, although Defendants had been importing workers for nearly 10 years through foreign temporary worker programs by 2010, Defendants' employees acknowledged making no affirmative efforts to familiarize themselves with legal obligations to pay for incoming expenses of these workers. Ex. L, Lorge Dep. at 74:5–75:4; Ex. K, Miller Dep. at 148:7–12; 152:24–153:17; 164:19–165:1; 166:24–167:10. Further, in 2010 and 2011, Defendants ignored advice from LaborQuest to pay a daily per diem to workers as well as visa expenses. (Exhibit N.) Defendants also ignored LaborQuest's advice that they were legally required to pay for transportation from these workers' homes to the visa interview site. *Id.* Mr. Jimenez Arroyo, Defendants' employee and head recruiter, and Ms. Gina Pahl, Defendants' employee assigned to provide translation for the H-2B workers, both testified that they were aware the workers had incurred these expenses and had been instructed that Defendants would not provide reimbursements to anyone. Ex. G, Jimenez Arroyo Dep. at 51:5–54:23; 64:17–66:2; Ex. M, Pahl Dep. at 36:3–42:25. Thus, Defendants' common policy resulted in its H-2B workers earning less than the FLSA minimum wage in the first work-week.

11

## II. THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED FORM AND MANNER OF NOTICE TO SIMILARLY-SITUATED WORKERS.

Defendants object to both the form and the manner of Plaintiffs' proposal to provide notice to similarly-situated workers. With regard to form, Defendants object to Plaintiffs informing potential plaintiffs that the law prohibits Defendants from retaliating against them for discussing or joining this case. Defendants' Response, ECF No. 43 at 10-11. With regard to manner, Defendants object to Plaintiffs' proposal to hold in-person meetings in the workers' communities in Mexico in order to notify them of the lawsuit.

### A. The anti-retaliation language of Plaintiffs' proposed Notice is appropriate.

The FLSA contains an anti-retaliation provision that forbids employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA.]" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1329 (2011), quoting 29 U.S.C. § 215(a)(3). Plaintiffs' proposed Notice contains a short paragraph advising potential plaintiffs that U.S. law prohibits Defendants from retaliating against them in connection with this lawsuit. ECF No. 41-1 at 4. Citing no legal authority, Defendants argue that this Notice is inappropriate.

Defendants do not argue that Plaintiffs have misstated the law. Instead, they suggest that the proposed anti-retaliation language is "unnecessary" because Plaintiffs are not current employees and Defendants have no certain plans to participate in the H-2B program in the future— implying that Defendants literally cannot retaliate against Plaintiffs. Defendants' Response, ECF No. 43 at 10-11. There are, however, myriad ways Defendants could interfere with Plaintiffs' employment rights, including by interfering with their ability to obtain visas to work for other employers, by causing them to be blacklisted by other employers, or by refusing

12

to hire them at a future date, under the H-2B program or otherwise. *See* 29 U.S.C. § 215(a)(3) (prohibiting employers from retaliating against H-2B employees "in any manner"). *Accord, Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (extending the anti-retaliation provision of Title VII of the Civil Rights Act of 1964 to retaliation against a former employee).

Even more importantly, potential opt-in plaintiffs will likely *fear* such retaliation, and their participation in this lawsuit should not be chilled by their lack of knowledge about protections afforded under U.S. law. *See Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1336-1337 (11th Cir. 2002) (The "primary purpose" of the FLSA's anti-retaliation provision is "to ensure that fear of retaliation does not 'operate to induce aggrieved employees quietly to accept substandard conditions.'") (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)); *Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."). Unsophisticated, low-skilled migrant workers may safely be presumed to lack familiarity with the U.S. legal system and are likely more susceptible to fear of retaliation, making such reassurances all the more reasonable.

For these reasons, Plaintiffs' anti-retaliation language should stand as proposed.

### B. In-person meeting in Mexico to distribute notice is necessary and appropriate, and discussions with Plaintiffs' counsel are privileged.

1. Propriety of In-Person Meeting

While first-class mail is the typical method for distributing notice to an opt-in class, courts routinely note that other methods of distribution can be used where service by mail would be inadequate to effectuate notice. *See e.g. DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 1:08-cv-488, 2008 WL 5263750 at *6 (E.D. Wis. Dec. 18, 2008) (denying motion to post notice at employer's worksite "[b]ecause it is unclear why transmitting the notice by first class mail and

13

publishing it through newspapers would be insufficient"). *Williams v. Cargill Meat Solutions Corp.*, No. 2:09-cv-1006, 2010 WL 2643405 at *2 (E.D. Wis., June 30, 2010) (same).

Here, primarily because mail service in Mexico is very unreliable and most of the H-2B workers live in remote areas, service by mail would be inadequate to effectuate notice. *See Rivera v. The Brickman Grp., Ltd.*, No. 2:05-cv-1518, 2006 WL 680926 at *2 (E.D. Pa., Mar. 10, 2006) ("mail service in [Mexico and Guatemala] is unreliable, particularly in rural areas"). Moreover, many H-2B workers have little or no capacity to receive international telephone calls or faxes. *See* Plaintiffs' Brief, ECF No. 41 at 18-20; Affidavits in Support of Motion, ECF Nos. 41-2 through 41-6. An in-person meeting in Mexico is thus an appropriate and desirable means of providing notice to the workers in this case.[10]

    2. <u>Form of In-Person Meeting</u>

Plaintiffs propose a two-stage in-person meeting in Mexico. At the first stage, representatives of Plaintiffs' counsel will distribute copies of the Notice in a central location and orally provide the information contained in the Notice to anyone who requests it. Defendants' presence at this initial meeting would be unnecessary and inappropriate for two reasons: first, at the initial meeting, Plaintiffs' representatives agree to hew closely to the language of the notice.[11] Second, as described above in the discussion of anti-retaliation provision, Defendants' presence

---

[10] The propriety of in-person meetings is bolstered by GLK's own recruitment activities. Betty Miller, GLK's Human Resources Assistant who coordinated the company's H-2B activities in 2010 and 2011, testified that GLK's H-2B agent would hold in-person meetings in Mexico in the towns where prospective H-2B workers resided, in order to most effectively inform them about available H-2B job opportunities with GLK. Exhibit K, Miller Dep. at 131:10–136:13. GLK would have had a difficult time reaching workers in these areas via less direct means of communication. *See id.* at 89:18–22; 132:23–25.

[11] Plaintiffs' counsel will conduct themselves in accordance with Wis. S. Ct. R. 20:4.3 and 20:7.3 regarding communications with unrepresented persons and potential clients, respectively. *See Rivera v. The Brickman Grp., Ltd.*, No. 2:05-cv-1518, 2006 WL 680926 at *2 (E.D. Pa. Mar. 10, 2006) (entrusting plaintiffs' counsel with compliance with the rules of professional conduct).

14

at the meeting would inevitably exert a substantial chilling effect on potential plaintiffs and their willingness to vindicate their rights via this lawsuit.

At the second stage, following the distribution of Notice, the representatives of Plaintiffs' counsel will make themselves available for individual consultation with anyone who so chooses. This is a direct substitute for the more typical telephone call or visit a potential opt-in plaintiff would make to Plaintiffs' attorney's office, to which a defendant would never be privy. Again, in this case, such contact would likely be prohibitively difficult and expensive for many potential opt-in plaintiffs, who reside in remote locations within Mexico, have no way to travel to the United States, and who have little or no access to international communications.[12] In-person meetings with individuals are similarly covered by attorney-client privilege and cannot be intruded upon by Defendants.

### 3. Costs of In-Person Meeting

Plaintiffs agree to bear the upfront costs of carrying out the in-person meetings. Plaintiffs may seek to recover such costs if they prevail on the merits,[13] or through settlement.

## CONCLUSION

For all these reasons, Plaintiffs' motion for authorization of court-approved notice to H-2B workers employed by GLK in 2010 and 2011 should be granted.

---

[12] Plaintiffs' Motion, Ex. A, Affidavits of Mr. Arroyo Garcia, Mr. Arroyo Lopez; Mr. Chavez Jimenez; Mr. Chavez Rangel; Mr. Dimas Jimenez; Mr. Jimenez Rosas; Mr. Jurado Jimenez; Mr. Jurado Jurado; Mr. Jurado Rangel; Mr. Loredo Hernandez; Mr. Martinez Gonzalez; Mr. Martinez Velez; Mr. Mendez Baca; Mr. Nuñez at ¶5.

[13] *See* 29 U.S.C. § 216(b) (authorizing the award of the "costs of the action" to a prevailing FLSA plaintiff); *Riddle v. Nat. Sec. Agency*, No. 05 C 5880, 2010 WL 1655443 at *14 (N.D. Ill. Apr. 23, 2010) (awarding fees for preparing and distributing notice and opt-in forms).

Dated: June 26, 2013				Respectfully submitted,

						s/ Claudia Flores
						One of Plaintiffs' Attorneys

Matthew J. Piers					Weeun Wang
José J. Behar					Attorney for Plaintiffs
Joshua Karsh					Farmworker Justice
Jenna Miara					1126 16th Street, N.W., Suite 270
Claudia Flores					Washington, D.C. 20036
Attorneys for Plaintiffs				(202) 293-5420 ext. 308
Hughes Socol Piers Resnick & Dym, Ltd.		E-mail: wwang@farmworkerjustice.org
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
	jbehar@hsplegal.com
	jkarsh@hsplegal.com
	jmiara@hsplegal.com
	cflores@hsplegal.com