UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEJANDRO JURADO JIMENEZ, et al,

        Plaintiffs,

v.                                        Case No. 12-C-0209

GLK FOODS LLC and RYAN A. DOWNS,

        Defendants.

**DECISION AND ORDER GRANTING CONDITIONAL CERTIFICATION AND APPROVING NOTICE TO POTENTIAL FAIR LABOR STANDARDS ACT PLAINTIFFS**

Plaintiffs are 73 migrant workers recruited from Mexico to work at a cannery plant operated by Defendant GLK Foods, LLC in Bear Creek, Wisconsin. GLK hired Plaintiffs as part of the federal government's H-2B temporary foreign worker visa program. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H-2B program authorizes employers to recruit and employ foreign workers on a temporary basis if they certify that domestic workers are not available to fill the positions. Plaintiffs allege that GLK and its president, Ryan A. Downs (collectively "GLK") violated their rights under various state and federal labor laws, including that GLK violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., (FLSA) by failing to reimburse Plaintiffs and other similarly situated H-2B workers for pre-employment expenses incurred during the years 2010 and 2011. (*See* Am. Compl. Count I ¶¶ 46-49.) Before me now is Plaintiffs' motion for conditional certification and court-authorized notice of their claim for reimbursement of pre-employment expenses. As part of this motion, Plaintiffs request: (1) to conditionally certify Count I as a collective action pursuant to FLSA § 216(b); (2) to approve the Proposed Notice; (3) to direct GLK

to produce the names and other information regarding GLK's 2010 and 2011 H-2B workers; and (4) to allow a four week opt-in period from the date of the mailing of the notice.

## BACKGROUND

Plaintiffs were all H-2B workers hired to work during 2010 and 2011 as "trim-line laborers" processing cabbage into sauerkraut at GLK's Bear Creek cannery. As part of the H-2B program, GLK employed approximately 100 workers in both 2010 and 2011, of which 73 are named plaintiffs. Plaintiffs allege that at the time of recruitment, GLK promised to sponsor the workers' visas for employment, to transport them to the worksite in Bear Creek, and to provide them work for a certified period of employment.

After accepting GLK's offer of employment, the workers incurred a variety of expenses, including recruitment fees, passport and visa application fees, travel expenses, immigration fees, and other related expenses, as a result of their preparations to work at the Bear Creek cannery. GLK contracted with an "H2 employer agent" who organized the recruitment, transportation, accommodations, and visa processing for each group of H-2B workers, including organizing the workers into groups that obtained visas at the same location and at the same time, stayed in hotels together, and traveled together. GLK did not reimburse any of the H-2B workers for these pre-employment expenses. Plaintiffs contend that as a result of GLK's failure to reimburse these expenses during the first week of work as required by the FLSA, the workers' first-week wages uniformly fell below the federal minimum wage in violation of FLSA § 206(a). Plaintiffs assert that under the FLSA, employers must reimburse covered workers for expenses incurred primarily for the benefit of the employer when such out-of-pocket expenses reduce wages below the federal minimum wage. In particular, Plaintiffs allege that H-2B workers must be reimbursed for the cost

2

of their recruitment, in-bound travel, immigration, and related expenses before or by the end of their first workweek.

Plaintiffs assert that all of the 2010 and 2011 GLK H-2B workers share a common claim for reimbursement, and therefore, seek conditional certification to proceed as a collective action under FLSA § 216(b). They filed affidavits of 19 plaintiffs in support of their motion for conditional certification, along with GLK's payroll records, interrogatory responses, and deposition testimony.

## ANALYSIS

### I. Conditional Certification

The FLSA permits collective action "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Employees or former employees must give their consent in writing to become a party to a collective action brought pursuant to § 216(b). Therefore, unlike a typical class action suit under Fed. R. Civ. P. 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires employees or former employees to "opt in" to the class. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

District courts may, in their discretion, facilitate notice to potential plaintiffs to a FLSA collective action, to implement this "opt in" procedure. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580; *DeKeyser v. Thyssenkrupp Waupaca Inc.*, No. 08-C-488, 2008 WL 5263750, *2 (E.D. Wis. Dec. 18, 2008). "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

3

In order to determine whether the representative plaintiffs are "similarly situated" to potential opt-in plaintiffs, this Court follows a two-step certification approach. *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, *3, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008).

First, the court must determine whether to conditionally certify the class by examining whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. *Id.* at *3. At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." *Id.* at *4. Plaintiffs may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff[s] and the proposed class or a common policy that affects all the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). It is a lenient standard, but the conditional certification stage is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. This is because "a plaintiff's discovery demands upon conditional certification may impose a 'tremendous financial burden to the employer'" and therefore, courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset. *Id.* at *4 (quoting *Woods*, 686 F.2d at 581).

If the class is conditionally certified, notice may be sent to other potential class members and discovery may proceed. At step two, typically on a defendant's motion for decertification, the court must determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). At the second stage, the court will assess whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *Hoffmann-La Roche*, 493 U.S. at 170.

4

The GLK H-2B workers uniformly incurred un-reimbursed pre-employment expenses in order to work at GLK, which Plaintiffs allege uniformly resulted in first-week wages that fell below the federal minimum wage. At this preliminary stage, limited discovery has taken place, and plaintiffs are entitled to rely on the pleadings and their own affidavits. *See, e.g. Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007). Plaintiffs need only make a modest showing that "their experience was shared by members of the proposed class." *Id.* Plaintiffs have presented sufficient evidence to demonstrate that they are similarly situated under § 216(b). They were all recruited by GLK or its agents in Mexico under similar conditions, were all subject to the same GLK policy and communications regarding their immigration and travel arrangements, and none were reimbursed for their pre-employment out-of-pocket expenditures. Likewise, they have made an adequate showing that there are approximately 100 additional co-workers in the same position that may opt in to the suit.

GLK does not appear to dispute that its policy was to uniformly provide no reimbursement for pre-employment expenses incurred by the H-2B workers; rather, GLK argues its policy does not violate the FLSA. Consequently, GLK contends that Plaintiffs' motion must be denied because they cannot demonstrate that they were all victims of a common *unlawful* practice. But the relevant inquiry at this stage is whether Plaintiffs' claims may reasonably be expected to rise–or fall, as the case may be–together. "Significantly, the focus of this inquiry is 'not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated.'" *Brabazon*, 2011 WL 1131097 at *3 (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)); *accord. Woods*, 686 F.2d at 581 ("[A]t [the conditional certification] stage in the litigation . . . there has been no determination that the plaintiff's allegations have any merit."); *Nehlman*, 822 F. Supp. 2d at 751

5

("In making a determination as to similarity . . . , the court does not consider the merits of a plaintiff's claim, or witness credibility."); *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 971 (W.D. Wis. 2008) ("Plaintiff's claims may be precluded as a matter of law, as defendants[] argue. However, this question is not before the court."). Thus, the determination at the conditional certification stage "does not involve adjudication of the merits of the claims." *Espenscheid v. DirecStat USA, LLC*, 09-CV-625-BBC, 2010 WL 2330309, at *6 (W.D. Wis. June 7, 2010). Plaintiffs' legal claim for relief is not facially meritless, and Plaintiffs have provided a reasonable basis for finding their claims have a common factual nexus. The proposed class of opt-in plaintiffs were all recruited, hired, and worked for GLK under standardized policies, and all complain that GLK's reimbursement policy violates the FLSA's minimum wage requirements. Accordingly, because Plaintiffs have made at least a modest factual showing that they are similarly situated to other putative class members, Plaintiff's motion for conditional certification will be granted.

**II.    Notice**

Along with their brief in support of conditional certification, Plaintiffs have submitted a proposed notice and consent form. District courts have discretion to implement the opt-in provision of § 216(b) by facilitating or modifying the notice to potential plaintiffs. *Hoffman-Laroche*, 493 U.S. at 169. "Once a section 16(b) action is commenced, the defendant has a vital interest in, and the court a managerial responsibility regarding, the joinder of additional parties plaintiff . . . ." *Woods*, 686 F.2d at 580. However, "courts must be scrupulous to respect judicial neutrality" and to avoid "even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. GLK objects to both the form and the manner of Plaintiffs' proposed notice.

6

First, GLK argues that Plaintiffs should not be permitted to inform potential plaintiffs that the FLSA prohibits employers from retaliating against them for discussing or joining the case. GLK argues that none of the plaintiffs are currently employed by GLK, nor is GLK even participating in the H-2B program this year. Accordingly, GLK claims providing potential plaintiffs notice that the law prohibits retaliation against them in connection with this lawsuit would be "unnecessary and could cause confusion as to the grounds for opting into the case." (Defs' Resp. Br. 10-11, ECF No. 43.) As the plaintiffs point out, however, potential interference with opt-in plaintiffs' employment rights could come in various forms not limited to retaliation in connection with current employment. Moreover, such language guards against more than actual retaliation–it prevents the fear of retaliation from interfering with plaintiffs' decision to join the lawsuit. *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) (explaining that among the "central aim[s]" of the FLSA was to proscribe retaliatory acts because "fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions"). The brief paragraph describing the FLSA's anti-retaliation provision is thus appropriate and may be included in the notice. *See, e.g.*, *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 608 (W.D. Wis. 2006).

Second, GLK objects to Plaintiffs' proposal to hold in-person, public meetings in the workers' communities in Mexico in order to notify potential opt-in plaintiffs of the lawsuit. GLK asserts that this Court will have no practical means of monitoring how such meetings are conducted or what discussions may occur there, and therefore, "it should not lend its imprimatur and authority to any such meeting." (Defs.' Resp. Br. 11, ECF No. 43.) To the extent that the Court authorizes in-person meetings, GLK argues that Plaintiffs should be required to limit the scope of the meetings to the wording used in the Notice, to bear the costs, and to provide Defendants' counsel notice of the time and location of the meetings in advance.

7

Plaintiffs concede that generally, first-class mail is a sufficient method for distributing notice to potential opt-in plaintiffs. However, they argue that in this case, it is an inadequate means by which to effectuate notice because "mail service to Mexico is very unreliable and most of the H-2B workers live in remote areas." (Pls' Reply Br. 13-14, ECF No. 48.) Plaintiffs propose a two-stage in-person meeting structure in Mexico. First, representatives of Plaintiffs' counsel will distribute copies of the Notice in a central location and orally provide the information contained in the Notice to anyone who requests it. Plaintiffs agree to bear the up-front costs and to limit the scope of discussions, but contend that Defendants' presence would be unnecessary and inappropriate as it would likely have a substantial chilling effect on potential plaintiffs. At the second stage, Plaintiffs propose that they will make representatives of Plaintiffs' counsel available for individual consultation as a direct substitute for the more typical telephone call or visit to counsel's office. They likewise argue that Defendants' presence at such meetings would be prohibited by attorney-client privilege.

While the Court can conceive of the potential inadequacy of providing notice by mail to the additional 100 H-2B workers in Mexico, it is unclear that court-authorized in-person meetings with Plaintiffs' counsel are a necessary or proper way for the court to exercise its "managerial responsibility regarding, the joinder of additional parties plaintiff . . . ." *Hoffman-La Roche*, 493 U.S. at 171. The fact that more than 70 plaintiffs have already joined the lawsuit seems to belie the plaintiffs' claims regarding the extraordinary challenge of providing notice to potential plaintiffs. In addition, unlike other cases where the potential class of plaintiffs is particularly large or widely dispersed geographically, there is a rather finite number of identifiable potential opt-in plaintiffs that appear to reside in discrete geographic locations–indeed, Plaintiffs' in-person notice proposal relies on this being true in order to be effective. Thus, assuming some of the notices are properly

8

delivered, word-of-mouth may well assist in the further dissemination of the information to those who do not receive the notice by mail.

Finally, in approving a written notice, the court is able to insure that the information conveyed with the court's authorization is neutral and unbiased. The court has no similar ability to insure the information conveyed by Plaintiffs' counsel at a meeting with additional prospective clients has the same neutrality. Absent such control over the message, the court is reluctant to authorize such contact and thereby appear to place its imprimatur upon the information conveyed. While there may be an interest in giving all those affected notice so as to accomplish the broad remedial goal of the statute without subjecting the defendant to multiple lawsuits, there are other interests at stake:

> Our decision does not imply that trial courts have unbridled discretion in managing ADEA actions. Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.

*Hoffman-La Roche*, 493 U.S. at 174.

Balancing those interests here, the court declines to authorize Plaintiffs' counsel to conduct in-person meetings with prospective claimants. In fact, the court declines to take any role in determining whether and how Plaintiffs' counsel chooses to communicate with other workers other than to note he is subject to the ethical constraints and responsibilities dictated by the Rules of Professional Responsibility. Accordingly, at this time, the court will only authorize the Plaintiffs to provide potential opt-in workers with the proposed notice by first-class mail.

Finally, Plaintiffs request that GLK disclose, within 10 days, information regarding the H-2B workers' last known contact information in order to assist in providing notice. Plaintiffs also

9

request a four-week opt-in period following the mailing of the notices. GLK does not oppose the requests, and therefore, they will be granted.

**THEREFORE IT IS ORDERED** that Plaintiffs' motion for conditional certification is **GRANTED**. Within 10 days of the date of this order Defendants will produce to plaintiffs, in a computer-readable format, the names, last-known addresses, telephone numbers, passport numbers, and visa numbers for all H-2B workers employed by the defendants in Bear Creek, Wisconsin in 2010 and 2011.

**IT IS ALSO ORDERED** that plaintiffs are authorized to give notice of this lawsuit to all H-2B workers employed by the defendants in Bear Creek, Wisconsin in 2010 and 2011, in the notice form proposed by Plaintiffs. Such notice may be sent once via first class mail to the conditionally-certified class, and there will be a four-week opt-in period following the mailing of the notices. In addition, for purposes of the record, Plaintiffs shall file with the Court the Spanish translations of both the notice and consent forms.

Dated this    30th    day of July, 2013.

                     s/ William C. Griesbach
                     William C. Griesbach, Chief Judge
                     United States District Court