**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| ALEJANDRO JURADO JIMENEZ; EDGAR ) | |
| NIETO CHAVEZ; JESUS JURADO ) | |
| RAMIREZ; JOSE FRANCISCO YERENA ) | |
| GONZALEZ; JOSE JIMENEZ JURADO; ) | |
| OSWALDO ZUÑIGA MEDINA; ABEL ) | |
| LANDIN GARCIA; ABRAHAM RUIZ ) | |
| MENDOZA; ALEJANDRO PONCE ) | |
| GONZALEZ; ANTONIO JURADO JURADO; ) | |
| ASAEL QUINTANA RAMIREZ; CARLOS ) | |
| JURADO RANGEL; CRISTOBAL MARTINEZ ) | |
| VELEZ; DAVID NIETO JIMENEZ; DIEGO ) | |
| ARMANDO ARROYO GARCIA; EDUARDO ) | |
| ROBLES MEDINA; ENRIQUE ROSAS ) | |
| JURADO; FERNANDO ROSAS RIVERA; ) | |
| FRANCISCO JAVIER NUÑEZ PEREZ; JAIME ) | Civil Action No. 12 cv 209 |
| JURADO ORTIZ; JAVIER ARROYO ORTIZ; ) | |
| J. JESUS JIMENEZ ROSAS; J. JESUS ORTIZ ) | |
| MARTINEZ; J. JESUS ROBLES MEDINA; J. ) | |
| SALUD RODRIGUEZ RAMIREZ; J. SAUL ) | Judge Griesbach |
| JIMENEZ ROSAS; JESUS EDUARDO ) | |
| SANTIAGO GARCIA; JESUS MARTINEZ ) | |
| GALLARDO; JESUS ORTIZ ARRIAGA; ) | |
| JESUS SIFUENTES GUERRERO; JORGE ) | |
| DIMAS JIMENEZ; JOSE ALBERTO GARCIA ) | |
| CAMARGO; JOSE ALBERTO MARTINEZ ) | |
| GONZALEZ; JOSE ANTONIO FLORES ) | |
| PEREZ; JOSE ANTONIO PONCE ) | |
| GONZALEZ; JOSE BACA GUEVARA; JOSE ) | |
| DAVID FLORES MENDOZA; JOSE JAVIER ) | |
| CHAVEZ RANGEL; JOSE JURADO ) | |
| JURADO; JOSE MANUEL LOPEZ ) | |
| VALENCIA; JOSE LORENZO ESPARZA ) | |
| BARRON; JOSE MANUEL ORTEGA ) | |
| PAREDES; JOSE MENDEZ BACA; JOSE ) | |
| RAMON MARTINEZ PALMAS; JOSE ) | |
| ROBERTO MARTINEZ MORENO; JUAN ) | |
| ALMANZA SANCHEZ; JUAN GODINEZ ) | |
| LOPEZ; JULIO CESAR CABRERA ) | |
| GUERRERO; LUCIO LOREDO ) | |
| HERNANDEZ; LUIS ANDRES MUÑOZ ) | |
| ESPINOSA; MARIO RIVAS QUINTANA; ) | |
| MARTIN CHAVEZ JIMENEZ; MIGUEL ) | |
| ORTIZ MARTINEZ; NAZARIO RODRIGUEZ ) | |

GUZMAN; PEDRO TAPIA RODRIGUEZ;          )
RAFAEL ARROYO LOPEZ; RAFAEL             )
JURADO ROSAS; RAUL RAMIREZ              )
LANCON; ROMAN RODRIGUEZ RAMIREZ;        )
ROSENDO AGUILAR CARDENAS; RUBEN         )
NIETO JIMENEZ; SALVADOR BACA            )
JURADO; DARIO FLORES FLORES; ELIAS      )
ORTIZ RAMIREZ; FRANCISCO JAVIER         )
JURADO CHAVEZ; JESUS RICARDO            )
ARROYO MARTINEZ; MARCELINO              )
SIFUENTES GUERRERO; RAMIRO              )
MARTINEZ SANTOS; RAUL FLORES            )
FLORES; ALFREDO BACA LOPEZ;             )
FRANCISCO RUIZ FIGUEROA; JOSE           )
JIMENEZ QUINTANA; RUBEN LANCON          )
BACA; ANTONIO RAMIREZ JIMENEZ; J.       )
JESUS ROMERO CHAVEZ; JOSE JUAN          )
VALADEZ CAMPOS; JOSE JURADO LUVA;       )
JUAN ANTONIO ARROYO JIMENEZ;            )
MANUEL MENDOZA CHIQUITO; MIGUEL         )
LANCON DELGADO; AND RAUL OMAR           )
SILVA RAZO, on behalf of themselves and all   )
others similarly situated,              )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )
                                        )
GLK FOODS, LLC and RYAN A. DOWNS,       )
                                        )
                Defendants.             )


## SECOND AMENDED COLLECTIVE ACTION
## AND CLASS ACTION COMPLAINT

1.      This is a proposed class and collective action by 81 migrant workers recruited

from Mexico and employed in the United States by Defendants under the H-2B temporary

foreign worker visa program from as early as February 2006 through September 2011.  The

Plaintiffs allege that Defendants GLK Foods, LLC ("GLK"), and Ryan A. Downs violated their

rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 2 of 30   Document 67

1871 ("AWPA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), Wisconsin's

Migrant Labor Act, W.S.A. §§ 103.90-.97 ("WMLA"), Wisconsin's wage payments and living

wage laws, W.S.A. §§ 109.01-.12 and Wisconsin's living wage and overtime laws, W.S.A. §§

103-104. Plaintiffs also allege that Defendant GLK's conduct constituted a breach of contract

under Wisconsin common law.

2.      Plaintiffs, on behalf of themselves and others similarly situated ("Class

Members"), seek recovery of unpaid wages and liquidated and statutory damages to make them

whole as a result of Defendants' violations of law. Plaintiffs further seek the costs of litigation

and attorneys' fees.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331,

this case arising under the laws of the United States; 28 U.S.C. § 1337, this action arising under

Acts of Congress regulating commerce; 29 U.S.C. § 1854(a), this action arising under the

AWPA; and 29 U.S.C. § 216(b), this action arising under the FLSA. The Court has

supplemental jurisdiction over Plaintiffs' Wisconsin statutory and common law claims pursuant

to 28 U.S.C. § 1367.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because

the acts or omissions that have given rise to Plaintiffs' claims occurred within this District, and

because Defendants reside in this District.

## PARTIES

5.      Plaintiffs and Class Members are citizens of Mexico. During the periods of time

relevant to this action, Plaintiffs and Class Members were admitted into the United States under

the H-2B temporary foreign worker visa program administered by the U.S. Department of Labor

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 3 of 30   Document 67

pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b).  Workers admitted into the United States under H-2B visas are commonly known as "H-2B workers."

6.      Defendant GLK Foods, LLC is a Wisconsin limited liability company that conducts business in this District, producing goods for sale in interstate commerce.  Specifically, GLK operates a sauerkraut cannery in Bear Creek, Wisconsin, in which raw cabbage is cut, chopped, and prepared to make sauerkraut.

7.      GLK considers itself to be the largest sauerkraut producer in the world and the maker of America's top selling brands of sauerkraut.

8.      Defendant Ryan A. Downs is a resident of Wisconsin and the owner and President of GLK.  Downs conducts significant business in this District.  At all times relevant to this action, Downs has been engaged, through his ownership and operation of GLK, in the production of goods for sale in interstate commerce.

9.      On information and belief, at all times relevant to this action, Downs exercised the authority to hire and fire Plaintiffs and Class Members, supervised and controlled their work schedules and conditions of employment, and determined their rate of pay and method of payment.

## STATEMENT OF FACTS

### Defendants' H-2B Labor Applications and Certifications

10.     In order to be authorized to employ temporary foreign workers under the H-2B program, an employer in the United States must apply for and receive certification from the Department of Labor that (1) there are insufficient workers available in the United States to perform the work to be offered to H-2B workers, and (2) the employment of H-2B workers will

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 4 of 30   Document 67

not adversely affect the wages and working conditions of similarly-employed U.S. workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(b); 8 C.F.R. § 214.2(h)(6)(iv)(A).

11.     Employers seeking the admission of H-2B workers must file an Application for Temporary Employment Certification with the Department of Labor. 20 C.F.R. § 655.20.   In these applications for H-2B certification, employers specify the period of employment and wages and other terms and conditions of employment offered to the workers, including minimum terms and conditions required to be offered by employers pursuant to 20 C.F.R. § 655, Subpart A.

12.     In the years 2006, 2007, 2008, 2010 and 2011, Defendants annually applied for and obtained Department of Labor certifications authorizing GLK to employ H-2B workers to serve as trim line laborers in Defendants' sauerkraut cannery in Bear Creek, Wisconsin. Defendants' H-2B applications and certifications for the 2006, 2007, 2008, 2010 and 2011 seasons are attached as Exhibit A.

13.     In each of Defendants' H-2B applications and certifications for 2010 and 2011, an agent for GLK affirmed, under penalty of perjury, that GLK would:

   a.   Pay the offered wage that "equals or exceeds the highest of the prevailing wage, the applicable Federal, State, or local minimum wage, and…pay the offered wage during the entire period of the approved labor certification." Ex. A at A-10, A-20.

   b.   Provide at least forty (40) hours per week of work for each worker. *Id.* at A-6, A-16.

   c.   Provide work for the entire certified period of employment. *Id.* at A-4, A-14.

   d.   Comply with all federal, state, and local employment-related laws and regulations. *Id.* at A-10, A-20.

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 5 of 30   Document 67

e.  Provide or pay for return transportation from the job site to the workers' homes if workers are terminated prior to the end of the certified period of employment. *Id.* at A-11, A-21.

f.  Provide terms and conditions of employment that are not less than the minimum terms and conditions required under 20 C.F.R. § 655, Subpart A. *Id.* at A-10, A-20.

14.  Defendants' H-2B applications and certifications for 2010 and 2011 also affirmed, under penalty of perjury, that GLK or its agents had not sought or received payment of any kind from an employee for any activity related to obtaining labor certification, including payment of recruitment costs. *Id.* at A-11, A-21.

15.  Defendants' H-2B applications and certifications required the following regular hourly wages to be paid: $7.68 in 2006; $7.68 in 2007; $7.75 in 2008; $7.85 in 2010; and $10.36 in 2011. *Id.* at A-28, A-25, A-23, A-18, A-8.

16.  The Department of Labor certified Defendants to employ sixty-two (62) H-2B workers from May 1, 2006 through November 30, 2006; seventy (70) H-2B workers from May 1, 2007 through November 30, 2007; eighty-eight (88) H-2B workers from March 1, 2008 through November 30, 2008; one hundred and ten (110) H-2B workers from August 9, 2010 through November 30, 2010; and one hundred and forty-three (143) H-2B workers from August 1, 2011 through November 15, 2011. *Id.* at A-28-29, A-25, A-22, A-12, A-1.

**Plaintiffs Relied on Defendants' Promises and Incurred Significant Expenses.**

17.  In 2006, 2007, 2008, 2010, and 2011, Defendants recruited Plaintiffs and Class Members at various locations in Mexico to fill the H-2B positions certified by the Department of Labor.

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 6 of 30   Document 67

18.     At the time of recruitment, Defendants offered Plaintiffs and Class Members H-2B employment, promising to sponsor their visas for such employment, to transport them to the worksite in in Bear Creek, Wisconsin, and to provide them work for a certified period of employment, which was represented to the Department of Labor as a term of the job offer in order to obtain authorization to employ the workers.

19.     Plaintiffs and Class Members accepted Defendants' offer of employment and began employment by leaving their hometowns, traveling to a U.S. Consulate or U.S. Embassy at Defendants' request for immigration processing and to obtain their H-2B visas.

20.     In reliance on Defendants' offer of employment, Plaintiffs and Class Members incurred recruitment, travel, immigration, and other expenses to be authorized and prepared to enter the United States as H-2B workers for GLK and then travel to Wisconsin. But for this offer, Plaintiffs and Class Members would not have incurred these expenses.

21.     Plaintiffs' and Class Members' expenses incurred in reliance on Defendants' promise of employment included but were not limited to: hiring or recruitment fees of between $1,000 and $1,500 U.S. dollars; the costs of Mexican passports; travel expenses from their homes in Mexico to a U.S. Embassy or Consulate in Mexico; visa application fees and other expenses necessary to obtain the H-2B visas; lodging and subsistence expenses near the U.S. Embassy or Consulate in Mexico pending approval of visa applications and before transportation to Wisconsin was arranged by Defendants; travel expenses from the U.S. Embassy or Consulate in Mexico to the border with the United States; and border crossing fees charged by the U.S. Citizenship and Immigration Services.

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 7 of 30   Document 67

22.     The recruitment, immigration, travel and other expenses described in paragraph 21 that Plaintiffs and Class Members incurred were primarily for Defendants' benefit. Plaintiffs and Class Members would not have incurred these costs other than to work for Defendants.

23.     Upon arriving in Bear Creek, Wisconsin, Plaintiffs and Class Members satisfactorily performed work for Defendants.

24.     Defendants never reimbursed Plaintiffs and Class Members for all of the recruitment, immigration, travel and other expenses that they incurred.

25.     In 2010 and 2011, as a result of Plaintiffs and Class Members having to pay recruitment, immigration, travel, and other expenses required to work for Defendants, and Defendants' failure to reimburse such expenses during the first work week, Plaintiffs and Class Members were paid at less than the prevailing wage rate, the FLSA minimum wage rate, and the Wisconsin living wage rate for each worker's first week of work.

26.     In 2010, in violation of the terms of employment set forth in Defendants' 2010 H-2B application and certification, Defendants failed to employ all of the H-2B workers for the full employment period of August 9 - November 30, 2010 as established in the certification. Ex. A at A-14.

27.     In 2011, in violation of the terms of employment set forth in Defendants' 2011 H-2B application and certification, Defendants failed to employ all of the H-2B workers for the full employment period of August 1 - November 15, 2011 as established in the certification. Ex. A at A-4.

28.     In 2010 and 2011, when Defendants fired Plaintiffs and Class Members prior to the certified employment end date, Defendants failed to provide or pay for all of the costs of

return transportation from Defendants' job site to Plaintiffs' and Class Members' homes in Mexico as required by 20 C.F.R. § 655.22(m).

29.     In 2010 and 2011, Defendants failed to employ Plaintiffs and Class Members for forty (40) hours per week during the entire certified period of employment.

30.     In 2011, Defendants failed to keep and provide Plaintiffs and Class Members with accurate records of the basis upon which their wages were paid and the number of hours worked.

31.     In 2011, Defendants failed to pay some of the Plaintiffs' wages for all hours worked at an hourly rate equal to one and a half times the regular hourly rate for all compensable time that the Plaintiffs worked in excess of forty (40) hours in their final week of work. These Plaintiffs are Francisco Javier Jurado Chavez, Jose David Flores Mendoza, Fernando Rosas Rivera, Jorge Dimas Jimenez, Lucio Loredo Hernandez, Francisco Javier Nuñez Perez, Eduardo Robles Medina, Juan Godinez Lopez, Oswaldo Zuñiga Medina, and Jose Francisco Yerena Gonzalez.

32.     In 2011, Defendants required some of the Plaintiffs to work hours not recorded in Defendants' time keeping records and failed to pay them prevailing, minimum, and/or living wages for all hours worked and at an hourly rate equal to one and a half times the regular hourly rate for all compensable time that the Plaintiffs worked in excess of forty (40) hours.  These Plaintiffs are Jose Alberto Martinez Gonzalez, Jose Ramon Martinez Palmas, Jesus Martinez Gallardo, Jose Mendez Baca, Salvador Baca Jurado, Jose Antonio Flores Perez and Nazario Rodriguez Guzman.

33.     Defendants' failure to pay Plaintiffs who worked in 2010 and 2011, including the Plaintiffs listed in paragraphs 31 and 32,  the minimum wage and one and a half times their

regular hourly rate for hours worked in excess of forty (40) hours was willful and not in good faith.

<u>**COLLECTIVE ACTION & CLASS ACTION ALLEGATIONS**</u>

34. Plaintiffs bring the claims set forth in Count I, alleging violations of the FLSA, as an opt-in representative or collective action, on behalf of themselves and other similarly situated persons who have been damaged by Defendants' failure to pay them the minimum wage, as required by the FLSA, during the first work week. Each Plaintiff employed by Defendants in 2010 and/or 2011 has consented to be a party to this litigation. Their written consents are attached at Exhibit B.

35. All claims set forth in Counts III - VIII are brought by Plaintiffs on behalf of themselves and other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

36. Plaintiffs request certification of three distinct classes. The first class, the "2011 Class," consists of all those individuals admitted as H-2B workers who were employed in Defendants' sauerkraut operations in Bear Creek, Wisconsin in 2011 pursuant to the Department of Labor certification for that year. The second class, the "2010 Class," consists of all those individuals admitted as H-2B workers who were employed in Defendants' sauerkraut operations in Bear Creek, Wisconsin in 2010 pursuant to the Department of Labor certification for that year. The third class, the "2006 – 2008 Class," consists of all those individuals admitted as H-2B workers who were employed in Defendants' sauerkraut operations in Bear Creek, Wisconsin in 2006, 2007, and/or 2008 pursuant to the Department of Labor certifications for those years.

37. The 2011 Class is represented by Abel Landin Garcia, Abraham Ruiz Mendoza, Alejandro Jurado Jimenez, Alejandro Ponce Gonzalez, Antonio Jurado Jurado, Asael Quintana

Ramirez, Carlos Jurado Rangel, Cristobal Martinez Velez, Dario Flores Flores, David Nieto Jimenez, Diego Armando Arroyo Garcia, Edgar Nieto Chavez, Eduardo Robles Medina, Enrique Rosas Jurado, Fernando Rosas Rivera, Francisco Javier Jurado Chavez, Francisco Javier Nuñez Perez, J. Jesus Jimenez Rosas, J. Jesus Ortiz Martinez, J. Jesus Robles Medina, J. Salud Rodriguez Ramirez, J. Saul Jimenez Rosas, Jaime Jurado Ortiz, Javier Arroyo Ortiz, Jesus Eduardo Santiago Garcia, Jesus Jurado Ramirez, Jesus Martinez Gallardo, Jesus Ortiz Arriaga, Jesus Ricardo Arroyo Martinez, Jesus Sifuentes Guerrero, Jorge Dimas Jimenez, Jose Alberto Garcia Camargo, Jose Alberto Martinez Gonzalez, Jose Antonio Flores Perez, Jose Antonio Ponce Gonzalez, Jose Baca Guevara, Jose David Flores Mendoza, Jose Francisco Yerena Gonzalez, Jose Javier Chavez Rangel, Jose Jimenez Jurado, Jose Jurado Jurado, Jose Lorenzo Esparza Barron, Jose Manuel Lopez Valencia, Jose Manuel Ortega Paredes, Jose Mendez Baca, Jose Ramon Martinez Palmas, Jose Roberto Martinez Moreno, Juan Almanza Sanchez, Juan Godinez Lopez, Julio Cesar Cabrera Guerrero, Lucio Loredo Hernandez, Luis Andres Muñoz Espinosa, Marcelino Sifuentes Guerrero, Mario Rivas Quintana, Martin Chavez Jimenez, Miguel Ortiz Martinez, Nazario Rodriguez Guzman, Oswaldo Zuñiga Medina, Pedro Tapia Rodriguez, Rafael Arroyo Lopez, Rafael Jurado Rosas, Ramiro Martinez Santos, Raul Flores Flores, Raul Ramirez Lancon, Roman Rodriguez Ramirez, Rosendo Aguilar Cardenas, Ruben Nieto Jimenez, Salvador Baca Jurado, Jose Juan Valadez Campos, and Juan Antonio Arroyo Jimenez.

38.     The 2010 Class is represented by Abel Landin Garcia, Abraham Ruiz Mendoza, Antonio Jurado Jurado, Asael Quintana Ramirez, Carlos Jurado Rangel, Cristobal Martinez Velez, David Nieto Jimenez, Eduardo Robles Medina, Elias Ortiz Ramirez, Enrique Rosas Jurado, J. Jesus Jimenez Rosas, J. Jesus Robles Medina, J. Saul Jimenez Rosas, Jaime Jurado Ortiz, Javier Arroyo Ortiz, Jesus Eduardo Santiago Garcia, Jesus Jurado Ramirez, Jesus

Sifuentes Guerrero, Jose Antonio Flores Perez, Jose Javier Chavez Rangel, Jose Jurado Jurado, Jose Manuel Ortega Paredes, Jose Ramon Martinez Palmas, Jose Roberto Martinez Moreno, Lucio Loredo Hernandez, Marcelino Sifuentes Guerrero, Martin Chavez Jimenez, Rafael Jurado Rosas, Ruben Nieto Jimenez, Salvador Baca Jurado, Jose Juan Valadez Campos, J. Jesus Romero Chavez, Jose Jurado Luva, Antonio Ramirez Jimenez, Manuel Mendoza Chiquito, Miguel Lancon Delgado, and Raul Omar Silva Razo.

39.     The 2006 – 2008 Class is represented by the following Plaintiffs: Alejandro Jurado Jimenez, Antonio Jurado Jurado, Asael Quintana Ramirez, Carlos Jurado Rangel, Cristobal Martinez Velez, David Nieto Jimenez, Elias Ortiz Ramirez, Enrique Rosas Jurado, J. Jesus Jimenez Rosas, J. Jesus Ortiz Martinez, J. Saul Jimenez Rosas, Jesus Jurado Ramirez, Jose Javier Chavez Rangel, Jose Jimenez Jurado, Jose Jurado Jurado, Jose Manuel Ortega Paredes, Jose Mendez Baca,   Jose Roberto Martinez Moreno, Lucio Loredo Hernandez, Marcelino Sifuentes Guerrero, Martin Chavez Jimenez, Miguel Ortiz Martinez, Rafael Jurado Rosas, Raul Ramirez Lancon, Ruben Nieto Jimenez, Alfredo Baca Lopez, Francisco Ruiz Figueroa, Jose Jimenez Quintana, Ruben Lancon Baca, Salvador Baca Jurado, Antonio Ramirez Jimenez, J. Jesus Romero Chavez, Jose Jurado Luva, and Miguel Lancon Delgado.

40.     Members of the 2011 Class, the 2010 Class and the 2006 – 2008 Class are so numerous and geographically dispersed as to make joinder impractical.  The precise numbers of individuals in the Classes are known only to Defendants.  However, each Class is believed to include well over seventy five (75) individuals.  Each Class is comprised of indigent migrant workers who reside throughout Mexico.  As to each Class, the relatively small size of the individual claims, the geographical dispersion of the class, and the indigency of the class

members makes the maintenance of separate actions by each class member economically infeasible.

41.     There are questions of fact and law common to each Class.

A.     For the 2011 Class, the common questions include:

Whether Defendants violated the AWPA by failing to pay Plaintiffs and Class Members the statutory minimum and prevailing wages during each worker's first week of work;

Whether Defendants violated the AWPA by failing to employ Plaintiffs' and Class Members' for the entire certified period of employment;

Whether Defendants violated the AWPA by failing to pay Plaintiffs and Class Members for at least forty (40) hours of work each week;

Whether Defendants violated the AWPA by charging Plaintiffs and the Class Members hiring or recruitment fees;

Whether Defendants violated the AWPA by failing to provide or pay for all of the costs of return transportation from the job site in Wisconsin to Plaintiffs' and Class Members' homes;

Whether Defendants violated the AWPA by failing to provide to Plaintiffs and Class Members a written statement, in English and Spanish, of the terms and conditions of the proffered employment at the time of recruitment;

Whether Defendants violated the AWPA by failing to keep and provide Plaintiffs and Class Members with accurate records of the basis upon which their wages were paid and the number of hours worked;

Whether Defendants' violations of the AWPA were intentional;

Whether contracts were formed when Defendants offered Plaintiffs and Class Members H-2B employment in Bear Creek for the certified period of employment and Plaintiffs and Class Members accepted that offer and began employment by leaving their homes and traveling to a U.S. Consulate or Embassy at Defendants' request for immigration processing and to obtain their visas;

Whether Defendants' offers of employment to Plaintiffs and Class members incorporated, as a matter of law, the terms and conditions for employment certified and set forth in Defendants' 2011 H-2B application and certification, attached as Exhibit A at A-1-11;

Whether Defendant GLK breached the terms of Plaintiffs' and Class Members' employment contracts by (1) failing to pay prevailing wages to Plaintiffs and Class

Members during each worker's first week of work; (2) failing to employ Plaintiffs and Class Members for forty (40) hours of work each week; and (3) failing without cause to provide Plaintiffs and Class Members employment for the entire certified period of employment;

Whether Defendants violated the WMLA by failing to provide to Plaintiffs and Class Members written disclosures, in English and Spanish, at the time of recruitment;

Whether Defendants violated the WMLA by failing to provide to Plaintiffs and Class Members work agreements, in English and Spanish, at the time of hiring;

Whether Defendants violated the WMLA by failing to pay Plaintiffs and Class Members for at least sixty-four (64) hours in each two-week period during the entire period of employment specified in the work agreement;

Whether Defendants violated the WMLA by deducting room and board from the wages of Plaintiffs and Class Members without written consent; and

Whether Defendants violated Wisconsin's wage payments and living wage laws by failing to pay Plaintiffs and Class Members all wages due within thirty-one (31) days.

B.      For the 2010 Class, the common questions include but are not limited to:

Whether Defendants violated the AWPA by failing to pay Plaintiffs and Class Members the statutory minimum and prevailing wages during each worker's first week of work;

Whether Defendants violated the AWPA by failing to employ them for the entire certified period of employment;

Whether Defendants violated the AWPA by failing to pay Plaintiffs and Class Members for at least forty (40) hours of work each week;

Whether Defendants violated the AWPA by failing to provide or pay for all of the costs of return transportation from the job site in Wisconsin to Plaintiffs' and Class Members' homes;

Whether Defendants violated the AWPA by failing to provide to Plaintiffs and Class Members a written statement, in English and Spanish, of the terms and conditions of the proffered employment at the time of recruitment;

Whether Defendants' violations of the AWPA were intentional;

Whether contracts were formed when Defendants offered Plaintiffs and Class Members H-2B employment in Bear Creek for the certified period of employment and Plaintiffs and Class Members accepted that offer and began employment by leaving their homes and traveling to a U.S. Consulate or Embassy for processing at Defendants' request for immigration processing and to obtain their visas;

Whether Defendants' offers of employment to Plaintiffs and Class Members incorporated, as a matter of law, the terms and conditions for employment certified and set forth Defendants' 2010 H-2B application and certification, attached as Exhibit A at A-12-21;

Whether Defendant GLK breached the terms of Plaintiffs' and Class Members' employment contracts by (1) failing to pay prevailing wages to Plaintiffs and Class Members during each worker's first week of work; (2) failing to employ Plaintiffs and Class Members for forty (40) hours of work each week; and (3) failing to provide Plaintiffs and Class Members employment for the entire certified period of employment, instead terminating their employment early without just cause;

Whether Defendants violated the WMLA by failing to provide to Plaintiffs and Class Members written disclosures, in English and Spanish, at the time of recruitment;

Whether Defendants violated the WMLA by failing to provide to Plaintiffs and Class Members work agreements, in English and Spanish, at the time of hiring;

Whether Defendants violated the WMLA by failing to pay Plaintiffs and Class Members for at least sixty-four (64) hours in each two week period during the entire certified period of employment specified in the work agreement; and

Whether Defendants violated Wisconsin's wage payments and living wage laws by failing to pay Plaintiffs and Class Members all wages due within thirty-one (31) days.

C.      For the 2006 – 2008 Class, the common questions of fact and law include but are not limited to:

Whether Defendants violated the AWPA by failing to provide to Plaintiffs and Class Members a written statement, in English and Spanish, of the terms and conditions of the proffered employment at the time of recruitment;

Whether Defendants violated the WMLA by failing to provide to Plaintiffs and Class Members written disclosures, in English and Spanish, at the time of recruitment; and

Whether Defendants violated the WMLA by failing to provide to Plaintiffs and Class Members work agreements, in English and Spanish, at the time of hiring.

42.      The claims of the representative Plaintiffs of each class are typical of the claims of absent class members of each class, and these typical, common claims predominate over any questions affecting only individual class members.  The representative Plaintiffs have the same interests as other Class Members and will vigorously prosecute these interests on behalf of each class.

43.     Plaintiffs' attorneys are experienced in representing plaintiffs in labor and employment class actions and have handled numerous class actions in the federal courts.  They are prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members.

44.     A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia:*

a.  The common issues of law and fact, as well as the relatively small size of the individual Class Members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

b.  Many Class Members are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

c.  There has been no litigation already commenced against Defendants by the members of the class to determine the questions presented;

d.  A class action will allow the Court to adjudicate the claims of all class members at once and enter an appropriate order regarding monetary relief with respect to the Classes as a whole;

e.  A class action can be managed without undue difficulty since Defendants have regularly committed the violations complained of herein, and are required to maintain detailed records concerning each member of the Classes; and

f.  A class action will avoid the heavy burden of multiple, duplicative lawsuits.

45.     Pursuant to Rule 23(c)(2)(B), Plaintiffs request that notice be sent to the Classes of all claims in Counts III - VIII.

### COUNT I
### Fair Labor Standards Act (FLSA)
### (Collective Action: Week One Wages in 2010 and 2011)

46.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 45 above.

47.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs employed by Defendants in 2010 and/or 2011 ("2010 – 2011 Plaintiffs") have consented in writing to be party plaintiffs in this FLSA action.  Ex. B.

48.     By failing to reimburse each 2010 - 2011 Plaintiff during his first week of work for recruitment, immigration, travel, and other expenses that Plaintiffs incurred primarily for the benefit of Defendants, each 2010 - 2011 Plaintiff's wages for his first week of work were depressed below the applicable federal minimum wage. As a result, Defendants violated the minimum wage provision of the FLSA, 29 U.S.C. § 206(a), which requires that Defendants pay 2010 - 2011 Plaintiffs the applicable minimum wage for every compensable hour of labor they performed for Defendants in 2010 and/or 2011.

49.     As a consequence of Defendants' willful FLSA violations, 2010 – 2011 Plaintiffs and other similarly situated persons are entitled to recover their unpaid minimum wages for 2010 and 2011, plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).  Pursuant to the FLSA, Plaintiffs request that notice of all claims in Count I be sent to other similarly situated individuals.

**<u>COUNT II</u>**
**Fair Labor Standards Act (FLSA)**
**(Individual Plaintiffs: Failure to pay for all hours worked and failure to pay overtime in 2011)**

50.     Plaintiffs named in paragraphs 31 and 32 re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 33.

51.     In 2011, Defendants violated the FLSA, 29 U.S.C. § 206(a), by failing to pay the Plaintiffs named in paragraph 32 the federal minimum wage for all hours worked.

52.     In 2011, Defendants violated the FLSA, 29 U.S.C. § 207(a), by failing to pay the Plaintiffs named in paragraphs 31 and 32 at an hourly rate equal to one and a half times the

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 17 of 30   Document 67

regular hourly rate for all compensable time that they were employed in excess of forty (40) hours in each work week.

53.     As a consequence of Defendants' willful FLSA violations, Plaintiffs named in paragraphs 31 and 32 are entitled to recover their unpaid minimum and overtime wages for 2011, plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT III

**Migrant and Seasonal Agricultural Worker Protection Act (AWPA)**
**(2010 and 2011 Classes: Failure to Comply with Working Arrangement and Failure to Pay Wages When Due)**

54.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 45.

55.     At all times relevant to this action, Plaintiffs and Class Members were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A), in that they were employed in agricultural employment of a temporary nature and were required to be absent overnight from their permanent places of residence.

56.     At all times relevant to this action, Defendants were employers within the meaning of 29 U.S.C. § 1802(2).

57.     At various times in 2010 and 2011, Defendants recruited individuals in Mexico to travel to the United States to work as H-2B workers for Defendants.

58.     At the time of their recruitment, Plaintiffs and Class Members were promised a wage equal to the prevailing wage for at least forty (40) hours per week of work.

59.     At the time of their recruitment, Plaintiffs and Class Members were promised work for the certified period of employment.

60.     The promises Defendants made to Plaintiffs and Class Members at the time of recruitment constitute terms of the working arrangement between Defendants and Plaintiffs and Class Members pursuant to the AWPA, 29 U.S.C. § 1822(c), and its attendant regulations, 29 C.F.R. § 500.72 (the "AWPA working arrangement").

61.     Defendants intentionally failed to comply with the promises they made to Plaintiffs and Class Members at the time of their recruitment.

62.     Defendants' intentional failure to comply with the promises made to workers at the time of recruitment was in violation of the AWPA working arrangement.

63.     Defendants required many Plaintiffs and Class Members to pay a hiring or recruitment fee of between $1,000 and $1,500, in violation of the H-2B regulations, 20 C.F.R. § 655.22(g)(2) and (j), which are incorporated into the AWPA working arrangement.

64.     The terms and conditions of employment set forth in Defendants' H-2B applications and certifications described in paragraphs 12 - 15 constitute terms of the AWPA working arrangement.

65.     Under the terms and conditions of Defendants' H-2B applications and certifications, as incorporated into the AWPA working arrangement, Defendants were required to pay Plaintiffs and Class Members for all work performed, consistent with federal and state law, the prevailing wage rate throughout each certified period of employment and a stated overtime wage throughout each certified period of employment for each hour worked beyond forty (40) hours in a given work week.

66.     Under the terms and conditions of Defendants' H-2B applications and certifications, as incorporated into the AWPA working arrangement, Defendants were required

to provide a minimum of forty (40) hours of work per week throughout each certified period of employment.

67.     Under the terms and conditions of Defendants' H-2B applications and certifications, as incorporated into the AWPA working arrangement, Defendants were required to provide or pay for return transportation from Defendants' job site to Plaintiffs' and Class Members' homes.

68.     Defendants violated the AWPA working arrangement as follows:

    a.  Defendants intentionally failed to pay Plaintiffs and Class Members the prevailing wage for each worker's first week of work in each season by failing to reimburse Plaintiffs and Class Members for expenses they incurred primarily for the benefit of Defendants;

    b.  Defendants intentionally failed to pay Plaintiffs and Class Members for at least forty (40) hours of work each week;

    c.  Defendants intentionally failed without cause to employ Plaintiffs and Class Members for the entire certified period of employment each season;

    d.  Defendants intentionally failed to provide or pay for return transportation from Defendants' job site to Plaintiffs' and Class Members' homes; and

    e.  Defendants required many Plaintiffs and Class Members to pay a hiring or recruitment fee.

69.     Further, as a result of Defendants' intentional acts and omissions, Defendants failed to pay Plaintiffs and Class Members their wages owed to them when due, thereby violating the AWPA, 29 U.S.C. § 1822(a), and its attendant regulations, 29 C.F.R. § 500.81.

70.     As a consequence of Defendants' intentional AWPA violations, Plaintiffs and Class Members are each entitled to recover the greater of their actual damages, including unpaid wages for the 2010 – 2011 seasons, or statutory damages of up to $500, for each of the violations described above. 29 U.S.C. § 1854(c).

## **COUNT IV**

**Migrant and Seasonal Agricultural Worker Protection Act (AWPA)**
**(2006 – 2008 Class, 2010 Class and 2011 Class: Failure to Provide Written Statement)**

71.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 45.

72.     At all times relevant to this action, Plaintiffs and Class Members were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A), in that they were employed in agricultural employment of a temporary nature and were required to be absent overnight from their permanent places of residence.

73.     At all times relevant to this action, Defendants were employers within the meaning of 29 U.S.C. § 1802(2).

74.     At various times in 2006, 2007, 2008, 2010 and 2011 Defendants recruited individuals in Mexico to travel to the United States to work as H-2B workers for Defendants.

75.     At the time Plaintiffs and Class Members were recruited, they were not provided with a written statement of the terms and conditions of the proffered employment, in English and Spanish, in violation of the AWPA, 29 U.S.C. § 1821(a) and (g), and its attendant regulations, 29 C.F.R. §§ 500.75(b), 500.78.

76.     As a consequence of Defendants' intentional AWPA violations, Plaintiffs and Class Members are each entitled to recover statutory damages of up to $500 for each of the violations described above. 29 U.S.C. § 1854(c).

**COUNT V**
**Migrant and Seasonal Agricultural Worker Protection Act (AWPA)**
**(2011 Class: Failure to Keep Accurate Records)**

77.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 45.

78. At all times relevant to this action, Plaintiffs and Class Members were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A), in that they were employed in agricultural employment of a temporary nature and were required to be absent overnight from their permanent places of residence.

79. At all times relevant to this action, Defendants were employers within the meaning of 29 U.S.C. § 1802(2).

80. In 2011, Plaintiffs and Class Members worked for Defendants as H-2B workers.

81. During their period of employment, Defendants failed to make, keep and preserve accurate records of the number of hours worked and pay received by Plaintiffs and Class Members in violation of 29 U.S.C. § 1821(d)(1), 29 U.S.C. § 1821(d)(2) and 29 C.F.R. § 500.80(a).

82. Defendants intentionally kept inaccurate records by failing to record all hours worked by Plaintiffs and Class Members.

83. As a consequence of Defendants' intentional AWPA violations, Plaintiffs and Class Members are each entitled to recover statutory damages of up to $500 for each of the violations described above. 29 U.S.C. § 1854(c).

## COUNT VI (ONLY AGAINST GLK)
### Breach of Contract
### (2010 Class and 2011 Class)

84. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 45.

85. Defendants' 2010 and 2011 H-2B applications and certifications setting forth terms and conditions of employment constitute employment contracts between Defendants and Plaintiffs and Class Members.

86.     Defendants' promises to Plaintiffs and Class Members at the time of their recruitment in 2010 and 2011, and Plaintiffs' and Class Members' acceptance of Defendants' offers of employment based upon such promises, formed employment contracts between Defendant GLK and Plaintiffs and Class Members.

87.     The WMLA, W.S.A. § 103.915(1)(b), required Defendants to enter into written work agreements with Plaintiffs and Class Members.  Such work agreements set the terms of the employment contracts between Defendants and Plaintiffs and Class Members.

88.     At all relevant times, Plaintiffs and Class Members performed satisfactorily all employment duties and responsibilities required of them under the employment contracts described above.

89.     Defendants breached Plaintiffs' and Class Members' employment contracts in the following ways:

     a.  Defendants paid Plaintiffs and Class Members at rates below the applicable prevailing wage rate for each worker's  first week of work in each season;

     b.  Defendants failed to provide employment that complied with all applicable federal and state employment-related laws and regulations;

     c.  Defendants failed to provide forty (40) hours of work each week;

     d.  Defendants failed to provide work for the certified period of employment each season; and

     e.  Defendants failed to provide or pay for all of the costs of return transportation from the job site in Wisconsin to Plaintiffs' and Class Members' homes in 2010 and 2011 when Defendants terminated Plaintiffs' and Class Members' employment prior to the end of the certified period of employment.

90.     Defendants' breaches of Plaintiffs' and Class Members' employment contracts caused Plaintiffs and Class Members substantial injuries, for which Plaintiffs and Class Members are entitled to actual and consequential damages.

**Wisconsin Migrant Labor Act (WMLA)**
**(2006-2008 Class, 2010 Class and2011 Class)**

91.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 45.

92.     With respect to the 2011 Class, the 2010 Class, and the 2006 – 2008 Class, Defendants violated the WMLA, W.S.A. § 103.90 et seq., as follows:

     a.  Defendants failed to provide to Plaintiffs and Class Members written disclosures, in English and Spanish, at time of recruitment in violation of W.S.A. §§ 103.915(1)(a), (8); and

     b.  Defendants failed to provide to Plaintiffs and Class Members work agreements, in English and Spanish, at the time of hiring in violation of W.S.A. §§ 103.915(1)(b), (4), (8); and

     c.  With respect to the 2011 Class, Defendants deducted sums from the wages of 2011 Plaintiffs and Class Members without written consent in violation of W.S.A. § 103.93(3).

93.     With respect to the 2011 Class and the 2010 Class, Defendants violated the WMLA by failing to pay Plaintiffs and Class Members at least sixty-four (64) hours of work for every two weeks within the period of employment stated in the work agreements in violation of W.S.A. § 103.915(4)(b).

94.     As a consequence of Defendants' violations of the WMLA, Plaintiffs and Class Members for 2010 and 2011 are entitled to unpaid wages and statutory damages, pursuant to W.S.A. § 103.97(1)(a), of $100 for each violation.

95.     As a consequence of Defendants' violations of the WMLA, 2006 – 2008 Plaintiffs and Class Members are entitled to statutory damages, pursuant to W.S.A. § 103.97(1)(a), of $100 for each violation.

**COUNT VIII**
**Wisconsin Wage Payments and Living Wage Laws**

**(2010 Class and 2011 Class)**

96.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 45.

97.     At all relevant times, Defendants were "employers" within the meaning of W.S.A. §§ 103.001 and 104.01. At all relevant times, Defendants employed "employee[s]," including, Plaintiffs and Class Members, within the meaning of W.S.A. §§ 103.001 and 104.01.

98.     The Wisconsin living wage throughout 2010 and 2011 was $7.25 per hour. Wisconsin Administrative Code § DWD 272.03.

99.     In 2010 and 2011, Defendants violated Wisconsin's wage payments and living wage laws, W.S.A. §§ 104.02, 104.03, 109.03(1), and Wisconsin Administrative Code § DWD 272.03, by failing to pay to Plaintiffs and Class Members the Wisconsin living wage for all hours worked within thirty-one (31) days. These violations occurred as a result of Defendants' failure to reimburse Plaintiffs and Class Members for recruitment, immigration, travel and other expenses that Plaintiffs and Class Members incurred primarily for the benefit of Defendants.

100.    As a consequence of Defendants' violations of Wisconsin's wage payments and living wage laws, Plaintiffs and Class Members are entitled to unpaid wages, plus an additional fifty percent (50%) of the amount of unpaid wages pursuant to W.S.A. § 109.11(2)(a), and costs of suit and reasonable attorneys' fees pursuant to W.S.A. § 109.03(6).

## <u>COUNT IX</u>
**Wisconsin Living Wage and Overtime Law**
**(Individual Plaintiffs)**

101.    Plaintiffs listed in paragraph 31 and 32 individually re-allege and incorporate by reference the allegations in paragraphs 1 - 33.

102.     At all relevant times, Defendants were "employers" within the meaning of W.S.A. §§ 103.001 and 104.01. At all relevant times, Defendants employed "employee[s]," including, Plaintiffs, within the meaning of W.S.A. §§ 103.001 and 104.01.

103.     In 2011, Defendants violated W.S.A. §§ 104.02, 104.03 and Wisconsin Administrative Code §§ DWD 272.001 and DWD 272.03 by failing to pay Plaintiffs, as set forth in paragraph 32, a living wage for all hours worked.

104.     In 2011, Defendants violated W.S.A. §§ 103.02, 103.03 and Wisconsin Administrative Code § DWD 274.03 by failing to pay Plaintiffs named in paragraphs 31 and 32 an hourly rate equal to one and a half times the regular hourly rate for all compensable time they worked in excess of forty (40) hours in each work week.

105.     As a result of Defendants' failure to pay living and overtime wages earned and due to Plaintiffs in paragraphs 31 and 32, the Plaintiffs are entitled to recover their unpaid living wages and overtime wages earned, plus an additional fifty percent (50%) of unpaid wages in liquidated damages pursuant to W.S.A. § 109.11, costs of suit and reasonable attorneys' fees pursuant to W.S.A. § 109.03(6).


**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that this Court:

A.  Permit the case to proceed as a collective action with respect to the claims set forth in Count I;

B.  Certify this case as a class action in accordance with Fed. R. Civ. P. 23(b)(3) with respect to the claims set forth in Counts III –VIII;

C. Declare that Defendants violated the minimum wage and overtime provisions of the FLSA, as set forth in Counts I and II;

D. Declare that Defendants' violations of the FLSA were willful and not in good faith;

E. Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, on their claims under the FLSA, as set forth in Counts I and II;

F. Award each Plaintiff and all other individuals who opt-in to this action his unpaid minimum and overtime wages for three years prior to the filing of this lawsuit plus an equal amount in liquidated damages, as set forth in Count I;

G. Award the Plaintiffs set forth in paragraphs 31 and 32 unpaid minimum and overtime wages for three years prior to the filing of this lawsuit plus an equal amount in liquidated damages, as set forth in Count II;

H. Declare that Defendants intentionally violated the AWPA and its attendant regulations, as set forth in Counts III, IV and V;

I. Grant judgment in favor of Plaintiffs and Class Members and against Defendants, jointly and severally, on Plaintiffs' and Class Members' claims under the AWPA, as set forth in Counts III, IV and V;

J. Award each Plaintiff and Class Member actual damages or statutory damages, whichever is greater, for each violation of the AWPA set forth in Count III, IV and V;

K.  Grant judgment in favor of Plaintiffs and Class Members and against Defendant GLK on the breach of contract claims set forth in Count VI;

L.  Award Plaintiffs and Class Members their actual and consequential damages for the breach of contract as set forth in Count VI;

M.  Grant judgment in favor of Plaintiffs and Class Members and against Defendants, jointly and severally, on their claims under the WMLA, as set forth in Count VII;

N.  Award each Plaintiff and Class Member actual or statutory damages for each violation of the WMLA in Count VII;

O.  Grant judgment in favor of Plaintiffs and Class Members and against Defendants, jointly and severally, on their claims under the wage payments and living wage provisions of Wisconsin state law, as set forth in Count VIII and IX;

P.  Award each Plaintiff and Class Member unpaid wages under the wage payments and living wage provisions of Wisconsin state law, as set forth in Count VIII and IX;

Q.  Declare that Defendants violated the living wage and overtime provisions of Wisconsin state law, as set forth in Count IX;

R.  Grant judgment in favor of Plaintiffs identified in paragraphs 31 and 32 and against Defendants, jointly and severally, on their claims under the living wage and overtime provisions of Wisconsin state law, as set forth in Count X;

S.   Award each Plaintiff in paragraph 31 and 32 his unpaid minimum and overtime wages for two years prior to the filing of this lawsuit plus liquidated damages, as set forth in Count IX;

T.   Award Plaintiffs the costs of this action;

U.   Award Plaintiffs reasonable costs and attorneys' fee with respect to their FLSA claims pursuant to 29 U.S.C. § 216(b), with respect to the Wisconsin wage payments, living wage, and overtime claims pursuant to W.S.A. § 109.03(6), and with respect to their breach of contract claims pursuant to the common-fund doctrine; and

V.   Grant such further relief as is just and equitable.

Dated:   October 22, 2013

Respectfully submitted,

s/ Joshua Karsh
One of Plaintiffs' Attorneys

Matthew J. Piers/2206161              Weeun Wang/33862
Joshua Karsh/6203096                  Nicholas Marritz/283540
José J. Behar/6203727                 Attorney for Plaintiffs
Christopher J. Wilmes/6287688         Farmworker Justice
Jenna Miara/6288306                   1126 16th Street, N.W., Suite 270
Claudia M. Flores/4184867             Washington, D.C. 20036
Attorneys for Plaintiffs              (202) 293-5420 ext. 308
Hughes Socol Piers Resnick & Dym, Ltd.  wwang@farmworkerjustice.org
70 W. Madison Street, Suite 4000      nmarritz@farmworkerjustice.org
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
        jkarsh@hsplegal.com

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 29 of 30   Document 67

jbehar@hsplegal.com
cwilmes@hsplegal.com
jmiara@hsplegal.com
cflores@hsplegal.com

Case 1:12-cv-00209-WCG   Filed 12/11/13   Page 30 of 30   Document 67