## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

| | | |
|---|---|---|
| ALEJANDRO JURADO JIMENEZ et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-C-0209 |
| | ) | |
| GLK FOODS, LLC and RYAN A. DOWNS, | ) | |
| | ) | |
| Defendants. | ) | Judge Griesbach |
| | ) | |

## PLAINTIFFS' CORRECTED MEMORANDUM IN SUPPORT OF ADJUDICATING, ON A CLASS-WIDE BASIS, GLK'S LIABILITY, UNDER COUNTS III, VI, AND VIII FOR NOT EMPLOYING H-2B WORKERS FOR THE CERTIFIED PERIOD OF EMPLOYMENT AND NOT REIMBURSING THEM FOR VISA AND TRAVEL EXPENSES

In 2010, Defendant GLK recruited and hired more than 83 migrant workers from Mexico to work as "trim-line laborers" to process cabbage into sauerkraut at its cannery in Bear Creek, Wisconsin. GLK employed these workers as part of the federal government's H-2B temporary "guestworker" visa program. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). In 2011, GLK similarly employed 92 Mexican migrant workers as H-2B workers.

H-2B employment is highly regulated. In both 2010 and 2011, as a condition of receiving authorization to "import" foreign workers, GLK complied with an administrative certification process that included filing an Application for Temporary Employment Certification with the U.S. Department of Labor ("DOL"). *See* 20 C.F.R. § 655.22 (2009). As part of that application process, GLK certified, under penalty of perjury, that all H-2B workers it employed would be provided employment under specific, mandatory terms and conditions. *See* App. Exh. A (2010 and 2011 GLK Applications for Temporary Employment Certification).

One of the required terms that GLK agreed to was a promise to employ H-2B workers for no less than 40 hours per week, for a defined rather than an indefinite term. In its applications in both 2010 and 2011, GLK certified specific intended start and end dates for employment for H-2B workers. *See* App. Exh. A.

In addition to the federal government, the State of Wisconsin also requires employers to hire migrant workers for a definite term, rather than at-will. Wisconsin also requires that that period of employment be memorialized by the employer in written disclosures, which must contain a "minimum work guarantee," and which must be provided to workers both at the time of recruitment and at the time of hiring. W.S.A. § 103.915(1)(b)(4); Wis. Admin. Code § DWD 301.06(8).

The rationale for eliminating at-will employment for H-2B workers, under both state and federal law, is clear: H-2B workers often leave families and other jobs, travel many hundreds of miles, and incur substantial out-of-pocket visa and travel expenses to accept H-2B employment. Both Congress and the state of Wisconsin have endeavored to protect these workers against the risk, which the workers cannot otherwise effectively mitigate or insure against, of being victimized by a bait-and-switch, whereby an employer belatedly tells them, only after their arrival at a job site in the United States, that the job that was supposed to last fifteen weeks will in fact last only a few—which is what happened to the H-2B workers employed by GLK both in 2010 and 2011.

In its 2010 application, GLK certified that employment for H-2B workers going to work in Bear Creek would last 16 weeks and 2 days, beginning on August 9th and ending on November 30th. App. Exh. A. In 2011, GLK certified that employment for H-2B workers going to work in Bear Creek could be expected to last 15 weeks and 2 days, beginning on August 1st

2

and ending on November 15th.  In both 2010 and 2011, GLK certified that it would provide the workers with at least 40 hours of work per week over the certified period of employment. *Id.* Then, in both seasons, GLK unilaterally changed the terms, choosing to employ every H-2B worker for a substantially shorter period than it had certified.

In Counts III and VI of their Second Amended Complaint (ECF No. 67), Plaintiffs allege that by not employing H-2B workers for the certified period of employment in 2010 and 2011, GLK violated the parties' "working arrangement" under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1822(c) (Count III); violated Wisconsin's wage payment and living wage laws (Count VIII; *see* W.S.A. §§ 103.001, 104.01 and Wisconsin Administrative Code § DWD 272.03); incurred common-law liability for breach of contract (Count VI); and consequently owes the workers wages for the balance of the certified period of employment in both seasons.

In addition to these claims for GLK's breach of the AWPA working arrangement and breach of contract by not employing H-2B workers for the certified period of employment, Plaintiffs also claim a second and distinct breach of both the AWPA and the common law of contract in Counts III and VI. Specifically, Count III alleges that GLK's failure to reimburse its H-2B workers for their visa and travel expenses before the end of the first workweek, which, as a result, reduced that week's wages below the applicable prevailing wage rate for H-2B employment ($7.85 per hour in 2010, and $10.36 per hour in 2011), violated the AWPA's requirement to pay full wages when due. *See* 29 U.S.C. § 1822(a)(l) and 20 C.F.R. § 655.10. Count VI pleads the same conduct as a breach of contract at common law. Count VIII pleads it

as a violation of Wisconsin's wage payment and living wage laws. *See* W.S.A. §§ 103.001, 104.01 and Wisconsin Administrative Code § DWD 272.03.[1]

This motion for class certification seeks to certify these claims in Counts III, VI, and VIII, arising from GLK's not employing H-2B workers for the certified period of employment and not reimbursing them for visa and travel expenses, for class-wide adjudication. However, Plaintiffs seek to certify only the *liability* component of these claims under Rule 23. If liability is established, determinations of the damages sustained by individual class members as a result of these claims would be reserved for separate, subsequent proceedings. This is in conformity with the Seventh Circuit's recommendation that this form of "divided" or "hybrid" certification, where liability is determined "on a class-wide basis, with separate hearings [later] to determine— if liability is established—the damages of individual class members," is "often … the sensible way to proceed." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). *Accord: Phillips v. Asset Acceptance, LLC*, __ F.3d ___ (7th Cir. Dec. 2, 2013); *McReynolds v. Merrill Lynch*, 672 F.3d 482, 491 (7th Cir. 2012).

The conduct at issue here occurred in two successive seasons: 2010 and 2011. Plaintiffs seek to certify one class of workers for each season. The "2010 Class" would consist of H-2B workers employed by GLK in 2010, in order to prosecute, on a class-wide basis, GLK's liability, under Counts III, VI and, VIII, both for not employing H-2B workers for the certified period of

---

[1] These claims asserting that, by not reimbursing H-2B workers for visa and travel expenses, GLK reduced their first week's wages below the *prevailing* wage rate differ from Plaintiffs' separate FLSA claim in Count I; the FLSA claim asserts that this same conduct also impermissibly reduced workers' first week earnings below the federally mandated *minimum* wage. Once established, damages for the failure to pay the prevailing wage will exceed damages for failure to pay the (lower) minimum wage.

4

employment and for not reimbursing them for their visa and travel expenses before the end of the

first workweek, during the 2010 season.[2] Membership in this class would be defined as:

> All H-2B workers employed by GLK in Bear Creek, Wisconsin in
> **2010**. However, with respect to claims for post-termination wages
> or damages, this class excludes workers who have waived such
> claims.

The "2011 Class," distinct but parallel, would be comprised of H-2B workers employed by GLK

in 2011, in order to prosecute class-wide the same claims for liability under Counts III, VI and

VIII for the 2011 season, and would be defined as:

> All H-2B workers employed by GLK in Bear Creek, Wisconsin in
> **2011**. However, with respect to claims for post-termination wages
> or damages, this class excludes workers who have waived such
> claims.

Both classes meet the conditions for class certification under Fed. R. Civ. P. 23(b)(2). Both could

also be certified for class-wide adjudication of liability issues under Rule 23(c)(4), which

authorizes the formation and certification of "issue" classes (as discussed in this memorandum).

Alternatively, certification could also appropriately be entered under Rule 23(b)(3). Plaintiffs

also request the appointment of class counsel pursuant to Rule 23(g) and the designation of

Alejandro Jurado Jimenez, José Jurado Jurado, and J. Saul Jimenez Rosas as class

representatives for both the 2010 Class and the 2011 Class.[3]

---

[2] In addition to segregating classes by season, one for 2010 and one for 2011, classes could also be
divided by claim, with claims for not employing H-2B workers for the certified period of employment in
2010 certified in one class and claims for not reimbursing H-2B workers for visa and travel expenses in
2010 in another class, and likewise for 2011. This would result in four classes rather than two, adding
complexity but not, Plaintiffs submit, any tangible benefit.

[3] At the same time as this motion, Plaintiffs have also filed a separate motion to certify two additional
classes, to prosecute the non-FLSA wage claims they have brought as Counts III and VI of their Second
Amended Complaint. One of those classes would consist of H-2B workers employed by GLK during the

## Background Facts

To gain authorization to hire H-2B workers, the DOL requires employers, and required GLK, to file an Application for Temporary Employment Certification (Form 9142). *See* App. Exh. A.  As part  of that application, GLK was required to certify, under penalty of perjury, that workers would be guaranteed certain terms and conditions of employment, required by rules and regulations governing the federal government's "H-2B" temporary guestworker program *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). These rules and regulations exist to combat the substandard and exploitative conditions, including underpayment, undisclosed or unauthorized deductions, manipulation of wage rates, and lack of job security that have historically characterized the labor market for migrant workers.[4]

One of the required terms and conditions of H-2B employment is a guarantee of employment for a definite term, including specified beginning and end dates. *See* App. Exh. B (20 C.F.R. § 655.22(d) (the "period of employment") and (f) ("end date of the employment specified in the application.").[5] *See also* Wis. Admin. Code § DWD 301.06(8) (similarly defining and requiring a "minimum work guarantee").

---

2010 season; the second would cover H-2B workers employed by GLK during the 2011 season.

[4] Migrant workers "have long been among the most exploited groups in the American labor force." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1505 (11th Cir. 1993) (quoting S. Rep. No. 93-1295, 93d Cong., 2d Sess. 1-3 (1974), reprinted in 1974 U.S.C.C.A.N. 6441, 6441-43).

[5] DOL regulations for the H-2B program specifically provide two circumstances under which "separation" of the worker may occur prior to the "end date of the employment specified in the application." App. Exh. B (20 C.F.R. § 655.22(f)). The two circumstances are abandonment of the position by the worker and termination of the worker "for cause." *Id.*  Should either of these conditions occur, the employer is required to notify the Department of Labor and DHS within two workdays. *Id.*  GLK has not alleged either that the Plaintiffs abandoned their employment or were terminated for cause.

In Counts III and VI of their Second Amended Complaint, plaintiffs allege that the terms set forth in GLK's H-2B Applications for Temporary Employment Certification, including the certified period of employment set forth in that application, become binding terms of employment between H-2B employers and H-2B workers; that in breach of these binding terms GLK employed each if its 2010 H-2B workers for a period much shorter than the certified period of employment; that, likewise, GLK employed every H-2B worker employed by the company in 2011 for a period much shorter than the certified period of employment; and that because GLK employed and paid every one of its H-2B workers for less than the certified period of employment in those years, GLK still owes them wages for the balance of the certified period of employment. Count III pleads this wage claim as a violation of the AWPA, and Count VI pleads it as a breach of contract at common law.

The major factual predicate underlying these claims—that in both 2010 and again in 2011 GLK employed every H-2B worker it hired for a period shorter than the certified period of employment—is not disputed. Instead, for purposes of this claim, the controversy in this case centers on: (a) whether there exists a legal obligation on the part of H-2B employers to employ H-2B workers for the certified period of employment; and (b) if so, whether Defendants nevertheless have a cognizable and viable defense for employing class members for a shorter period in 2010 and/or 2011. As demonstrated below, these disputed questions must be answered the same for every member of the 2010 Class and also for every member of the 2011 Class. Whether H-2B employment is employment at-will or employment for a defined term is a question on which these claims for every member of the proposed classes rise or fall; and it will be answered identically for every H-2B worker employed by GLK in 2010 or 2011. Likewise, the question of whether Defendants have a cognizable and viable defense for not employing H-

7

2B workers for the certified period of employment is a common question underlying the claims of every H-2B worker employed by GLK during the 2010 season, as it also is for every H-2B worker employed by GLK in the 2011 season. These are questions amenable to and ideally suited for class-wide adjudication.

The same holds true for Plaintiffs' claims in Count III, VI, and VIII arising from GLK's not reimbursing any H-2B workers for their visa and travel expenses during the first week of work, thereby reducing all of their first-week's earnings below the federally-mandated prevailing wage rate.[6] *See* this Court's Mem. Op. dated July 30, 2013 (ECF No. 50) at 2, 3 and 5 (discussing evidence that all H-2B workers employed by GLK in 2010 and 2011 are "in the same position" with respect to claims for reimbursement of pre-employment expenses, when analyzing this claim for purposes of the FLSA). These, too, are questions amenable to and ideally suited for class-wide adjudication.

**ARGUMENT**

The Supreme Court has held that class-certification under Rule 23 is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," but that when those prerequisites have been satisfied, the certification of a class is mandatory, stating that Rule 23 "creates a categorical rule," affirmatively "entitling" any "plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). *See also*

---

[6] As mentioned in footnote 1, above, the claims in Counts III, VI and VIII asserting that, by not reimbursing H-2B workers for pre-employment expenses, GLK reduced their first week's wages below the *prevailing* wage rate differ from Plaintiffs' separate FLSA claim in Count I. That FLSA claim asserts that the same conduct also impermissibly reduced workers' first week earnings below the federally mandated *minimum* wage. Once established, damages for the failure to pay the prevailing wage will exceed damages for failure to pay the (lower) minimum wage.

*Subedi v. Merchant*, 2010 WL 1978693 * 2 (N.D. Ill. May 17, 2010) ( "satisfaction of [the Rule 23] requirements…*categorically entitles a plaintiff to pursue her claim as a class action*") (emphasis added).

As a threshold to class certification, a claim must satisfy each of the four "class-qualifying criteria,", established by subdivision (a) of Rule 23: numerosity, commonality, typicality and adequacy. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 (1997). If those criteria are met, then, in addition, the claim also must fit one of the three prongs of Rule 23(b)— or, alternatively, discrete issues or portions of claims may be certified under Rule 23(c)(4) (for example, the court may certify liability issues, while reserving individual damages issues). *Phillips v. Asset Acceptance, LLC*, __ F.3d ___ (7th Cir. Dec. 2, 2013); *Butler v. Sears Roebuck*, 727 F.3d 796, 800 (7th Cir. 2013) ("Rule 23(c)(4)…will often be the sensible way to proceed"); *McReynolds v. Merrill Lynch*, 672 F.3d 482, 491 (7th Cir. 2012).

As discussed below, the AWPA working arrangement and contract claims in Counts III and VI of Plaintiffs' Second Amended Complaint satisfy both the criteria in Rule 23(a) and the additional conditions required for certification under Rule 23(b)(2), Rule 23(b)(3), or Rule 23(c)(4).

I.    **The Liability Claims In Counts III, VI And VIII For GLK's Breach Of Its Obligations To Employ H-2B Workers For The Certified Period Of Employment And To Reimburse Them For Pre-Employment Expenses Qualify For Class-Wide Adjudication Under Rule 23(a).**

   A.    **Numerosity**

Rule 23(a)(1) requires "numerosity," although without "identify[ing] a magic threshold number required to establish numerosity." *Schmidt v. Bassett Furniture Indust*., 2011 WL 67255 (E.D. Wis. Jan. 10, 2011). In 2010, GLK employed 83 H-2B workers. In 2011, GLK employed

9

91 H-2B workers. App. Exh. C (Spreadsheet of H-2B workers employed by GLK in 2010 and 2011, provided by Defendants' counsel via email on August 9, 2013). Numbers that large are more than sufficient to satisfy numerosity under Rule 23(a)(1). *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (finding a twenty-nine-member class to be sufficient, and collecting cases finding numerosity with fewer class members).

## B. Commonality

Rule 23(a)(2) requires "commonality," which means the existence of a common question or "questions of law or fact common to the class," based on common contentions and likely to produce common answers. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550–51 (2011). This commonality is generally manifest when claims arise from standardized conduct, similarly affecting all class members. That is the case here.

### 1. The claim in Count III for GLK's breach of the AWPA "working arrangement" by not employing H-2B workers for the certified period of employment presents common questions suitable for class-wide adjudication.

Count III of Plaintiffs' Second Amended Complaint alleges, among others, a statutory claim under the AWPA, namely, for breach of the "working arrangement."[7]

---

[7] Under the AWPA, "[n]o farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any migrant agricultural worker." 29 U.S.C. §§ 1822(c) and 1832(c); 29 C.F.R. § 500.72. *See also* W.S.A. § 103.915(1)(b),(4)(8) (requiring a "written work agreement"). The AWPA "working arrangement" is a statutory contract, De *Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1317 (N.D. Ga. 2008), in which a guarantee of employment for a defined period is a required element, *see Reyes v. Remington Hybrid Seed Co., Inc.*, 495 F.3d 403, 406 (7th Cir. 2007); *Colon v. Casco, Inc*, 716 F. Supp. 688, 694 (D. Mass. 1989), along with a guarantee of compliance with federal statutes and regulations. *See Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 350 (4th Cir.1991); *Fulford v. Alligator River Farms, LLC*, 58 F. Supp. 2d 550, 556 -557 (E.D.N.C. 2012).

This "working arrangement" claim alleges that Defendants employed the members of the proposed 2010 Class and the members of the proposed 2011 Class for a period several weeks shorter than its certified period of employment for those seasons; that GLK had a binding working arrangement under the AWPA with every one of those H-2B workers, which guaranteed their employment for the certified period of employment; and that as a result, GLK owes every one of the H-2B workers employed by it in 2010 or 2011 wages for the balance of their certified period of employment. The claim has seven elements:

(1) Whether defendants were "agricultural employers," 29 U.S.C. § 1802(2); 29 C.F.R. § 500.20(d);

(2) Whether class members were "migrant agricultural workers," 29 U.S.C. §§ 1821-23; 29 C.F.R. § 500.20(p);

(3) Whether employment for a definite term is a required element of every AWPA "working arrangement," *see Reyes v. Remington Hybrid Seed Co., Inc.*, 495 F.3d 403, 406 n.* (7th Cir. 2007); *Colon v. Casco, Inc*, 716 F. Supp. 688, 694 (D. Mass. 1989);

(4) Whether the period of employment required by the AWPA working arrangement between Defendants and class members for the 2010 and 2011 seasons was, as a matter of law, the certified period of employment, 20 C.F.R. § 655.18)(b)(13), specified by Defendants in their H-2B applications and certifications to the DOL in advance of those respective seasons, *see De Leon-Granados v. Eller & Sons Trees, Inc.,* 581 F. Supp. 2d 1295, 1324 (N.D. Ga. 2008); *Bernett v. Hepburn Orchards, Inc.*, 1987 WL 16939, 7 (D. Md. 1987); *Clarke v. Gardenhour Orchards, Inc*., 1987 WL 48234, 4 (D. Md. 1987);

(5) Whether Defendants employed class members for a period shorter than the certified period of employment in each of those seasons;

(6) Whether Defendants' had legal "justification," 29 U.S.C. § 1822(c); 29 C.F.R. § 500.60, to terminate class members' employment before the end of the certified period of employment in 2010 (for the 2010 Class) or in 2011 (for the 2011 Class); and

(7) The measure of class members' lost earnings resulting from employment for less than the certified period of employment.

11

Plaintiffs do not seek to adjudicate the seventh of these elements (damages) on a class-wide basis. While all class members suffered a wage loss as the result of their employment for less than the certified period, *see* App. Exh. D (sampling of Plaintiffs' Responses to Defendants' First Set of Interrogatories, Nos. 5, 6, 10, 12, 14, 15), their resulting wage losses differ, due to their different experiences in locating substitute employment, which may require individualized determinations.

By contrast, the first six elements of the claim satisfy all the conditions required for class-wide adjudication, affirmatively entitling plaintiffs "to pursue [their] claim as a class action." *Shady Grove,* 559 U.S. at 398. None of those elements requires individualized proofs. With respect to each of these elements, every member of the proposed 2010 Class and every member of the proposed 2011 Class will succeed or fail together, not individually.

> **a. The first and second elements of the AWPA "working arrangement" claim in Count III present common questions.**

The first two elements of plaintiffs' claim for enforcement of the AWPA working arrangement involve AWPA *coverage*: namely, whether Defendants were "agricultural employers" and class members were "migrant agricultural workers."

As to both elements, the answer will be the same for every member of the proposed 2010 Class and every member of the 2011 Class, because the nature of the employment relationship between GLK and every member of these proposed classes was the same. If Defendants were AWPA-covered "agricultural employers" for any class member, then they were "agricultural employers" for all. And to the same extent, all class members were uniformly AWPA-covered "migrant agricultural workers." The question of AWPA coverage will be uniform and resolvable

"in one stroke" for all members of these proposed classes. *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

> **b. The third and fourth elements of the AWPA working arrangement claim in Count III present common questions.**

The third and fourth elements of plaintiffs' claim to enforce the AWPA working arrangement they had with GLK are whether, as a matter of law, the period of employment is a required term in every AWPA "working arrangement" and whether the certified period of employment becomes the binding period of employment for purposes of the AWPA working arrangement. Once again, these are common questions to which the answers will be the same for every member of the proposed 2010 Class and every member of the proposed 2011 Class. In neither year is there any other basis for defining the class members' period of employment. Accordingly, every member of the proposed 2010 Class shares a common contention and claim: that as a matter of law, GLK's certified period of employment constituted an enforceable, contractual term of their employment. And every member of the proposed 2011 Class likewise shares an analogous common contention and claim: that as a matter of law, the certified period of employment constituted an enforceable, contractual term of their employment.[8]

---

[8] Should the court find that the certified period of employment constitutes an enforceable contractual term of the AWPA working arrangement, interpretation of that term will also be the same for all class members, as it will be purely a matter of law. The question will be whether GLK was obligated to provide employment between the start and end dates listed in the employment certification or, in the alternative, whether GLK was obligated to provide employment no less than 10 days after the start date of employment and no less than 7 days before the end date of employment as required by the "minimum work guarantee" under the WMLA. Wis. Admin. Code DWD § 301.06(8).

### c. The fifth and sixth elements of the AWPA working arrangement claim in Count III present common questions.

The fifth element of the wage claim in Count III—that every member of the 2010 Class and every member of the 2011 Class was employed for less than the certified period of employment—is not disputed.

The sixth element— whether Defendants were justified in not employing class members for the certified period of employment in 2010 or in 2011—presents, again, a common question. In 2010, Defendants claim the same justification for the shorter period of employment for every class member: namely, crop failure. Likewise, in 2011, Defendants claim the same justification for the shorter period of employment for every class member: namely, an allegedly unforeseeable federally-mandated wage increase for H-2B workers—one that never ultimately took effect. These defenses will succeed or fail equally with regard to all members of the proposed 2010 Class and all members of the proposed 2011 Class. They will not fail against some but succeed against others (or vice versa). They are common questions, resolvable "in one stroke" for all members of each of these proposed classes. *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

### 2. The claim in Count VI for GLK's breach of contract, by not employing H-2B workers for the certified period of employment, presents common questions suitable for class-wide adjudication.

Whereas Count III of Plaintiffs' Second Amended Complaint alleges that, by not employing H-2B workers for the certified period of employment, GLK violated the AWPA, Count VI alleges that GLK's conduct also constituted a common-law breach of contract.

Breach of contract has familiar elements in Wisconsin: the plaintiff must show a valid contract that the defendant breached, and damages flowing from that breach. *Northwestern*

14

*Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296 (Wis. 1971). Accordingly, class members' claims

for breach of contract each have three elements:

> **(1)** Whether members of the proposed 2010 Class and proposed 2011 Class, respectively, had contracts with GLK for employment for a term, defined by the certified period of employment specified in the Application for Temporary Employment Certification that GLK filed with the DOL;
>
> **(2)** Whether Defendants breached these terms of the contract; and
>
> **(3)** Damages resulting from any breach.

In addition, resolving this claim will also require resolving any affirmative defenses GLK may

assert, such as that performance of the contract was impracticable or impossible. All these

elements and affirmative defenses present common questions for purposes of Rule 23(a)(2).

The first element of class members' shared claim for breach of contract is a pure question

of law: whether H-2B workers have contracts for employment for a term, defined by the certified

period of employment for which they have been hired. This question underlies and is common to

every H-2B worker's claim to enforce his contract with GLK in 2010 or 2011. The contention

that the certified period of employment for that season became, as a matter of law, an

enforceable, contractual term of employment will be resolved to exactly the same extent for

every H-2B worker. The Court's rulings will not vary on these questions from worker to worker.

They are common questions.

Likewise, any defense that GLK may assert that it was "impossible" or "impracticable" to

employ the workers for the certified period will also present a common question, resolvable "in

one stroke," *Dukes*, 131 S. Ct. at 2551. Defendants have testified to crop failure in 2010—which

is either sufficient to demonstrate that their performance under the contract was impossible for

all H-2B workers employed by GLK in 2010, or not; and likewise, the ultimately suspended

federally-mandated wage increase for H-2B workers in 2011 either was a sufficient or insufficient ground for terminating all H-2B workers employed by GLK during that season—in either event, a common question.

This leaves but the third element of a claim for breach of contract: damages. Plaintiffs do not seek to adjudicate damages on a class-wide basis.

### 3. The liability claims in Counts III, VI, and VIII for GLK's not reimbursing H-2B workers for visa and travel expenses present common questions suitable for class-wide adjudication.

Counts III, VI, and VIII of Plaintiffs' Second Amended Complaint allege that, by failing to reimburse its H-2B workers for their visa and travel expenses in 2010 and 2011, GLK impermissibly reduced the workers' first week's earnings below the prevailing wage rate that governs wages payable to H-2B workers.

All of GLK's H-2B workers in 2010 and 2011 bring these claims based on common, shared facts, namely that: (1) all of the H-2B workers incurred visa and travel expenses in order to work for GLK; (2) GLK reimbursed none of the workers for these expenses before the end of their first workweek, either in 2010 or 2011; and (3) by not reimbursing them for these expenses, GLK reduced their first-week's wages below the applicable prevailing wage rate. *See* this Court's Mem. Op. dated July 30, 2013 (ECF No. 50) at 2, 3 and 5 (discussing evidence that all H-2B workers employed by GLK in 2010 and 2011 are "in the same position" with respect to claims for reimbursement of pre-employment expenses, when analyzing this claim for purposes of the FLSA).

GLK's defenses to these claims likewise present common issues of law: plaintiffs allege that GLK's failure to reimburse H-2B workers for visa and travel expenses constituted a breach of its AWPA duty to pay wages when due, 29 U.S.C. § 1822(a) (Count III), a breach of contract

16

(Count VI), and a breach of Wisconsin's wage payment and living wage laws (Count VIII), as a matter of law. GLK argues that it had no such duty.

Because both the claims and defenses are common to all members of the proposed classes, the claims are amenable to class-wide adjudication. *See Boundas v. Abercrombie & Fitch Stores, Inc*., 280 F.R.D. 408, 413 (N.D. Ill. 2012) ("The commonality requirement is easily satisfied here. The contract claim of each putative class member presents at least two common questions: (1) whether a contract was formed … and, if so, (2) … the contract's terms …Those common question are sufficient, in themselves, for purposes of Rule 23(a)(2)").

### C.  Typicality

While the requirements of numerosity and commonality focus on attributes of the class as a whole, the requirements of "typicality" and "adequacy" in Rules 23(a)(3) and (a)(4) focus, instead, on the attributes of the class representative(s) and class counsel. 1 Newberg on Class Actions § 3:28 (5th ed.).

"Typicality," required by Rule 23(a)(3), gauges whether the class representative's claims are so interrelated with absent class members' claims that by "pursuing her own interests," a class representative "will pursue the class's as well." *Id*. In the Seventh Circuit, this requirement is met when a class representative's (or representatives') claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Here, all class members share common claims, arising from the same alleged courses of conduct: (1) GLK's uniform failure to employ class members for the certified period of employment in 2010 and again in 2011; and (2) GLK's uniform failure to reimburse any H-2B

17

workers for their visa and travel expenses. All class members also base their claims on the same legal theories: (1) the period of employment specified in GLK's certification is an enforceable term of the AWPA "working arrangement" under Count III and/or a binding contractual term of employment under Count VI, and (2) GLK had a duty to reimburse its H-2B workers' visa and travel expenses in order to comply with the AWPA duty to pay full wages "when due," as a matter of common-law contract, and to avoid violation of Wisconsin's wage payment and living wage laws.

### D. Adequacy

The requirement of "adequacy" in Rule 23(a)(4) "raises concerns about the competency of class counsel and [potential] conflicts of interest" between the class representative and absent class members. *Dukes*, 131 S. Ct. at 2551 n.5; *cf. Phillips v. Asset Acceptance, LLC*, ___ F.3d ___ (7th Cir. Dec. 2, 2013) (noting that the test for adequacy of a class representative is not stringent and courts should not "be unrealistic about the role of the class representative in a class action suit. The role is nominal.")

In this case, adequacy should not be an issue. Plaintiffs' counsel are experienced and accomplished in class action litigation, as evidenced by the declaration submitted as Exhibit E in Plaintiffs' Appendix, and there are no disabling conflicts among the members of the class. The named representatives and class counsel will adequately represent the interests of the class.

## II. The Liability Claims In Counts III, VI, And VIII For GLK's Breach Of Its Obligation To Employ H-2B Workers For The Certified Period Of Employment, And For Not Reimbursing Them For Visa and Travel Expenses, Qualify For Class-Wide Adjudication Under Rule 23(b)(2).

Once the criteria of Rule 23(a) are met, certification becomes an entitlement under Rule 23(b)(2) if, in addition, the defendant has "acted or refused to act on grounds that apply generally

to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). That criterion is satisfied here.

GLK's failure to employ H-2B workers for the certified period of employment in 2010 and again in 2011 equally affected all members of the proposed 2010 Class and all members of the proposed 2011 Class, respectively, making appropriate declaratory relief "settling the legality of [that] behavior with respect to the class as a whole." Advisory Committee Notes 1966, to Rule 23(b)(2). The same is true with regard to GLK's failure to reimburse its H-2B workers' visa and travel expenses to the extent necessary to raise their effective first-weeks' wages to the prevailing wage rate.

A class-wide determination of liability would be followed by individualized determinations of damages sustained by each class member. This conforms to the Seventh Circuit's recommendation that this manner of "divided" or "hybrid" certification, where liability is determined "on a class-wide basis, with separate hearings [later] to determine—if liability is established—the damages of individual class members," *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013), will "often [be] … the sensible way to proceed." *See, e.g., id.* at 801:

> A class action is the efficient procedure for litigation of a case such as this … *A determination of liability [on a class-wide basis] could be followed by individual hearings* to determine the damages sustained by each class members. The parties probably would agree on a schedule of damages …; indeed, the case would probably be quickly settled…
>
> A class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogenous groups of class members, *is permitted by Rule 23(c)(4) and will often be the sensible way to proceed*…
>
> [C]ommon proof of damages for class members … is not required … *[T]he fact that damages are not identical across all class members should not preclude class*

19

*certification.* Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

(Emphasis added). Accord: *Phillips v. Asset Acceptance, LLC*, __ F.3d ___ (7th Cir. Dec. 2, 2013); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 672 F.3d 482, 491-92 (7th Cir. 2012) (reversing district court's denial of class certification under Rules 23(b)(2) and (c)(4)); *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402 (6th Cir. 2012) ("[T]he declaratory judgment will apply to a uniform interpretation of a contract that governs or governed each class member, making Rule 23(b)(2) certification appropriate," notwithstanding class members' individualized claims for monetary damages); *Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000); *Whitlock v. FSL Management, LLC*, 2013 WL 5656100, 4 (W.D. Ky., Oct. 16, 2013) ("common issues regarding Defendants' liability for wage and hour violations predominate over any potential individual damages issues. While recognizing that class members will have 'differing damages' or 'individual damages issues' …, that these individualized damages questions do not warrant decertification of the class for liability purposes"); *Healy v. International Brotherhood of Elec. Workers, Local Union No. 134*, 2013 WL 4494685, 10 (N.D. Ill., Aug. 22, 2013) ("The need to determine individual issues of damages does not detract from the efficiency of conducting a class trial on common issues key to resolving the case. In short, were the Court to decline to certify a liability-and-damages class, it would still certify a class, but for liability purposes only.") (internal citations omitted).

**II. The Liability Claims In Counts III, VI, And VIII For GLK's Breach Of Its Obligation To Employ H-2B Workers For The Certified Period Of Employment, And For Not Reimbursing Them For Visa and Travel Expenses, As Well As Discrete Issues Presented By Those Claims, Also Qualify For Certification Under Rule 23(c)(4).**

As the Seventh Circuit has explained in *Phillips v. Asset Acceptance, LLC*, __ F.3d ___ (7th Cir. Dec. 2, 2013), *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491-92 (7th Cir. 2012), and *Butler v. Sears Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013), the class-wide adjudication of discrete issues, as opposed to entire claims, is both authorized by Rule 23(c)(4) and often will be "the sensible way to proceed." *Butler*, 727 F.3d at 800. The claims in Counts III, VI, and VIII for not employing H-2B workers for the certified period of employment and for not reimbursing them for pre-employment expenses before the end of their first workweek are appropriate for certification as entire claims. But one or more of the elements of each of those claims could also independently be certified for class-wide adjudication under Rule 23(c)(4) without certifying the entirety of the claims.

**III. The Liability Claims In Counts III, VI And VIII For GLK's Breach Of Its Obligation To Employ H-2B Workers For The Certified Period Of Employment, And For Not Reimbursing Them For Visa and Travel Expenses, Also Qualify For Class Certification Under Rule 23(b)(3).**

Certification is proper under Rule 23(b)(3) when the criteria under Rule 23(a) have been met and, in addition, "questions of law or fact common to members of the class predominate over any questions affecting only individuals members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Both those conditions are satisfied here.

21

### A. Predominance

In the resolution of the claims in Counts III, VI, and VIII relating both to the required period of employment and to reimbursement of visa and travel expenses, common questions predominate over questions, if any, affecting only individual members of the class, and these questions should be resolved on a class-wide basis.

The main question in this case underlying class members' claims to enforce a contract for employment for the certified period of employment, shared by every member of the proposed 2010 Class and every member of the proposed 2011 Class, is: Does the period of employment specified in GLK's certification, filed under penalty of perjury with the DOL, become an enforceable term of the AWPA "working arrangement" with its H-2B workers and/or a binding contractual term of employment for those workers?

The main question in this case underlying class members' claims for reimbursement of visa and travel expenses, shared by every member of the proposed 2010 Class and every member of the proposed 2011 Class, is: Did GLK have an obligation to reimburse H-2B workers for their visa and travel expenses to the extent necessary to prevent their wages for the first workweek from falling below a required prevailing wage rate for H-2B employees?

For purposes of liability, these questions predominate over all others.

### B. Superiority

The benefits of class treatment for the liability elements of the claims addressed in this memorandum—while reserving damages of individual class members, if liability is established, for separate determination (or settlement) later—are substantial. Individual adjudication of each of hundreds of class members' claims would burden the Court. It would also burden the class members themselves. Class members have relatively small-stakes claims, which amount to a

22

sizeable dollar amount in the aggregate; but on an individual basis, claim by claim, each would cost more to litigate than the size of any resulting recovery. In addition, class members are laborers of limited economic means, almost uniformly living in Mexico, so that travel to the United States for trial proceedings would both require visas allowing their re-entry into the United States, which they do not have at the present time, and impose travel costs that would be a very great burden for them to bear. Class-wide adjudication is superior to any other method of resolution of these claims. *See generally Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 675 (7th Cir. 2013) ("The smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment"); *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated).

## CONCLUSION

For all the reasons stated above, plaintiffs request the appointment of class counsel, the appointment of Alejandro Jurado Jimenez, José Jurado Jurado, and J. Saul Jimenez Rosas as class representatives, and certification of the following two classes, for purposes of adjudicating GLK's liability (but not damages) for not employing H-2B workers for the certified period of employment and for not reimbursing them for visa and travel expenses, under Counts III, VI and, VIII:

> **2010 Class:** All H-2B workers employed by GLK in Bear Creek, Wisconsin in **2010**. However, with respect to claims for post-termination wages or damages, this class excludes workers who have waived such claims.

> **2011 Class:** All H-2B workers employed by GLK in Bear Creek, Wisconsin in **2011**. However, with respect to claims for post-termination wages or damages, this class excludes workers who have waived such claims.

23

Dated: December 18, 2013

Respectfully submitted,

/s/ Joshua Karsh_____
Joshua Karsh,
One of the Attorneys for Plaintiffs

Matthew J. Piers
José J. Behar
Joshua Karsh
Claudia Flores
Jenna Miara
Attorneys for Plaintiffs
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
         jbehar@hsplegal.com
         jkarsh@hsplegal.com
         cflores@hsplegal.com
         jmiara@hsplegal.com

Weeun Wang
Nicholas Marritz
Attorneys for Plaintiffs
Farmworker Justice
1126 16th Street, NW, Suite 270
Washington, D.C. 20036
(202) 293-5420 ext. 308
E-mail: wwang@farmworkerjustice.org
         nmarritz@farmworkersjustice.org