IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| ALEJANDRO JURADO JIMENEZ et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Civil Action No. 12 cv 209 |
| GLK FOODS, LLC and RYAN A. DOWNS, | ) ) ) |
| Defendants. | ) Judge Griesbach ) |

**PLAINTIFFS' CORRECTED MEMORANDUM IN SUPPORT OF
CERTIFYING DISCLOSURE, WORK AGREEMENT, AND RECORD-KEEPING
CLAIMS IN COUNTS IV, V, AND VII FOR CLASS-WIDE ADJUDICATION**

The federal Migrant and Seasonal Agricultural Worker Protection Act (the "AWPA") and Wisconsin's Migrant Labor Act ("WMLA") each impose disclosure obligations on employers hiring migrant workers. 29 U.S.C. § 1821(a) and (b); W.S.A. § 103.915(1), (4), and (8). Under both statutes, all covered employers must furnish all covered migrant workers with detailed information about the terms and conditions of offered employment, both so that the workers can make fully-informed decisions about whether to accept the work and so that they have written proof of the offer, along with its terms and conditions, before traveling hundreds of miles, from one country to another, for jobs that their visas do not permit them to leave if they are mistreated.[1]

---

[1] These protections gain added importance because visa workers admitted to this country under the federal H-2A and H-2B "guest worker" programs do not enjoy the most fundamental protection of a competitive labor market — the ability to change jobs if they are mistreated. Instead, they are bound to a single employer, the employer that "imported" them, and are authorized to work only for that employer.

The AWPA also imposes record-keeping requirements, mandating that employers make, keep and preserve accurate records of migrant workers' hours and pay. 29 U.S.C. § 1821(d)(1 and 2)–and 29 C.F.R. § 500.80(a). And the WMLA also requires such employers to provide migrant workers with written work agreements at the time of hiring. W.S.A § 103.915(1)(b).

These statutory obligations have no analog in the other sectors of the labor market. They are specific to the migrant-worker labor market. They exist as an effort to "deter and correct the exploitative practices that have historically plagued the migrant farm labor market." *Montelongo v. Meese*, 803 F.2d 1341, 1350 (5th Cir. 1986). *See also Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 632 (W.D. Tex. 1999); *Villalobos v. Vasquez-Campbell*, 1991 WL 3119902 (W.D. Tex. Nov. 15, 1991).

In Counts IV and VII of their Second Amended Complaint (ECF No. 67), Plaintiffs allege that Defendants violated the AWPA and WMLA disclosure and work agreement requirements. And in Count V, Plaintiffs allege that Defendants violated the AWPA's wage and hour record-keeping requirements. Plaintiffs seek statutory damages for each of these alleged violations.[2]

Plaintiffs submit this memorandum of law in support of their motion to certify each of these claims for class-wide adjudication. For the claims in Counts IV and VII, Plaintiffs seek to certify the following class, designated the "2006-2011 Class,"[3] for purposes of these claims:

> All workers employed by GLK in Bear Creek, Wisconsin in 2006, 2007, 2008, 2010 or 2011 as H-2B workers pursuant to U.S.

---

[2] Violation of the AWPA's disclosure and record-keeping provisions entitle Plaintiffs to statutory damages of up to $500 per violation. 29 U.S.C. § 1854(c)(1). Violations of the WMLA allow damages of up to $100 per violation. W.S.A. § 103.97.

[3] GLK's application for H-2B workers in 2009 was denied, so no H-2B workers were employed that year. However, for the sake of brevity, this brief will refer to the all-years class as the "2006-2011 Class."

> Department of Labor certification. This class excludes, however, the following workers: Elias Vera, Everardo Hurtado, Elias Ramirez, and Adan Garcia.[4]

With respect to Count V, Plaintiffs seek to certify a class defined exactly as above except that the class would include only H-2B workers GLK employed in 2011.

The parties have stipulated to facts establishing the uniformity of Defendants' consistent failure to disclose information to H-2B works in each of the five seasons at issue (2006, 2007, 2008, 2010, and 2011). App. Exh. A (Stipulation). As a result, for the purposes of Count IV and VII, one Rule 23(b)(2) class encompassing all seasons is appropriate. (As an alternative, separate subclasses could be certified by season).

In addition to the suitability of the claims in Counts IV, V, and VII for certification under Rule 23(b)(2), discrete issues presented by the disclosure claims in those Counts also independently qualify for class-wide adjudication under Rule 23(c)(4) and could be certified under that Rule as one or more "issue" classes. This possibility is also discussed in this memorandum. Finally, Plaintiffs also request the appointment of class counsel pursuant to Rule 23(g) and the designation of Alejandro Jurado Jurado, Jose Jurado Jurado, and J. Saul Jimenez Rosas as class representatives.[5]

## Background Facts

Between 2006 and 2011, Defendant GLK employed roughly 210 Mexican migrant workers as "trim-line laborers" to process cabbage into sauerkraut at its cannery in Bear Creek,

---

[4] The few excluded workers are excluded because they participated, as agents of GLK, in the disclosure violations that are the subject of Counts IV and VII.

[5] At the same time as this motion, Plaintiffs have also filed a separate motion to certify two additional classes, to prosecute the non-FLSA wage claims they have brought as Counts III and VI of their Second Amended Complaint. One of those classes would consist of H-2B workers employed by GLK during the 2010 season; the second would cover H-2B workers employed by GLK during the 2011 season.

Wisconsin. GLK recruited and employed these workers as part of the federal government's H-2B temporary "guestworker" visa program. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

The recruitment and employment of migrant workers is highly regulated. Ascertaining and complying with the statutory and regulatory obligations often requires professional guidance. Defendants, however, primarily chose self-reliance, counting, as they have testified, on their own "innocen[ce] and competen[ce]." App. Exh. B (Deposition of Ryan Downs at 144:1-10). As a result, hardly a season has gone by in which Defendants have not been investigated and cited for violations of regulations governing the employment of migrant workers. App. Exh. C (Reports by Wisconsin Department of Workforce Development and U.S. Department of Labor).

### A. The Relevant Regulatory Framework Under Wisconsin Law

Wisconsin's WMLA mandates that "no person" may "hire a migrant worker for employment in this state unless that person…provides the migrant worker" a written disclosure of work terms and conditions "at the time of the worker's recruitment." W.S.A. § 103.915(1)(a). The statute also requires employers to provide migrant workers with a "written work agreement," signed by the employer and the worker, "at the time of hiring." W.S.A. § 103.915(1)(b). At both stages in the hiring process, the disclosures and work agreements must be written in "the customary language of the migrant worker." W.S.A. § 103.915(1), (4) and (8)(a). For class members in this case, who were Mexican nationals recruited and hired in Mexico, these disclosures and work agreements had provided to be in Spanish to ensure that the workers understood the terms of the employment they were being offered. Compliance with the WMLA requires disclosure of and work agreements setting forth all of the following detailed information about the key terms of employment:

> A statement of the place of employment, kind of work available, applicable wage rates, pay period, approximate hours of employment including overtime applicable, term of employment including approximate beginning and ending dates, kind of housing and any charges in connection therewith, cost of meals if provided by the employer, transportation arrangements, the names of all persons in the family employed if a family is employed, and any other charges or deductions from wages beyond those required by law.

W.S.A. § 103.915(4)(a). Under the WMLA, both required disclosures and the required work agreement must also contain a minimum work guarantee of at least 64 hours of work in every two-week period. W.S.A. § 103.915(4)(b). To facilitate compliance with these detailed disclosure requirements, the Wisconsin Department of Workforce Development publishes a standard form, both in English and Spanish. App. Exh. D (DWD Disclosure Form). Defendants did not make use of the Department's form—or any alternative. They have stipulated that in each of the five seasons at issue in this case (2006, 2007, 2008, 2010 and 2011) neither they, nor any agent working on their behalf, nor, to their knowledge any other person, made *any* written disclosure or work agreement in Spanish to *any* H-2B worker employed by them. App. Exh. A (Stipulation). In Count VII of their Second Amended complaint, Plaintiffs contend that Defendants' admitted failure to disclose the information set forth in W.S.A. § 103.915 to every member of the proposed plaintiff class, in Spanish, constitutes a clear WMLA violation.

### B. The Relevant Regulatory Framework Under Federal Law

The federal Migrant and Seasonal Agricultural Worker Protection Act (the "AWPA") independently imposes detailed disclosure requirements for the benefit of migrant workers.[6] The AWPA requires every agricultural employer that "recruits any migrant agricultural worker" to provide the workers with detailed informational disclosures at the time of recruitment. 29 U.S.C.

---

[6] The AWPA expressly supplements state law. 29 U.S.C. § 1871.

5

§ 1821(a). The disclosures must be provided in writing and, for workers not fluent or literate in English, in Spanish or, as reasonable, in another language common to the workers. 29 U.S.C. § 1821(g). The disclosures must include all of the following pieces of information:

    **(1)**    the place of employment;

    **(2)**    the wage rates to be paid;

    **(3)**    the crops and kinds of activities on which the worker may be employed;

    **(4)**    the period of employment;

    **(5)**    the transportation, housing, and any other employee benefit to be provided, if any, and any costs to be charged for each of them;

    **(6)**    the existence of any strike or other concerted work stoppage, slowdown, or interruption of operations by employees at the place of employment;

    **(7)**    the existence of any arrangements with any owner or agent of any establishment in the area of employment under which the farm labor contractor, the agricultural employer, or the agricultural association is to receive a commission or any other benefit resulting from any sales by such establishment to the workers; and

    **(8)**    whether State workers' compensation insurance is provided, and, if so, the name of the State workers' compensation insurance carrier, the name of the policyholder of such insurance, the name and the telephone number of each person who must be notified of an injury or death, and the time period within which such notice must be given.

29 U.S.C. § 1821(a)(1-8). Defendants have stipulated that in each of the five seasons at issue in this case (2006, 2007, 2008, 2010 and 2011) neither they, nor any agent working on their behalf, nor, to their knowledge any other person, made *any* of these disclosures in Spanish in writing to

6

*any* H-2B worker employed by them. App. Exh. A (Stipulation). In Count IV of their Second Amended Complaint, Plaintiffs contend that this admitted failure to disclose the information to every member of the proposed plaintiff class constitutes a clear violation of the AWPA's disclosure requirements.

Finally, as set out in Count V of the Second Amended Complaint, the AWPA also requires employers of migrant workers to make, keep, and preserve accurate records of the number of hours worked and pay received by workers. Plaintiffs allege that Defendants failed to comply with these requirements in 2011.

By this motion, Plaintiffs seek to certify the disclosure claims in Counts IV, V, and VII of their Second Amended Complaint for class-wide adjudication. Plaintiffs also request that the court appoint class counsel and name plaintiffs Alejandro Jurado Jimenez, José Jurado Jurado, and J. Saul Jimenez Rosas as class representatives.

## ARGUMENT

The Supreme Court has held that class-certification under Rule 23 is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," but that when those prerequisites have been satisfied, the certification of a class is mandatory, stating that Rule 23 "creates a categorical rule," affirmatively "entitling" any "plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). *See also Subedi v. Merchant*, 2010 WL 1978693 * 2 (N.D. Ill. May 17, 2010) ("satisfaction of [Rule 23] requirements…*categorically entitles a plaintiff to pursue her claim as a class action*") (emphasis added).

As a threshold to class certification, a claim must satisfy each of the four "class-qualifying criteria," established by subdivision (a) of Rule 23: numerosity, commonality, typicality and adequacy. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 (1997). If those criteria are met, then, in addition, the claim also must fit one of the three prongs of Rule 23(b)— or, alternatively, discrete issues or portions of claims (for example, liability issues, while reserving individual damages issues) may be certified under Rule 23(c)(4), which authorizes the formation and certification of "issues" classes. *Phillips v. Asset Acceptance, LLC*, __ F.3d __ (7th Cir. Dec. 2, 2013); *Butler v. Sears Roebuck*, 727 F.3d 796, 800 (7th Cir. 2013) ("Rule 23(c)(4)…will often be the sensible way to proceed).

As discussed below, the disclosure claims in Counts IV and VII, and recordkeeping claims in Count V, of Plaintiffs' Second Amended Complaint each satisfy all criteria in Rule 23(a), as well as the additional conditions required for certification under Rule 23(b)(2), Rule 23(b)(3) or Rule 23(c)(4).

**I.   Counts IV, V, and VII are Certifiable For Class-Wide Adjudication Under Rule 23(a).**

**A.  Numerosity**

Rule 23(a)(1) requires "numerosity" although without "identify[ing] a magic threshold number required to establish numerosity." *Schmidt v. Bassett Furniture Indust.*, 2011 WL 67255 (E.D. Wis. Jan. 10, 2011).

Between 2006 and 2011, GLK employed roughly 210 H-2B workers.[7] In 2011 alone, which is the focus of the claims in Count V, GLK employed 91 workers. In previous years, GLK

---

[7] GLK employed some workers repeatedly each year between 2006 and 2011. The total number of workers listed here accounts for returning workers employed by GLK thus reflecting the actual size of the

8

employed approximately 83 workers in 2010, 110 in 2008, 106 in 2007, and 58 in 2006. App. Exh. E (Lists of GLK H-2B workers in 2006-2008 and spreadsheet of H-2B workers employed by GLK in 2010 and 2011 provided by defense counsel via email on August 9, 2013.) Numbers as large as these are more than sufficient to satisfy numerosity under Rule 23(a)(1). *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (twenty-nine-member class is sufficient, and collecting cases finding numerosity with fewer class members).

### B. Commonality

Rule 23(a)(2) requires "commonality," which means the existence of a common question or "questions of law or fact common to the class," based on common contentions and likely to produce common answers. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2451, 2550-51 (2011). This commonality is generally manifest when claims arise from standardized conduct, similarly affecting all class members. That is the case here. Counts IV, V, and VII of Plaintiffs' Second Amended Complaint allege standardized conduct, namely, GLK's *stipulated* failure to make Spanish-language disclosures to its H-2B workers in any of the seasons at issue in this case (2006, 2007, 2008, 2010 and 2011).

#### 1. Count IV Presents Common Questions Amenable To Class-Wide Adjudication.

Count IV of Plaintiffs' Second Amended Complaint alleges standardized conduct violating the disclosure requirements of the AWPA, namely, that GLK systematically failed to make disclosures required by the AWPA. This claim has five elements, each amenable to class-wide adjudication, namely:

---

proposed class.

(1) Whether defendants were "agricultural employers," 29 U.S.C. § 1802(2); 29 C.F.R. § 500.20(d);

(2) Whether class members were "migrant agricultural workers," 29 U.S.C. §§ 1821-23; 29 C.F.R. § 500.20(p);

(3) Whether Defendants "recruited" class members, 29 U.S.C. § 1802(a);

(4) Whether GLK made the disclosures that agricultural employers must make to migrant agricultural workers. 29 U.S.C. § 1821(a) and (b); and

(5) Whether Defendants' disclosure violations were "intentional" for purposes of 29 U.S.C. § 1854(c)(1).[8]

Resolving this claim will not require individualized proofs. Both the main questions it raises, and the answers to those questions, are the same for every member of both proposed classes.

The first two elements involve AWPA *coverage*: namely, whether Defendants were "agricultural employers" and whether class members were "migrant workers." As to both elements, the question and answer will be the same for every member of the proposed 2006-2011 Class because the nature of the employment relationship between GLK and every member of this proposed class was the same. If Defendants were AWPA-covered "agricultural employers" for any class member, they were "agricultural employers" for all, and all class members would be, by the same token, AWPA-covered "migrant agricultural workers." The question of AWPA coverage will be uniform and resolvable "in one stroke" for all members of this proposed class. *Dukes*, 131 S. Ct. at 2551.

With regard to the third element of the claim ("recruitment"), in each of the years in question, GLK's own employees recruited the class members for employment. GLK never

---

[8] Specific intent to violate the law is not required. For purposes of the AWPA, "intentionally" means that a defendant consciously or deliberately engaged in the action that led to the violation, even if the defendant was unaware that it was violating the law. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 238 (7th Cir. 1983) (applying the Farm Labor Contractor Registration Act, the predecessor to the AWPA).

10

outsourced recruitment to an independent contractor. And the process by which GLK recruited H-2B workers was in material respects the same in every year. As 81 signed Plaintiffs' interrogatory responses attest (a selection of which are attached to this brief as App. Exh. F), every year, recruitment efforts were overseen by the same GLK employee, Rafael Jimenez Arroyo, sometimes with assistance from one or two additional workers, and centered on recruiting workers from in and around Rafael's hometown of Santiago Capitiro, population 2,618,[9] in the state of Guanajuato in Mexico. *Id.*

With regard to the fourth element of the claim (failure to make written disclosures in Spanish during recruitment), the facts are not only common but stipulated: no H-2B worker recruited for employment by GLK in 2006, 2007, 2008, 2010 or 2011 was ever provided any written disclosure document in Spanish, much less one containing all the pieces of information required by 29 U.S.C. § 1821(a)(1-8). *See* App. Exh. A (Stipulation). With regard to the fifth element of plaintiffs' AWPA disclosure claim ("intent"), once again the proof will not vary from class member to class member: Defendants did not make individualized disclosure decisions with respect to individual class members. Their failure to furnish written disclosures in Spanish was a course of conduct affecting all class members, not a series of individualized decisions.

In sum, class members' claims for violation of AWPA's disclosure provisions, under Count IV of the Second Amended Complaint, are materially identical. In addition, since every class member seeks the same statutory damages, class-wide adjudication is appropriate. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (upholding certification of a class of migrant farmworkers challenging recruiting and disclosure practices); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472 (E.D. La. 2006) (certifying a class to litigate,

---

[9] Government of Mexico, National Institute of Statistics and Geography, "2010 Population and Household Census," http://www3.inegi.org.mx/sistemas/ResultadosR/CPV/Default.aspx?texto=Santiago%20Capitiro

11

among other claims, whether "defendants failed to timely furnish plaintiffs with written disclosures pursuant to 29 U.S.C. § 1821(a)").

### 2. Count VII Presents Common Questions Amenable To Class-Wide Adjudication.

Similar to Count IV, Count VII of Plaintiffs' Second Amended Complaint also alleges a pattern and practice of violations of disclosure obligations. In Count VII, the claim is for violation of the disclosure requirements of Wisconsin's Migrant Labor Act ("WMLA"), W.S.A. § 103.915(1) (4) and (8). The claim has three elements, each amenable to class-wide adjudication, namely: (1) whether GLK either "recruited" or "hired" plaintiffs within the meaning of the WMLA; (2) whether plaintiffs were "migrant" workers within the meaning of the WMLA; and, if so, (3) whether GLK made the disclosures that employers must make to migrant workers under the WMLA.

Resolving this claim will not require individualized proofs. The first element of the claim will require no proof. It is not in dispute: GLK indisputably "recruited" and "hired" members of the class. Defendants' Answer to First Amended Complaint, ¶ 17 (ECF No. 42). The second element of the claim (Were plaintiffs "migrant" workers?) is also amenable to class-wide adjudication because the answer to that question will be the same for all class members: all class members were H-2B visa workers, and either all H-2B workers are "migrant" workers for purposes of the WMLA or none are.

The third element of the claim (Did GLK provide the required disclosures?) is also amenable to class-wide adjudication because the failure to make disclosures has been stipulated to: no H-2B worker employed by GLK in any year was ever provided a written disclosure document in Spanish, much less one containing all the pieces of information required by the

12

WMLA. App. Exh. A (Stipulation). Class-wide adjudication is appropriate. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (upholding certification of a class of migrant farmworkers challenging recruiting and disclosure practices); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472 (E.D. La. 2006) (certifying a class to litigate, among other claims, whether "defendants failed to timely furnish plaintiffs with written disclosures pursuant to 29 U.S.C. § 1821(a)").

### 3. Count V Presents Common Questions Amenable To Class-Wide Adjudication.

As with the previously-discussed claim, Count V of Plaintiffs' Second Amended Complaint alleges a pattern and practice of violation of the AWPA's wage and hour record-keeping requirements. The claim essentially has a single element: whether GLK systematically failed to make, keep, or preserve accurate records of the number of hours worked and pay received by the H-2B workers GLK employed in 2011. This is clearly amenable to class-wide adjudication.

### C. Typicality

Whereas the requirements of numerosity and commonality focus on attributes of the class as a whole, the requirements of "typicality" and "adequacy" in Rules 23(a)(3) and (a)(4) focus, instead, on the attributes of the class representative(s) and class counsel. 1 Newberg on Class Actions § 3:28 (5th ed.).

"Typicality," required by Rule 23(a)(3), gauges whether the class representative's claim is so interrelated with absent class members' claims that by "pursuing her own interests," a class representative "will pursue the class's as well." *Id*. In the Seventh Circuit, this requirement is met when a class representative's (or representatives' ) claims "arise[ ] from the same event or

13

practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *De La Fuente*, 13 F.2d at 232. Here, all class members' share a common claim in Counts IV and Count VII, arising from the same alleged course of conduct, namely GLK's uniform failure to provide statutorily required disclosures. All class members base their claims on the same legal theory. And the statutory remedy is the same for all class members—liquidated statutory damages. A class action is the efficient procedure for litigating these claims.

### D. Adequacy

The requirement of "adequacy" in Rule 23(a)(4) "raises concerns about the competency of class counsel and [potential] conflicts of interest" between the class representative and absent class members. *Dukes*, 131 S. Ct. at 2551 n.5; *Cf. Phillips v. Asset Acceptance, LLC*, __ F.3d __ (7th Cir. Dec. 2, 2013) (noting that the test for adequacy of a class representative is not stringent and courts should not "be unrealistic about the role of the class representative in a class action suit. The role is nominal.")

In this case, adequacy should not be an issue. Plaintiffs' counsel are experienced and accomplished in class action litigation, as evidenced by the Declaration of Joshua Karsh, Weeun Wang, Claudia Flores and Nicholas Marritz submitted as App. Exh. G, and there are no disabling conflicts among the members of the class. The named representatives and class counsel will adequately represent the interests of the class.

## II. Counts IV, V, and VII Qualify For Class Certification Under Rule 23(b)(2).

Once the criteria of Rule 23(a) are met, certification becomes an entitlement under Rule 23(b)(2) if, in addition, the defendant has "acted or refused to act on grounds that apply generally

14

to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). That criterion is satisfied here. GLK's failure to provide all class members with written disclosures prescribed by the AWPA and Wisconsin's Migrant Labor Act applied to the entire class, making appropriate declaratory relief "settling the legality of [that] behavior with respect to the class as a whole." Advisory Committee Notes 1966, to Rule 23(b)(2). Further, the statutory damages component of the relief sought in Counts IV, V, and VII are "incidental," will be determined "'without the need for individual computation' so that a separate damages suit by individual class members would be a waste of resources," and therefore pose no obstacle to certification under Rule 23(b)(2). *In re Allstate Ins. Co.,* 400 F.3d 505, 507 (7th Cir. 2005) (quoting *Manual for Complex Litigation (Fourth)* § 21.221(2004)). There will be no variance in awardable damages under Counts IV and VII, no "individualized" awards of monetary damages, and no evidentiary hearings for damages because every class member's damage claim is for statutory damages, which are liquidated damages not requiring calculation. *See Espenscheid v. Directsat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013) (where computation of damages is mechanical, not requiring separate evidentiary hearings, they are incidental for purposes of Rule 23(b)(2)); *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012) (same).

### III. Both Counts IV and VII, And Discrete Issues Presented By Counts IV and VII, May Also Be Certified Under Rule 23(c)(4).

As the Seventh Circuit has recently explained in *Phillips v. Asset Acceptance, LLC*, __ F.3d __ (7th Cir. Dec. 2, 2013), *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491-92 (7th Cir. 2012), and *Butler v. Sears Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013), the class-wide adjudication of discrete issues, as opposed to entire claims, is both

authorized by Rule 23(c)(4) and will often be "the sensible way to proceed." *Butler*, 727 F.3d at 800. Counts IV and VII are appropriate for certification as entire claims, but one or more of the elements of each of those claims could also independently be certified for class-wide adjudication under Rule 23(c)(4) without certifying the entirety of the claims.

## IV.     Counts IV, V and VII Qualify For Class Certification Under Rule 23(b)(3).

Certification is proper under Rule 23(b)(3) when the criteria under Rule 23(a) have been met and, in addition, "questions of law or fact common to members of the class predominate over any questions affecting only individuals members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Both of these conditions are satisfied here.

### A. Predominance

In Counts IV, V, and VII, common questions predominate over the questions, if any, affecting only individual members of the class, and these common questions should be resolved on a class-wide basis. For Count IV, the main questions are (1) what disclosures under the AWPA were required and (2) whether the disclosures were made. For Count V, the main question is whether GLK systematically failed to make, keep, or preserve accurate wage and hour records. These questions predominate over all others. For Count VII, the main questions are whether the class members were entitled to—and whether GLK provided—disclosures and written work agreements under the WMLA; likewise, these questions predominate over all others.

16

### B. Superiority

The benefits of class treatment of Counts IV, V and VII are substantial. Individual adjudication of each of the hundreds of class member's claims would burden the Court. It would also burden the class members themselves. These are small-dollar-value claims: maximum statutory damages are $500 per class member per violation. The fixed costs of litigating these claims individually, class member by class member, would quickly exceed the dollar value of the claims themselves. Class-wide adjudication is superior to any other method of resolution of these claims. *See generally Hughes v. Kore of IndianaEnterprise, Inc.*, 731 F.3d 762, 765 (7th Cir. 2013) ("The smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment"); *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008) ("If every small claim had to be litigated separately, the vindication of small claims would be rare. The fixed costs of litigation make it impossible to litigate a $50 claim at a cost that would not exceed the value of the claim by many times").

## CONCLUSION

For all the reasons stated above, plaintiffs request the appointment of class counsel and certification of the following two classes, for purposes of adjudicating the disclosure, work agreement and record-keeping claims in Counts IV, V, and VII of their Second Amended Complaint on a class-wide basis:

**For purposes of litigating liability and damages issues under Counts IV and VII:**

All workers employed by GLK in Bear Creek, Wisconsin in 2006, 2007, 2008, 2010 or 2011 as H-2B workers pursuant to U.S. Department of Labor certification. This class

excludes, however, the following workers: Elias Vera, Everardo Hurtado, Elias Ramirez and Adan Garcia.[10]

**For purposes of litigating liability and damages issues under Count V:**

All workers employed by GLK in Bear Creek, Wisconsin in 2011 as H-2B workers pursuant to U.S. Department of Labor certification. This class excludes, however, the following workers: Elias Vera, Everardo Hurtado, Elias Ramirez and Adan Garcia.

Dated: December 18, 2013

                                                                                   Respectfully submitted,

                                                                                  /s Joshua Karsh
                                                                                  One of the Attorneys for Plaintiffs

| | |
|---|---|
| Matthew J. Piers | Weeun Wang |
| José J. Behar | Nicholas Marritz |
| Joshua Karsh | Attorneys for Plaintiffs |
| Claudia Flores | Farmworker Justice |
| Jenna Miara | 1126 16th Street, NW, Suite 270 |
| Attorneys for Plaintiffs | Washington, D.C. 20036 |
| Hughes Socol Piers Resnick & Dym, Ltd. | (202) 293-5420 ext. 308 |
| 70 W. Madison Street, Suite 4000 | E-mail: wwang@farmworkerjustice.org |
| Chicago, IL 60602 | nmarritz@farmworkerjustice.org |
| Telephone: (312) 580-0100 | |
| Fax: (312) 580-1994 | |
| E-mail: mpiers@hsplegal.com | |
|        jbehar@hsplegal.com | |
|        jkarsh@hsplegal.com | |
|        cflores@hsplegal.com | |
|        jmiara@hsplegal.com | |

---

[10] The few excluded workers are excluded because they participated, as agents of GLK, in the disclosure violations that are the subject of Counts IV and VII.