UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEJANDRO JURADO JIMENEZ, et al.,

                   Plaintiffs,

       v.                                          Case No. 12-C-209

GLK Foods, LLC, and RYAN A. DOWNS,

                   Defendants.

## DECISION AND ORDER GRANTING MOTIONS FOR CLASS CERTIFICATION

      Plaintiffs and the proposed class members are migrant workers recruited from Mexico between 2006 and 2011 to work at a sauerkraut cannery plant operated by Defendant GLK Foods, LLC in Bear Creek, Wisconsin. The migrant workers were all employed as part of the federal government's H-2B temporary foreign worker visa program. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H-2B program authorizes employers to recruit and employ foreign workers on a temporary basis if the employers certify that domestic workers are not available to fill the positions. Plaintiffs allege that GLK and its president, Ryan A. Downs (collectively "GLK"), violated their rights and the rights of others similarly situated under various state and federal labor laws, including the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801–71, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, Wisconsin's Migrant Labor Act (WMLA), Wis. Stat. §§ 103.90–.97, Wisconsin's wage payments and living wage laws, Wis. Stat. §§ 109.01–.12, and Wisconsin's living wage and overtime laws, Wis. Stat. §§ 103–04. (Second. Am. Compl. ¶¶ 46–83, 91–105, ECF No. 67.) They also allege that GLK has breached the contracts with Plaintiffs and the class members. (*Id.* at ¶¶ 84–90.)

Before me now are Plaintiffs' two motions for class certification on six of their claims. Plaintiffs' first motion seeks certification of two classes: (1) all H-2B workers employed by GLK in Bear Creek in 2010 under Counts III, VI, and VIII ("2010 Class"); and (2) all H-2B workers employed by GLK in Bear Creek in 2011 under Counts III, VI, and VIII ("2011 Class"). (Pl. Mot. to Certify Class Counts III, VI, and VIII, ECF No. 68.) Plaintiffs' second motion also seeks certification of two classes under different counts: (1) all H-2B workers employed by GLK in Bear Creek in 2006, 2007, 2008, 2010 or 2011 under Counts IV and VII ("2006–11 Class"); and (2) the 2011 Class under Count V. (Pl. Mot. to Certify Class Counts IV, V, VII, ECF No. 70.) GLK opposes class certification of the 2011 Class as to Counts III, V, and VI and the 2010 Class as to Counts III and VI, but it does not oppose certification of the 2006–11 Class as to Counts IV and VII or the 2010 Class and 2011 Class as to Count VIII. For the reasons that follow, Plaintiffs motions for class certification will be granted.

## BACKGROUND

From 2006 to 2011, GLK hired approximately 210 migrant workers at its sauerkraut cannery in Bear Creek, Wisconsin. Plaintiffs and the proposed class members were all H-2B workers hired to work by GLK at some point during this time period. The employment of migrant workers is subject to federal and state statutes and regulations designed to prevent the exploitation of these individuals. Plaintiffs allege that GLK violated a number of the applicable rules by failing to employ the workers for the certified period of employment, failing to pay the workers the applicable prevailing wage rate, failing to provide the workers with statutorily mandated disclosures, and

failing to keep and preserve accurate records of hours and pay.  The Second Amended Complaint

alleges nine counts that can be summarized as follows:

> Count I – Collective action for failure to pay applicable wages to employees for the first week of employment in 2010 and 2011 in violation of the FLSA (Second Am. Compl. ¶¶ 46–49, ECF No. 67);
>
> Count II – Individual actions for failure to pay for all hours worked and failure to pay overtime to employees in 2011 in violation of the FLSA (*Id.* at ¶¶ 50–53);
>
> Count III – Class action claims for breaches of the "working arrangement" between class members and GLK in 2010 and 2011 in violation of the AWPA (*Id.* at ¶¶ 54–70);
>
> Count IV – Class action claim for failure to provide required written statements of the terms and conditions of employment to class members in 2006, 2007, 2008, 2010, and 2011 in violation of the AWPA (*Id.* at ¶¶ 71–76);
>
> Count V – Class action claim for failure to keep accurate records of hours worked and pay received in 2011 in violation of the AWPA (*Id.* at ¶¶ 77–83);
>
> Count VI – Class action claims for breach of contract in 2010 and 2011 (*Id.* at ¶¶ 84–90);
>
> Count VII – Class action claims for failure to provide written disclosures in 2006, 2007, 2008, 2010, and 2011 in violation of the WMLA (*Id.* at ¶¶ 91–95);
>
> Count VIII – Class action claims for failure to pay applicable wage in 2010 and 2011 in violation of Wisconsin's wage payment and living wage laws (*Id.* at ¶¶ 96–100);
>
> Count IX – Individual actions for failure to pay a living wage in 2011 in violation of Wisconsin's living wage and overtime laws (*Id.* at ¶¶ 101–05).

The two motions before the Court request certification of classes under Counts III, IV, V, VI, VII,

and VIII.  The Court previously granted conditional certification for Plaintiffs to pursue Count I as

a collective action pursuant to the FLSA and Plaintiffs do not seek to proceed as a class action on

that count. (ECF No. 50.)  Counts II and IX, which are pleaded as individual actions, are also not

a part of these motions.

Plaintiffs' first motion moves for certification of the 2010 Class and 2011 Class under

Counts III, VI, and VIII.  After accepting GLK's offer of employment, the workers incurred a

3

variety of pre-employment expenses, including recruitment fees, passport and visa application fees, travel expenses, immigration fees, and other related expenses, as a result of their preparations to work at the Bear Creek cannery. GLK admittedly did not reimburse any of the H-2B workers for these expenses. Plaintiffs contend that as a result of GLK's failure to reimburse these expenses during the first week of work in 2010 and 2011, the workers' first-week wages fell below the applicable prevailing wage violating the AWPA (Count III), the workers' contracts (Count VI), and Wisconsin's wage payment and living wage laws (Count VIII). (Pl. Memo. in Supp. 2–3, ECF No. 76.) Because GLK uniformly underpaid the class members in 2010 and 2011, Plaintiffs argue that class-wide adjudication is appropriate. GLK asserts that it was not required to pay inbound expenses under the H-2B program. According to GLK, because it did not have to pay these expenses, Plaintiffs' motion for class certification should be denied because the proposed class does not have a valid claim as a matter of law.

Plaintiffs further contend that GLK violated the AWPA and breached its contract with the class members by not employing the 2010 and 2011 class members for the entire "certified period of employment." (*Id.* at 3.) According to Plaintiffs, GLK certified that the class members would work from August 9th to November 30th in 2010 and from August 1st to November 15th in 2011, with at least 40 hours of work per week. However, in both years, GLK terminated the employment of all of the class members before the end of the certified periods of employment. GLK does not deny that the migrant workers were terminated before the certified end date in both years. Similar to its argument related to inbound expenses, GLK argues that it was under no requirement to employ the migrant workers for the entire certified employment period. In the alternative, GLK

4

contends that a crop failure in 2010 and unanticipated wage increases under the H-2B program in 2011 justified the early termination of the class members. Under either argument, GLK asserts the class certification motion should be denied because the 2010 Class and 2011 Class have no valid claims based on the period of employment.

Plaintiffs' first motion seeks to certify the 2010 Class and 2011 Class under Counts III, VI, and VIII for liability purposes only. (*Id.* at 4.) If Plaintiffs succeed on the merits of Counts III, VI, or VIII, then the damages of the individual class members would be determined in separate proceedings.

Plaintiffs' second motion seeks to certify the 2006-11 Class under Counts IV and VII. Counts IV and VII allege violations of the disclosure requirements in the AWPA and the WMLA. The AWPA and WMLA require an employer seeking to hire migrant workers to provide certain written disclosures to the workers. 29 U.S.C. § 1821(a)(1)–(8); Wis. Stat. § 103.915(4)(a). The disclosures must be in a language common to the worker. 29 U.S.C. § 1821(g); Wis. Stat. § 103.915(1), (4), and (8)(a). GLK has stipulated that it did not provide any written disclosures to any of the proposed class members in the 2006–11 Class. (Stipulation, App. Ex. A., ¶¶ 2–3, ECF No. 73-1.) GLK's response to the class certification motion does not articulate any argument against certification of the 2006–11 Class on these claims. Certification of the 2006–11 Class under Counts IV and VII encompasses liability and damages because damages under the federal and state law are not individualized, but rather determined by statute. (Pl. Memo. in Supp. 15, ECF No. 77.)

Plaintiffs also initially sought in their second motion certification of the 2011 Class under Count V alleging that GLK failed to keep accurate records of hours worked and pay received in

violation of the AWPA.  They withdrew their request for certification as to Count V in their reply, however, and thus that count is no longer before me for purposes of the present motions.

## LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ——, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  A plaintiff requesting class certification must satisfy the four prerequisites of Rule 23(a), and then any one of the requirements under Rule 23(b).  *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The four Rule 23(a) requirements are numerosity, commonality, typicality, and adequate representation of the class by the named plaintiffs and their counsel.  Fed. R. Civ. P. 23(a). Assuming all four of the subsection (a) requirements are present, a class should be certified where, among other conditions, there is a need for injunctive or declaratory relief or the common issue of law or fact predominate.  Rule 23(b)(2) and (3).

Rule 23 is not "a mere pleading standard." *Dukes*, 131 S. Ct. at 2551.  As a result, a court must conduct a "rigorous analysis" that may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.*  But this rigorous analysis is not a license to turn the class certification proceedings into a dress rehearsal for the trial on the merits. *See*, *e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."); *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("Under the current rule, certification is largely independent of the merits

6

. . ., and a certified class can go down in flames on the merits."); *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("We note only that a determination of the propriety of class certification should not turn on likelihood of success on the merits."); *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir. 1988) ("[T]he propriety of class certification does not depend on the outcome of the suit."). The rigorous analysis also does not require that a court assume the truth of the matters as asserted by the plaintiff. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). If there are material factual disputes, the court must "receive evidence . . . and resolve the disputes before deciding whether to certify the class." *Id.* Accordingly, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 113 S. Ct. at 1195 (citing *Dukes*, 131 S. Ct. at 2552 n.6). It is the plaintiff's burden to prove that class certification is warranted. *Oshana*, 472 F.3d at 513. "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

## ANALYSIS

### I.     2006–2011 Class – Counts IV, VII

GLK offers no argument against certification of the 2006–11 Class as to Counts IV and VII. These counts allege that GLK failed to provide the disclosures required by the AWPA and WMLA. GLK's acquiescence is perhaps unsurprising as the parties have stipulated to a number of facts that establish GLK acted in a uniform way toward all of the proposed class members over the relevant

7

time period. For example, GLK stipulated that in 2006, 2007, 2008, 2010, and 2011 it did not disclose the place of employment, the wage, the crops and kinds of activities, the period of employment, employee benefits to be provided, or the existence of a strike or other work stoppage, slowdown, or interruption. (Stipulation, App. Ex. A., ¶ 2, ECF No. 73-1.) All of these disclosures, among others, are required to be made in writing in a language common to the migrant workers by the AWPA. 29 U.S.C. §§ 1821(a)(1)–(8), (g). Similarly, GLK stipulated that it did not provide a written disclosure or work agreement in Spanish in 2006, 2007, 2008, 2010, and 2011 containing the following:

> [A] statement of the place of employment, kind of work available, applicable wage rates, pay period, approximate hours of employment including overtime applicable, term of employment including approximate beginning and ending dates, transportation arrangements, . . . a guarantee of a minimum of 20 hours of work in a one-week period or a minimum of 64 hours of work in a 2-week period . . .

(Stipulation, App. Ex. A., ¶ 3, ECF No. 73-1.) In order to comply with the WMLA, the employer must provide a migrant worker with a written disclosure at recruitment and a written work agreement at the time of hiring in "the customary language of the migrant worker" that appears to include the information GLK stipulated to not providing. Wis. Stat. §§ 103.915(1), (4). As a result, it would appear that GLK's stipulations that it engaged in uniform behavior as to all of the class members would foreclose any argument against certification based on the commonality and typicality Rule 23(a) prerequisites, that GLK did not "act or refuse to act on grounds that apply to the class" under Rule 23(b)(2), or that common questions do not "predominate" under Rule 23(b)(3). Regardless of GLK's apparent willingness to litigate these counts on a class-wide basis, the Court must still conduct a "rigorous analysis" to determine whether class certification is appropriate. *See Dukes*, 131 S. Ct. at 2551.

8

Turning then to Rule 23, each of the four prerequisites—numerosity, commonality, typicality, and adequate representation—are met as to the 2006–11 Class under Counts IV and VII. The proposed class consists of roughly 210 members. (Pl. Memo. in Supp. 8–9, ECF No. 77.) While there is no bright-line test for numerosity, there is little question that a class of more than 200 is sufficiently numerous under Rule 23(a)(1). *See Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) ("Sometimes even 40 plaintiffs would be unmanageable."); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 897 (7th Cir. 1999) (noting that class consisted of class representative "and 35 other[s]"); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (even 40 members could be sufficiently large to satisfy numerosity). Moreover, there are factors other than class size to consider under Rule 23(a)(1): "judicial economy arising from the avoidance of a multiplicity of actions, the ease of identification of members of the proposed class, the geographic dispersion of class members, the size of each plaintiff's claim, the financial resources of the class members, [and] the ability of claimants to institute individual suits." *Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 134 (N.D. Ind. 2013) (citing Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:6 (2002 & Supp. 2011)). These additional factors strongly suggest the prerequisite is met, as the class members are already identified, are located mostly in Mexico, have limited financial means, and present relatively small claims.

Rule 23(a)(2) requires "questions of law or fact common to the class." In order to show commonality, a plaintiff must show that the class members all "suffered the same injury." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (citing *Dukes*, 131 S. Ct. at 2551). "[S]uperficial common questions—like whether . . . each class member suffered a violation of the same provision of law—are not enough." *Id.* at 497 (internal quotation marks omitted). Rather,

the class claims must turn on a common contention that can be resolved on a class-wide basis, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. As already discussed, GLK's stipulation that it did not provide any written disclosures as required by the AWPA and the WMLA to any of the proposed class members in 2006, 2007, 2008, 2010, and 2011 essentially concedes that Counts IV and VII can be decided in "one stroke." Moreover, as more fully laid out in Plaintiffs' brief, each of the elements of the claims under the AWPA and WMLA raise common questions that will have answers common to the class. (Pl. Memo in Supp. 9–13, ECF No. 77.)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Although "factual distinctions" between the named plaintiffs and the class members do not preclude certification, the named class representatives' claims must have "the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)); *Oshana*, 472 F.3d at 514. Typicality should primarily be determined with reference to the defendants' actions as opposed to the defenses they might have with respect to certain class members. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). As with the commonality analysis, GLK's stipulations regarding its uniform actions towards all of the proposed class members demonstrates that there are no factual distinctions that suggest the named plaintiffs' claims are not typical of the class.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement is directed at "concerns about the competency of class counsel and conflicts of interest" between the class and its representatives.

10

*Dukes*, 131 S. Ct. at 2551 n.5. "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives." *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). In many cases, including this one, the typicality requirement overlaps with the requirement that the class representative fairly and adequately protect the interests of the class, and the existence of defenses that uniquely apply to the named defendants is a question of adequacy. *See CE Design Ltd.*, 637 F.3d at 724–725. There is no concern that Plaintiffs' counsel are not competent to litigate this case, as demonstrated in the declarations submitted by counsel. (Decl. of Joshua Karsh, Weeun Wang, Claudia Flores, and Nicholas Marritz ¶¶ 1–6, ECF No. 73-7.) Plaintiffs also contend, and GLK does not dispute, that there are no conflicts among class members, which is the logical outgrowth of concluding that the named plaintiffs claims are typical of the class. The Court is likewise unaware of any conflicts or defenses that would suggest that Alejandro Jurado Jimenez,[1] Jose Jurado Jurado, and J. Saul Jimenez Rosas are not adequate class representatives.

Having established that the four prerequisites are met by a preponderance of the evidence, the second half of the inquiry is to determine whether the claims in Counts IV and VII are suitable under one of the subsections to Rule 23(b). Plaintiffs argue that certification under Rule 23(b)(2) is appropriate because GLK has "acted or refused to act on grounds that apply to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." But this is not a case for injunctive or declaratory relief. Plaintiffs seek primarily damages

---

[1] Plaintiffs' memorandum in support of class certification under Counts IV and VII inconsistently identifies one of the class representatives, sometimes referring to Alejandro Jurado Jimenez as "Alejandro Jurado Jurado." (Pl. Memo. in Supp. 3, 7, ECF No. 77.) For the sake of consistency, the Court has used the name as identified in the Second Amended Complaint. (ECF No. 67.)

for past violations.  Nothing in the complaint suggests that Plaintiffs or the proposed class members have any ongoing involvement with GLK such that injunctive or declaratory relief would be appropriate.   Although Plaintiffs include in their Second Amended Complaint requests for declaratory relief, they allege no facts that support a need for such relief.  For instance, they request a declaration "that Defendants intentionally violated the AWPA and its attendant regulations, as set forth in Counts III, IV, and V."  (Second. Am. Compl. 27, ECF No. 67.)  But Plaintiffs seek damages on those counts as well and, absent an ongoing dispute between the parties, there is no need for declaratory relief.  As the parties' disputes over the legal requirements of the AWPA necessarily will be resolved in the adjudication of the AWPA claim, declaratory relief is neither necessary nor appropriate.  Thus, Rule 23(b)(2) does not apply.

Rule 23(b)(3), however, does apply.  That section is satisfied upon a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The factors to be considered in determining whether this condition is met include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*  This condition is satisfied as to Counts IV and VII.  The questions of law and fact common to the class members clearly predominate over any questions relating only to the individual members.

12

The main questions are whether the disclosures required under the AWPA were made to the proposed class and whether they were provided in their native language. It appears that each member of the proposed classes were provided the same materials. GLK's answers to the interrogatories suggest that there are no factual disputes that would leave common questions of law as the only issues to resolve. Moreover, given relatively small statutory damage awards available for the violations alleged, absent class certification it seems doubtful the claims could be brought individually. Plaintiff's motion for certification of the 2006–11 Class pursuant to Rule 23(b)(3) as to Counts IV and VII will therefore be granted.

## II.     Counts III, VI, VIII

Moving to Plaintiffs' motion for certification of the 2010 Class and 2011 Class on Counts III, VI, and VIII, these counts are based largely on two facts. First, GLK terminated the employment of the class members before the end of the certified period of employment. Count III alleges the early terminations were violations of the AWPA, while Count VI alleges that they are breaches of contracts. Second, GLK failed to reimburse the class members for inbound expenses. As a result, the wage fell below the applicable prevailing wage. This second fact is again alleged to be a violation of the AWPA and a breach of contract. It is also the basis for Count VIII under Wisconsin's wage statutes.

GLK's response opposes Plaintiffs' motion for class certification as to Counts III and VI for different reasons and does not address certification of the 2010 Class and 2011 Class under Count VIII at all. GLK's argument related to Count III most directly relates to the commonality and typicality prerequisites. Its arguments pertaining to Count VI address whether certification is

13

appropriate under 23(b)(2) or 23(b)(3).  Before addressing GLK's arguments, however, the Court will examine numerosity and adequacy.

The 2010 Class and 2011 Class encompass 83 and 91 class members respectively.  (Pl. Memo. in Supp. 9–10, ECF No. 76.)  Although not as large as the 2006–11 Class discussed previously, a proposed class of nearly 100 is likely of sufficient size to make joinder impracticable. *See, e.g., Pruitt*, 472 F.3d at 926–27 ("Sometimes even 40 plaintiffs would be unmanageable.").  Additionally, because the proposed class members are geographically dispersed—located primarily in Mexico—and have limited means and relatively small claims, the 2010 Class and 2011 Class satisfy Rule 23(a)(1).

The adequacy of class counsel and class representatives is unquestioned.  The class representatives are not subject to defenses that do not apply to the unnamed class members and class counsel are obviously qualified.  *See Dukes*, 131 S. Ct. at 2551 n.5.  Accordingly, Alejandro Jurado Jimenez, Jose Jurado Jurado, and J. Saul Jimenez Rosas are adequate class representatives and Plaintiffs' counsel are appropriate class counsel.

Turning to commonality and typicality, GLK first contends that certification should be denied because Count III is based on a flawed understanding of the AWPA.  GLK spends considerable time arguing that class certification is not appropriate because there is no law or regulation that required GLK to pay the pre-employment expenses or employ the class members for a certain period of time.  (Def. Resp. 6–10, ECF No. 82.)  According to GLK, because Plaintiffs' legal theory is flawed, the class-wide adjudication of the AWPA claim is "inappropriate."  GLK does not attempt to tie these arguments to any of the 23(a) prerequisites or the categories in 23(b), though they most logically relate to the commonality and typicality prerequisites.

14

GLK appears to believe that because the "rigorous analysis" required by Rule 23 may overlap with the merits of the underlying claims, this Court should deny certification of Count III because the proposed class members have no claim or, at least, no chance of prevailing on the merits of their claim. This argument is inapposite at this stage. *See Schleicher*, 618 F.3d at 685 (rejecting approach that "class certification is proper only when the class is sure to prevail on the merits"). Even if GLK is correct that it did not need to pay inbound expenses or employ the migrant workers for a specific amount of time, it does not follow that class-wide adjudication of Count III is inappropriate. GLK's merits argument is simply premature. Adopting GLK's argument would require the Court to go much further into the merits of the claims than is necessary to determine whether certification is appropriate. *Amgen*, 113 S. Ct. at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (citing *Dukes*, 131 S. Ct. at 2552 n.6). For this reason, GLK's argument is rejected.

If anything, GLK's argument against certification under Count III suggests that the commonality prerequisite is met as there is a "common answer"—Plaintiffs have no claim as a matter of law under the AWPA—for all of the class members, albeit one with which Plaintiffs disagree. The commonality prerequisite is, at bottom, an inquiry into whether the merits of the claim can be decided in "one stroke." *Dukes*, 131 S. Ct. at 2551. In this instance, it is clearly met. The core disagreement under Count III is whether the AWPA required GLK to pay inbound expenses of the proposed class members or employ them for a specific period of time. The answer, whether it is yes or no, will be common to the entire class. Resolution of this issue of law is precisely what Plaintiffs' proposed liability-only 2010 Class and 2011 Class seek. In addition to

15

this important question of law, there are a number of other common questions and answers for liability purposes under the AWPA as fully developed in Plaintiffs' brief that are unopposed by GLK. (Pl. Memo. in Supp. 11–14, ECF No. 76.)

Similarly, the typicality prerequisite is satisfied because the class representatives are subject to the same defense as the other class members. If GLK is correct about the AWPA, its success on the merits does not mean that the class representatives' claims do not have "the same essential characteristics as the claims of the class at large." *Muro*, 580 F.3d at 492. Morever, GLK's argument does not identify how GLK's actions differed between the named plaintiffs and the proposed class members. *See CE Design Ltd.*, 637 F.3d at 724. Accordingly, the commonality and typicality prerequisites are met.

This analysis of numerosity, commonality, typicality, and adequacy applies equally well to certification of the 2010 Class and 2011 Class under Counts VI and VIII. First, there is no question that joinder of all of the proposed nearly 100 class members with small claims living in Mexico is impracticable. Second, there are common questions because the same failures to pay inbound expenses and early terminations of the class members by GLK form the basis of Count VI and the failures to pay inbound expenses underlies Count VIII. Third, the claims of the representative parties are typical of the class as there is no indication that GLK acted differently toward the representative parties than the absent class members. Fourth, the representative parties and class counsel are adequate for all of the reasons explained above.

Having satisfied the Rule 23(a) prerequisites, the Court must examine whether the proposed classes satisfy one of the subsections of Rule 23(b). Plaintiffs contend that the 2010 Class and 2011 Class may be certified under Rule 23(b)(2) or alternatively pursuant to Rule 23(b)(3). For the same

16

reasons that the condition of Rule 23(b)(2) was not met as to Counts IV and VII above, the Court finds that is not met here. Plaintiffs' damage claims predominate and they have failed to allege facts sufficient to show a need for declaratory relief. But as above, Plaintiffs' claims in Counts III, VI and VIII do meet the condition in Rule 23(b)(3).

As to Counts III and VIII, the common the issues of law and fact with regard to liability clearly predominate over the questions, if any, that affect only individual members. Again, either the AWPA requires a certifying employer to pay employees pre-employment expenses and employ them for the entire period of time certified in its H-2B petition or it does not. To the extent that Plaintiffs and class members may have individualized determination for monetary damages if liability is established under Count III or VIII, the certification of the liabilty-only classes pursuant to Rules 23(b)(3) and (c)(4) as Plaintiffs propose is consistent with the recommendation of the Seventh Circuit. *See, e .g.*, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1277 (2014) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012) (reversing denial of liability-only class certification). In this case, the liability-only 2010 Class and 2011 Class for Counts III and VIII are the "sensible way to proceed." GLK cannot avoid certification of a class action or shield itself from liability by acting so that individuals class members do not suffer identical damages, though they are subjected to the identical behavior. *Butler*, 727 F.3d at 801 ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in

17

settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits."). Accordingly, certification of the 2010 Class and 2011 Class under Counts III and VIII pursuant to Rule 23(b)(3) and Rule 23(c)(4) will be granted.

As to Count VI, GLK argues that the 2010 Class and 2011 Class cannot be certified because the alleged contracts GLK is accused of breaching are oral contracts with the individual class members. By definition, whether an oral contract exists is dependent on the statements made to each individual employee and what he or she reasonably understood them to mean. Because such a claim is entirely dependent on the specific promises allegedly made to each employee, GLK argues that the individual issues of fact upon which liability must be determined necessarily predominate. The claim of each employee will have to be determined based on the specific promises that the employee claims were made to him and what he reasonably understood them to mean. Under these circumstances, GLK contends, no class can be certified.

In reply, Plaintiffs argue that GLK misunderstands their claim. Plaintiffs contend that Count VI is not based on oral agreements between GLK and the employees; it is based on the written H-2B employment contract "embodied" in the Applications for Temporary Employment Certification (ETA Form 9142). (Pl. Reply 5, ECF No. 83.) These documents, Plaintiffs argue, by themselves constitute enforceable contracts under Wisconsin law. Count VI rests on two propositions that Plaintiffs claim are true as a matter of law: "(a) as a matter of law, Plaintiffs had, and were required to have, a written contract of employment; and (b) as a matter of law, that contract was, and had to be, a contract for a term, not at-will." (*Id.* at 6.) Thus, liability for Count VI will require a class-

18

wide legal determination regarding whether these H-2B employment contracts existed and under what terms.

Rule 23(b)(3) requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Among the issues to consider under Rule 23(b)(3) are the interests of the class members in controlling the prosecution individually, the existence of any litigation already begun by the class members, the desirability of concentrating litigation in a particular forum, and the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). Under the predominance inquiry, a court must examine whether "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3) requires that "common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen*, 133 S. Ct. at 1196 (emphasis in original) (quoting Fed. Rule Civ. Proc. 23(b)(3)). The common questions for Count VI are whether the H-2B applications created employment contracts, whether those contracts contained terms guaranteeing employment for a specified period of time or requiring reimbursement of inbound expenses, and whether GLK breached those terms.

Looking at the factors identified in Rule 23, GLK argues that the last—difficulties in managing a class action—supports the denial of certification. GLK is correct that adjudication of oral contracts on a class-wide basis would be highly individualized, requiring an inquiry into the "meeting of the minds" between GLK and each proposed class member. But Plaintiffs have expressly restricted their contract claims to breaches of the terms of alleged written contracts in the

19

form of the H-2B applications, not on oral contracts or promises made to each proposed class member. GLK's oral contract argument presumes that the Court will conclude, as GLK argues, that the H-2B applications (form 9142) cannot create employment contracts as a matter of law. (Def. Br. in Resp. 12, ECF No. 82 ("But as demonstrated above, the H-2B petition itself does not . . . create a contract. . . . Alternatively then, Plaintiffs contend that oral arguments made by agents of GLK create a separate contract of employment.").) But for the reasons already explained above, these motions for class certification are not a dress rehearsal for dispositive motions. If GLK's contract argument is correct and H-2B applications are not written contracts, then they will prevail on the merits on Count VI at summary judgment. Because Count VI is not based on individual oral contracts, GLK's class certification argument is unpersuasive.

Nothing in this motion will prevent GLK from filing a motion to decertify the classes under Count VI if the analysis changes as this case moves forward. The Court intends to hold Plaintiffs to their express renunciation of any contractual liability based on oral contracts and promises made to the named plaintiffs or proposed class members. If it becomes apparent in later motion practice or at trial that Plaintiffs' contract claim does depend on oral statements that require individualized inquiries inconsistent with Rule 23(b)(3), the 2010 Class and 2011 Class will be decertified.

GLK suggests no other individualized issues that would overwhelm the common questions: (1) did the H-2B documents create contracts with the proposed class members; (2) if so, do these contracts contain terms that guaranteed a specific period of employment at the prevailing wage rate; and (3) did GLK breach these terms? An examination of the other factors identified in Rule 23(b)(3) also supports certification. Adjudicating liability once as to all of the proposed class members is vastly superior to litigating hundreds of individual actions for breach of contract. *See*

20

*Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008). The class members' interests in controlling the litigation individually is minimal given the size of the claims, especially when the damages will be determined individually later. *See Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 675 (7th Cir. 2013). The Court is unaware of any similar litigation begun by class members. Finally, the concentration of the litigation in this forum is desirable because the domestic events that give rise to this lawsuit occurred in the Eastern District of Wisconsin.

The only remaining stumbling block for certification under Count VI is the issue of damages if contractual liability established. But, as already noted, class certification under Rule 23(b)(3) should not be denied solely because there may be individualized inquiries on damages. *Butler*, 727 F.3d at 801 ("It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages."). As a result, certification of the 2010 and 2011 Classes pursuant to Rule 23(b)(3) under Count VI for liability purposes only will be granted.

## CONCLUSION

Accordingly and for the reasons set forth above, Plaintiffs' motion for certification of the 2006–11 Class pursuant to Rule 23(b)(3) will be granted. For purposes of liability and damages under Counts IV and VII, the class will be defined as follows:

> All workers employed by GLK in Bear Creek, Wisconsin in 2006, 2007, 2008, 2010, or 2011 as H-2B workers pursuant to U.S. Department of Labor certification. This class excludes, however, the following workers: Elias Vera, Evarardo Hurtado, Elias Ramirez, and Adan Garcia.

Plaintiffs' motion for certification of the 2010 Class and 2011 Class will also be granted. For purposes of liability only under Counts III, VI, and VIII, the 2010 Class will be defined as follows:

21

All H-2B workers employed by GLK in Bear Creek Wisconsin in 2010. However, with respect to claims for post-termination wages or damages, this class excludes workers who have waived such claims.

For purposes of liability only under Counts III, VI, and VIII, the 2011 Class will be defined as follows:

All H-2B workers employed by GLK in Bear Creek, Wisconsin in 2011. However, with respect to claims for post-termination wages or damages, this class excludes workers who have waived such claims.

**SO ORDERED** this  4th   day of June, 2014.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court