IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

ALEJANDRO JURADO JIMENEZ et al., )
)
Plaintiffs, )
) Civil Action No. 12-C-0209
v. )
) Judge Griesbach
GLK FOODS, LLC and RYAN A. DOWNS, )
)
Defendants. )

RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT IN SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs provide this response to Defendant's Proposed Findings of Fact in Support of their Motion for Partial Summary Judgment. Plaintiffs incorporate by reference their Statement of Undisputed Facts in Support of their Motion for Partial Summary Judgment (Dkt. 87) ("PSUF") and Memorandum of Law in Support of their Motion for Partial Summary Judgment for Violations of the Fair Labor Standards Act (Dkt. 86) ("Plaintiffs' Memo").

1.  Plaintiffs are 77 migrant workers from Mexico who were employed by defendants in 2010 and 2011. Dkt. 87-2, Second Amended Complaint, ¶¶37, 38.

    **RESPONSE**: Undisputed for purposes of summary judgment.

2.  Plaintiffs were recruited and employed by GLK to process cabbage into sauerkraut at GLK's cannery plant in Bear Creek, Wisconsin, under the federal government's "H-2B" guest worker visa program. Dkt. 87-3, Plaintiffs' Ex. 2, GLK001373-78, 2283; Dkt. 87-4, Ex. 3, ETA-FOIA0004-11.

    **RESPONSE**: Undisputed for purposes of summary judgment.

3.  Defendant GLK is the largest sauerkraut producer in the world. Dkt., 87-5, Ex. 4, ECF No. 78, Defendants' Answer to Second Amended Complaint, ¶7.

    **RESPONSE**: Undisputed for purposes of summary judgment.

4. GLK hires roughly 50-100 seasonal workers to do the coring and trimming (using machines). Dkt., 87-8, Plaintiffs' Ex. 7, GLK001232; Dkt., 87-9, Ex. 8, GLK001296.

**RESPONSE**: Undisputed for purposes of summary judgment.

5. For a number of years, including in 2010 and 2011, GLK hired predominantly Mexican nationals rather than U.S. workers to perform this "trim line" labor. Dkt, 87-3, Ex. 2, GLK001373-78, 2283; Dkt., 87-4, Ex. 3, ETA-FOIA0004-11; Dkt., 87-11, Ex. 10, GLK001116-17; Dkt. 87-12, Ex. 11, OFLC-FOIA0085-86; Dkt. 87-13, Ex. 12, GLK001220-21; Dkt. 87-8, Ex. 7, GLK001232; Dkt. 87-9, Ex. 8, GLK001296; Dkt. 87-10, Ex. 9, Deposition of Rafael Jimenez Arroyo at 22:24-23:1; Dkt., 87-6, Ex. 5, Deposition of Ryan A. Downs at 9:4-9.

**RESPONSE**: Undisputed for purposes of summary judgment.

6. Federal law allows employers to import foreign workers in limited circumstances, through various "guest worker" visa programs. http://www.doleta.gov/business/gw/guestwkr/.

**RESPONSE**: Undisputed for purposes of summary judgment.

7. GLK participated in the H-2B guest worker program in 2010 and 2011. Dkt. 87-3, Ex. 2, GLK001373-78, 2283; Dkt. 87-4, Ex. 3, ETA-FOIA0004-11.

**RESPONSE**: Undisputed for purposes of summary judgment.

8. In 2010 and 2011, Defendants retained a firm called LaborQuest to coordinate its H-2B application and worker processing for each of those years. LaborQuest, in turn, subcontracted with another specialist, Florida East Coast Travel Services (FLECTS). Dkt. 87-33, Ex. 32, Defendants' Second Revised Responses to Plaintiffs' First Set of Interrogatories, Nos. 9, 11; Affidavit of Thomas A. Palmer, ¶7, attached as Exhibit B to Affidavit of Michael Aldana.

**RESPONSE**: Admit that defendants retained a firm called LaborQuest in 2010 and 2011. Admit that LaborQuest subcontracted with FLECTS. Deny that FLECTS/LaborQuest "coordinate[d]" with the H-2B workers in the application and recruitment process. Dkt. 87-34, Deposition of Jorge Garcia at 45:20-46:7, 54:21-56:3, 88:14-19, 89:6-18. GLK's recruiter, Rafael Jimenez Arroyo, served as the main point of contact between FLECTS/LaborQuest and the workers. Ex. B, Deposition of Jorge Garcia at 43:10-16, 43:25-44:20, 45:3-14, 45:20-46:7, 48:2-9; Dkt. 87-34, Deposition of Jorge Garcia at 89:6-18. When FLECTS/LaborQuest needed to provide or solicit information from the workers they either contacted Rafael or his designated

sub-recruiters Elias and/or Everardo. Ex. B, Deposition of Jorge Garcia at 43:10-16, 43:25-44:7, 44:17-20, 45:9-14, 91:24-93:5, 102:24-103:7; Dkt. 87-34, Deposition of Jorge Garcia at 94:21-95:25.

9. Labor Quest/FLECTS completed and submitted the labor certification petition, scheduled visa appointments for the workers, and assisted the workers with paperwork. Dkt., 87-34, Ex. 33, Deposition of Jorge Garcia at 88:14-19; 89: 6-18; 94:21-95:25, 108:11-20; 114:10-18, 140:17-141:24; Dkt. 87-35, Ex. 34, Deposition of Thomas Robinson at 41:13-42:23, 89:13-91:14; Affidavit of Thomas A. Palmer, ¶7, attached as Exhibit B to Affidavit of Michael Aldana.

**RESPONSE**: Admit that LaborQuest/FLECTS completed and submitted the labor certification petition in 2010 and 2011. Admit that LaborQuest/FLECTS scheduled visa appointments for the H-2B workers. Deny that LaborQuest/FLECTS scheduled such appointments in coordination with the actual workers. Ex. B, Deposition of Jorge Garcia at 43:10-16, 43:25-44:20, 45:3-14, 45:25-46:7; Dkt. 87-34, Deposition of Jorge Garcia at 89:6-18; 94:21-95:25, 108:11-20, 114:10-18. Rafael Jimenez Arroyo and/or his designated sub-recruiters served as LaborQuest/FLECTS primary point of contact with workers during the recruitment process. Dkt. 87-34, Deposition of Jorge Garcia at 88:14-19, 89: 6-18, 94:21-95:25; Ex. B, Deposition of Jorge Garcia at 43:25-44:20, 45:3-14. When FLECTS/LaborQuest needed to provide or solicit information from the workers they either contacted Rafael or his designated sub-recruiters Elias and/or Everardo. Ex. B, Deposition of Jorge Garcia at 43:10-16, 43:25-44:7, 44:17-20, 45:9-14, 91:24-93:5, 102:24-103:7; Dkt. 87-34, Deposition of Jorge Garcia at 94:21-95:25. Admit that a FLECTS representative, Jorge Garcia, traveled to Mexico City and assisted some of the workers with their paperwork after their recruitment but prior to their visa appointments. Ex. B, Deposition of Jorge Garcia at 139:25-142:1.

10. GLK understood that the fees it was paying Guerrero or LaborQuest included the visa fees in Mexico. Affidavit of Thomas A. Palmer, ¶7, attached as Exhibit B to Affidavit of Michael Aldana.

3

**RESPONSE**: Object to the term "visa fees" as vague. Plaintiffs claim damages for USCIS visa fees, *derecho a visa* fees paid to GLK's agents, and recruiting fees paid to GLK's agents that purportedly covered visa fees. Dkt. 87-51 to 58, Plaintiffs' Responses to Defendants' First Set of Interrogatories and Plaintiff Jesus Martinez Gallardo's Amended Response to Defendants' First Set of Interrogatories, No. 6. Plaintiffs paid for their visa fees. *Id.*, Ex. C, Deposition of Tom Robinson at 175:25-176:10; Dkt. 87-49, P0045, P0264, P0307, P0582, P1102; Dkt. 87-6, Deposition of Ryan A. Downs at 109:13-22; Dkt. 87-34, Deposition of Jorge Garcia at 125:21-126:6. To the extent GLK purports to have "understood" its fees to LaborQuest included *derecho a visa* fees, deny. GLK was informed that the workers in 2011 had reported paying such fees. Ex. D, Deposition of Gina Pahl at 36:3-24, 37:5-39:24, 40:18-24, 43:1-45:3; Ex. E, Deposition of Jacci Carlson at 89:23-91:13, 92:9-19; Dkt. 87-49, P0045, P0264, P0307, P0582, P1102.

11. In 2010 and 2011, the FLSA minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C).

**RESPONSE**: Undisputed for purposes of summary judgment.

12. GLK paid the Plaintiffs the hourly rate of $7.85 per hour in their first week of work in 2010. *See*, Dkt. 87-51-58; Plaintiffs' Exhibit 50, Interrogatory Responses attached thereto.

**RESPONSE**: Admit that plaintiffs' wages for their first week of work in 2010 were calculated at a rate of $7.85 for each hour worked. Deny that plaintiffs' pay rate was *actually* $7.85 per hour, as defendants failed to reimburse plaintiffs for pre-employment expenses as required by law. Dkt. 87-51 to 58, Pls.' Resp. to Defs.' First Set of Interrog., No. 6; Dkt. 87-71, Spreadsheet of Net Wages and Damages Due in 2010 and 2011. Object to this statement to the extent it requires a legal conclusion about the FLSA mandate that defendants reimburse plaintiffs for pre-employment expenses. *See* Plaintiffs' Memo. at 10-23.

4

13. GLK paid the Plaintiffs the hourly rate of $10.36 per hour in their first week of work in 2011. *See*, Dkt. 87-51-58; Plaintiffs' Exhibit 50, Interrogatory Responses attached thereto.

**RESPONSE**: Admit that plaintiffs' wages for their first week of work in 2011 were calculated at a rate of $10.36 for each hour worked. Deny that plaintiffs' pay rate was *actually* $10.36 per hour, as defendants failed to reimburse plaintiffs for pre-employment expenses as required by law. Dkt. 87-51 to 58, Pls.' Resp. to Defs.' First Set of Interrog., No. 6; Dkt. 87-71, Spreadsheet of Net Wages and Damages Due in 2010 and 2011. Object to this statement to the extent it requires a legal conclusion about the FLSA mandate that defendants reimburse plaintiffs for pre-employment expenses. *See* Plaintiffs' Memo at 10-23.

14. In each Plaintiff's individual Interrogatory responses to Defendants' Interrogatory No. 18, the Plaintiffs admitted that GLK paid them the hourly rate of $7.85 in 2010 and $10.36 for work performed during the first week of work. *See*, Dkt. 87-51-58; Plaintiffs' Exhibit 50, Interrogatory Responses attached thereto.

**RESPONSE**: Admit that Plaintiffs' wages for their first week of work were calculated at a rate of $7.85 for each hour worked in 2010 and a rate of $10.36 for each hour worked in 2011. Deny that Plaintiffs' pay rate was *actually* $7.85 per hour in 2010 or $10.36 per hour in 2011, as Defendants failed to reimburse Plaintiffs for pre-employment expenses as required by law. Dkt. 87-51 to 58, Pls.' Resp. to Defs.' First Set of Interrog., No. 6; Dkt. 87-71, Spreadsheet of Net Wages and Damages Due in 2010 and 2011. Deny that Plaintiffs' Interrogatory responses admit that their rate of pay was $7.85 in 2010 and $10.36 in 2011, as Plaintiffs' responses to Defendants' Interrogatory No. 18 state that the workers received far less than the FLSA minimum wage of $7.25 per hour for work performed during the first week. Dkt. 87-51 to 58, Pls.' Resp. to Defs.' First Set of Interrog., No. 18. Object to this statement to the extent it requires a legal conclusion about the FLSA mandate that defendants reimburse plaintiffs for pre-employment expenses. *See* Plaintiffs' Memo at 10-23.

5

15. No workers paid any recruitment fees to GLK, GLK received no such fees and GLK did not authorize any individual or entity to charge a recruitment fee to any worker. *See*, Deposition of Ryan A. Downs, pp. 139-141, attached as Exhibit A to Affidavit of Michael Aldana; *see* Affidavit of Thomas A. Palmer, ¶ 7, attached as Exhibit B to Affidavit of Michael Aldana; *see*, Deposition of Rafael Jimenez Arroyo, pp. 187-188, attached as Exhibit C to Affidavit of Michael Aldana; *see*, Deposition of Thomas Robinson, pp. 4, 147-148; attached as Exhibit D to Affidavit of Michael Aldana.

**RESPONSE**: Deny. Plaintiffs paid recruitment fees to agents of GLK. Dkt. 87-51 to 58, Pls. Abraham Ruiz Mendoza, Jesus Eduardo Santiago Garcia, Jose Antonio Flores Perez, Jose Ramon Martinez Palmas, Manuel Mendoza Chiquito, Raul Omar Silva Razo, Alejandro Ponce Gonzalez, Fernando Rosas Rivera, J. Salud Rodriguez Ramirez, Jose Alberto Garcia Camargo, Jose Francisco Yerena Gonzalez, Julio Cesar Cabrera Guerrero, Nazario Rodriguez Guzman, Pedro Tapia Rodriguez, Roman Rodriguez Ramirez, Luis Andres Muñoz Espinoza, Raul Flores Flores, Dario Flores Flores, Rafael Arroyo Lopez, Jose Manuel Lopez Valencia, Jesus Ricardo Arroyo Martinez, Jose Baca Guevara, Juan Almanza Sanchez, Diego Armando Arroyo Garcia, and Jose Lorenzo Esparza Barron's Resps. to Defs.' First Set of Interrog., Nos. 6, 8, 9, 18, 21. Further, GLK had notice of allegations that its agents were charging recruiting fees, and did nothing in response to those allegations. Ex. F, Deposition of Ryan A. Downs, at 140:9-141:14.

16. Workers acknowledged that no one, on behalf of GLK, promised that GLK would reimburse them for their in-country expenses. Depo. of Alejandro Jurado Jimenez, 74:10-75:14 and Depo. of J. Jesus Jimenez Rosas, 25:2-11, attached as Exhibits E and F to Affidavit of Michael Aldana.

**RESPONSE**: Deny that workers acknowledged that no one on behalf of GLK promised that GLK would reimburse them for their in-country expenses. Admit that two workers, Alejandro Jurado Jimenez and J. Jesus Jimenez Rosas, stated that no one explicitly told them whether GLK would reimburse them for their incoming expenses. Ex. G, Deposition of Alejandro Jurado Jimenez, 74:10-75:14, Ex. H, Deposition of J. Jesus Jimenez Rosas, 25:2-11. Deny that any other plaintiff has made similar statements. Deny that GLK did not promise to

reimburse plaintiffs, as ETA Form 9142 required GLK to agree to comply with employment-related laws and regulations including the FLSA. *See* Dkt. 87-3, GLK001373-78, 2283; Dkt. 87-4, ETA-FOIA0004-11; *see Arriaga v. Fla. Pac. Farms LLC.*, 305 F.3d 1228, 1235 (11th Cir. 2002); *see also* Plaintiffs' Memo. at 10-23. Moreover, FLECTS employee Jorge Garcia stated that H-2B workers were provided a copy of the ETA Form 9142. Ex. B, Deposition of Jorge Garcia at 139:17-142:21. Object to the terms "in-country" and "promise" as vague. Object to the relevance of whether defendants promised to reimburse plaintiffs for in-country expenses. Plaintiffs' Memo. at fn. 9 (explaining that reimbursement required under FLSA cannot be waived by worker).

17.     Thereafter, GLK provided transportation, at its expense, from the U.S. side of the border to Bear Creek and provided per diem reimbursement for food costs in the U.S. Similarly, when workers returned to Mexico, GLK provided bus transportation from Bear Creek to the border. Depo. of Jacci Carlson, 145:16-146:16, attached as Exhibit G to Affidavit of Aldana.

**RESPONSE**: Admit that GLK provided transportation from the U.S. side of the border to Bear Creek at the beginning of the workers' employment in 2010 and 2011. However, the cited portions of Jacci Carlson's deposition refer only to outbound travel. Admit that, when the workers returned to Mexico, GLK provided bus transportation from Bear Creek to the border. Deny that GLK provided per diem reimbursements for food costs to any workers en route to Bear Creek. Dkt. 87-51 to 58, Pls.' Resp. to Defs.' First Set of Interrog., No. 6. Object to the relevance of whether GLK provided incoming transportation from the U.S. side of the border to Bear Creek to plaintiffs' claims in Count I. *See* Plaintiffs' Memo. at 1-26.

18.     In 2010, excess rains and flooding devastated the cabbage crop in Wisconsin. While GLK was anticipating 90,000 tons of cabbage yield that year, its actual harvest yielded about 20% of that number. Dkt. 87-33, Ex. 32, Defendants' Second Revised Responses to Plaintiffs' First Set of Interrogatories, No. 10.

**RESPONSE**: Admit that GLK claims that floods in 2010 damaged GLK's crop yield. Object to the terms "anticipating" and "devastated" as vague. Object to the relevance of this fact to plaintiffs' claims in Count I. *See* Plaintiffs' Memo. at 1-26. Deny that GLK only processed 20% of the expected amount of cabbage that year, as GLK was able to find cabbage elsewhere which still needed to be processed into sauerkraut. Ex. F, Deposition of Ryan A. Downs at 44:22-45:21.

19. Because the crop was so low that year, GLK did not need the number of workers for which it had originally petitioned, nor did it need workers in Bear Creek to remain throughout the Fall. *Id.*

**RESPONSE**: Deny that GLK did not "need" workers in Bear Creek, as GLK obtained cabbage from other sources. Ex. F, Deposition of Ryan A. Downs at 44:22-45:21. Object to the relevance of this fact to plaintiffs' claims in Count I. *See* Plaintiffs' Memo. at 1-26. Object to the vagueness of the statement insofar as it addresses GLK's labor needs.

20. Thus, the workers were sent home that year on or about September 28. GLK paid for their return transportation to Mexico. *Id.*

**RESPONSE**: Admit that plaintiffs were sent home in September of 2010, and that GLK paid for their transportation to the border. Deny that GLK paid for plaintiffs' return transportation to their points of origin. Dkt. 87-51 to 58, Pls.' Resp. to Defs.' First Set of Interrog., No. 12. Object to the relevance of this fact to plaintiffs' claims in Count I. *See* Plaintiffs' Memo. at 1-26.

21. In 2011, the Department of Labor instituted 2 significant hourly rate increases for the H-2B workers with little notice. In 2010, the prevailing wage rate required by the DOL for the GLK workers was $7.85 per hour. *Id.*

**RESPONSE**: Admit that the DOL prevailing wage determination for GLK's H-2B workers in 2011 was higher than in 2010. Admit that the hourly wage rate for the H-2B workers in 2010 was $7.85. Deny that the DOL increased the wages for H-2B workers a second time in 2011. 76 Fed. Reg. 188 (September 28, 2011). Deny that GLK had "little notice" of the proposed

wage increase, as the proposed wage increase was issued pursuant to a Final Rule published by the DOL on January 19, 2011. 76 Fed. Reg. 12 (final rule). Further, GLK acknowledged the risk of wage increases and agreed to assume that risk by agreeing to comply with the DOL's prevailing wage determinations. *See* Dkt. 87-3, GLK001373-78, 2283; Dkt. 87-4, ETA-FOIA0004-11. Object to the relevance of this fact to plaintiffs' claims in Count I. *See* Plaintiffs' Memo. at 1-26. Object to the terms "significant" or "little notice" as vague.

22. At the time the 2011 petition was certified, the DOL informed GLK that the prevailing wage rate would be increased to $10.36 per hour. At the same time workers began departing for the U.S. in August 2011, the DOL notified GLK of yet *another* wage increase, this time to $14.68 per hour. *Id.*

**RESPONSE**: Admit that the DOL notified GLK that the prevailing wage rate for the 2011 season would be $10.36 per hour on March 25, 2011. Admit that the DOL notified GLK of a wage increase in August 2011. Deny that the wage increase to $14.68 ever took effect. 76 Fed. Reg. 188 (September 28, 2011) (final rule; delay of effective date); Ex. F, Deposition of Ryan A. Downs at 102:8-103:3; Ex. I, Email from Tom Robinson to Jacci Carlson re: delay in wage increase, FL0095-97. Object to the relevance of this fact to plaintiffs' claims in Count I. *See* Plaintiffs' Memo. at 1-26.

23. This constituted an increase of 87%. GLK appealed the determination but it was initially rejected. GLK then determined that it was no longer economically viable to pay those rates for the work to be performed and decided to send the workers back to Mexico. Compounding the significant economic impact of the wage increase was a poor harvest that yielded only 70% of plan. *Id.*

**RESPONSE**: Deny that it was "no longer economically viable" to pay prevailing wage rates to the H-2B workers, as the DOL delayed the implementation of the new prevailing wage rule before the H-2B workers were sent home. 76 Fed. Reg. 188; Dkt. 87-67, GLK005981. Deny that, even had the wage increase occurred, it would have been an increase of 87%. Object to the relevance of this fact to plaintiffs' claims in Count I. *See* Plaintiffs' Memo. at 1-26.

Dated: November 7, 2014                    Respectfully submitted,

/s/ Claudia Flores
One of Plaintiffs' Attorneys

Matthew J. Piers                           Ali Beydoun
José J. Behar                              Attorney for Plaintiffs
Joshua Karsh                               Farmworker Justice
Claudia Flores                             1126 16th Street, N.W., Suite 270
Jenna Miara                                Washington, D.C. 20036
Attorneys for Plaintiffs                   (202) 293-5420 ext. 308
Hughes Socol Piers Resnick & Dym, Ltd.     E-mail: abeydoun@farmworkerjustice.org
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
        jbehar@hsplegal.com
        jkarsh@hsplegal.com
        jmiara@hsplegal.com
        cflores@hsplegal.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing document will be served on counsel listed below by

CM/ECF on November 7, 2014.


Michael Aldana, Esq.
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202
Michael.Aldana@quarles.com


                                                 s/ Claudia Flores
                                                 One of Plaintiffs' Attorneys