IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| ALEJANDRO JURADO JIMENEZ et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 12-C-0209 |
| v. ) | |
| ) | Judge Griesbach |
| GLK FOODS, LLC and RYAN A. DOWNS, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
IN REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs move for partial summary judgment on Count I of their Second Amended Complaint, which alleges that defendants failed to pay them the federal minimum wage in their first week of work in 2010 and 2011 in violation of the Federal Labor Standards Act ("FLSA"). Specifically, plaintiffs claim that they incurred certain pre-employment expenses primarily for the benefit or convenience of defendants, that defendants failed to reimburse plaintiffs for those expenses, driving plaintiffs' wages below the FLSA minimum, and that, as a matter of law, defendants are liable to plaintiffs under the FLSA. In their cross-motion and response to plaintiffs' Motion for Partial Summary Judgment, however, defendants fail to directly challenge plaintiffs' claims under the FLSA, arguing instead that nothing in the H-2B program requires an employer to reimburse H-2B workers for such expenses. Defendants' argument, however, disregards the legal basis of plaintiffs' motion, and, moreover, defendants do not materially dispute any relevant facts pertinent to their FLSA violations.

1

In addition, the uncontested facts demonstrate that, as a matter of law, defendant Ryan Downs was plaintiffs' joint employer for purposes of the FLSA. Downs was intimately involved in the daily operations of the plaintiffs' employment, made decisions regarding the terms of their employment conditions and compensation, and had significant financial interest and operational control. Finally, the material undisputed facts also show that GLK should not be excused from the presumptive double damages for its violations of the FLSA, because it has not demonstrated—and could not demonstrate—that it acted in good faith and with reasonable belief to avoid an award of liquated damages. For these reasons, plaintiffs' motion should be granted in its entirety and defendants' cross-motion should be denied in its entirety.

**ARGUMENT**

**I.     The H-2B Regulations Are Irrelevant to Plaintiffs' FLSA Claims.**

Plaintiffs have established that defendants' failure to reimburse them for certain preliminary expenses incurred in working for GLK violates the FLSA. Defendants, however, devote a substantial portion of their response brief to arguing that the H-2B program does not require the reimbursement of pre-employment expenses to plaintiffs and that the regulations interpreting the H-2B program are unworthy of deference. Defendants' Brief in Response (Dkt. No. 93) at 12-21. Defendants' arguments miss the mark and bear no relevance to plaintiffs' motion.[1]

There is no dispute that the FLSA requires employers to pay the federal minimum wage to its employees, and defendants do not deny that H-2B workers such as plaintiffs are entitled to

---

[1] Defendants seem to conflate the DOL's authority to promulgate regulations under the H-2B program with its authority to promulgate regulations under the FLSA. *See* Defs. Resp. at 21 ("Despite the DOL's efforts in the last few years to impose new liabilities on H-2B employers, it is clear that it does not have the authority to promulgate such regulations and its interpretations under the FLSA should be accorded no deference.").

2

the protections of the FLSA. 29 U.S.C. § 203(d) (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employer); 29 U.S.C. § 203(e)(1) & (g) (defining "employee" as "any individual employed by an employer" and "employ" as "to suffer or permit to work"); 29 U.S.C. § 206(a) ("[e]very employer shall pay to each of his employees" the federal minimum wage). *See also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 898-99 (9th Cir. 2013), cert. denied, 134 S. Ct. 2819 (2014) (noting the "similar statutory requirements and similar structure of the H–2A and H–2B programs," and that foreign guest worker employers "may not make deductions that would violate the FLSA.") (internal citations omitted); Defs. Resp. at 6. Accordingly, what matters for purposes of plaintiffs' motion is the *FLSA* statute and regulations, not the H-2B ones.

For that reason, defendants' attempt to minimize the ruling in *Arriaga v. Fla. Pac. Farms, LLC,* 305 F.3d 1228 (11th Cir. 2002), by contending that the *Arriaga* court "disregarded applicable regulations promulgated under Section H-2A", is of no consequence. Defs. Resp. at 16. The *Arriaga* court did not need to resort to the H-2A regulations because it found, based on a plain reading of the FLSA and its regulations, that migrant farmworkers were entitled to reimbursement of their expenses because they constituted *de facto* deductions for which the employer could not take a credit and which drove their wages below the federal minimum. *Arriaga,* 305 F.3d 1228, 1241-44. The expenses of plaintiffs here are no different and, similarly, require reimbursement under the FLSA.[2]

---

[2] Though defendants rely heavily on *Castellanos-Contreras v. Decatur Hotels, LLC*, 559 F.3d 332 (5th Cir. 2009) for the purported proposition that the FLSA and its regulations "do not require reimbursement of travel, visa, and recruitment expenses of H-2B workers," the Fifth Circuit's analysis is flawed in many respects, not the least of which is the Fifth Circuit's view that the FLSA must *expressly* provide that an H-2B worker's preliminary expenses should be reimbursed by his employer. *See id.* at 337, 339. *See also, infra,* at 7-8. No federal court outside of the Fifth Circuit has subscribed to this erroneous analysis of the FLSA's requirements.

3

For the same reason, defendants' attempt to minimize the Department of Labor's ("DOL")'s interpretation of the H-2B statutory scheme is equally unavailing.  Plaintiffs' motion is based on the FLSA, not on the H-2B regulations, and, as a matter of FLSA law, the DOL has determined that the type of pre-employment expenses incurred by H-2A and H-2B workers are primarily for the benefit of the employer. DOL Field Assistance Bulletin 2009-2, *Travel and Visa Expenses of H-2B Workers Under the FLSA* at 10 (2009) ("DOL Bulletin 2009-2"), available at http://tinyurl.com/FAB2009, also attached as Exhibit A; *see also Salazar-Martinez v. Fowler Bros.*, 781 F. Supp. 2d 183, 192 n.6 (W.D.N.Y. 2011) ("the relevant analysis involves the categorization of certain expenses as primarily for the benefit of the employer or employee, and this analysis is not altered by the fact that Congress chose to distinguish between two types of temporary foreign workers").  Therefore, regardless of how the DOL has interpreted the H-2B regulations, it is the DOL's interpretation of the FLSA that matters here.

Moreover, it is beyond dispute that the DOL has the authority to promulgate rules and regulations interpreting the FLSA.  29 U.S.C. § 259(a).  *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165, 171 (2007).  DOL Bulletin 2009-2 is the DOL's interpretation of the FLSA's section 3(m) regulations, and that interpretation makes clear that the type of expenses for which plaintiffs seek reimbursement must be borne by the defendants.  DOL Bulletin 2009-2 at 3 (Ex. A) (explaining that "beginning in 1960, Wage and Hour issued a series of opinion letters consistently concluding that the cost of transporting remotely hired temporary employees to and from the point of hire is a cost that must be borne by the employer, as a cost incidental to the employer's recruitment program, because the transportation is primarily for the employer's benefit; therefore, such transportation costs could not reduce the employees' wages below the required minimum wage.").  The DOL's position regarding reimbursement of preliminary

4

expenses under the FLSA undoubtedly warrants controlling deference. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

**II.     Plaintiffs' Travel and Immigration Expenses Are Primarily for the Benefit or Convenience of Defendants under the FLSA and Must Be Reimbursed Because They Dropped Plaintiffs' Wages Below the Federal Minimum Wage for the First Week of Work.**

The only relevant inquiry under the FLSA for purposes of plaintiffs' motion is whether the expenses incurred by plaintiffs were primarily for the benefit or convenience of the employees or the employer. Employers must reimburse employees for any out-of-pocket expenses that primarily benefit or convenience the employer to the extent that such expenses reduce weekly compensation below the federal minimum wage.[3] 29 C.F.R. § 531.35; *see also* 29 C.F.R. § 531.36 (applying the rule to "any such workweek").

Defendants seemingly argue that plaintiffs' status as H-2B workers renders them "unique," and that plaintiffs' pre-employment expenses are not primarily for the benefit of the employer because H-2B workers derive substantial benefits themselves from the working relationship. Defs. Resp. at 4, 7-9. Defendants miss the point. The question is not whether H-2B workers benefit from working for the defendants (clearly, they do), but, rather, as between the workers and the employer, who obtains the greater benefit of that employment relationship. Under these very circumstances, the DOL has determined that the employer is the *primary* beneficiary for purposes of the FLSA when it comes to H-2B workers. *See* DOL Bulletin 2009-2 at 7, 11 (Ex. A) (concluding that the "employer is the primary beneficiary of the temporary

---

[3] Though defendants include in their response that GLK paid their H-2B workers $7.85 an hour in 2010 and $10.36 an hour in 2011 (the hourly wage required by the H-2B regulations for those years), such information is irrelevant to plaintiffs' claims under the FLSA. As of July 24, 2009, the FLSA requires that workers be paid no less than $7.25 per hour. 29 U.S.C. § 206(a). In 2010 and 2011, H-2B workers employed by defendants earned less than the federally mandated minimum wage for their first workweek.

5

employee's travel and immigration-related costs" under the FLSA, noting that "we believe that the *Arriaga* court correctly relied upon the section 3(m) principle [of the FLSA] . . . as that principle is interpreted in both § 531.32 and § 531.35 [of the FLSA regulations]).[4]

Accordingly, as a matter of law, plaintiffs' preliminary travel and immigration expenses were incurred primarily to benefit or convenience the defendants, and, for that reason, must be reimbursed to compensate plaintiffs for the shortfall they suffered in their first week's wages.

### A. Transportation Costs

The FLSA regulations, the DOL interpretation of those regulations, and other case authority make clear that "transportation charges where such transportation is an incident of and necessary to the employment" are primarily for the convenience of the employer and, therefore, may not be included as wages. 29 C.F.R. §§ 531.32(a) & (c); 29 C.F.R. § 531.35. *See Peri & Sons,* 735 F.3d 892, 898; *Arriaga,* 305 F.3d 1228, 1242; *Rivera v. Brickman Grp., Ltd.*, No. CIV. 05-1518, 2008 WL 81570, at *12 (E.D. Pa. Jan. 7, 2008) (H-2B workers' transportation is "primarily for the employer's benefit, both because it is dissimilar to lodging and board, and because the expense arises out of [the employer's] decision actively to recruit workers in foreign countries.").

Relying exclusively on a sharply divided decision in the Fifth Circuit, *Castellanos-Contreras*, defendants argue that the H-2B program does not require reimbursement of inbound travel expenses. Defs. Resp. at 12-15. That argument, however, is again misguided. Regardless

---

[4] Defendant Downs himself clearly understood that GLK derives great benefit from employing H-2B workers and admitted that local, domestic workers are "unmotivated, unreliable and expensive." Defendants do not deny Plaintiffs' Statement of Undisputed Facts ("PSUF") ¶23, and thus, it is deemed admitted. Defendant's Response to Plaintiffs' Statement of Undisputed Facts (Dkt. No. 95) ¶23. Civil L.R. 56(b)(2)(B)(i) & (b)(4); *Coleman v. Goodwill Indus. of Se. Wisconsin, Inc.,* 423 F. App'x 642, 643 (7th Cir. 2011); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Additionally, in response to PSUF ¶23, defendants inserted that Downs regards "alternatives" to the H-2B program as "not appealing as the H2B people are trained and good workers." Defs. Resp. to PSUF ¶23.

of whether the H-2B program specifically requires reimbursement of inbound transportation costs, *the FLSA does*—and that is plaintiffs' claim here. GLK's 2011 Form ETA-9142, Dkt. 87-3 at 1378, ("the employer will comply with applicable Federal, State and local employment-related laws and regulations"). *See also De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1309 (N.D. Ga. 2008) ("Defendants' obligations under the FLSA exist independent of the H-2B regulations, and Defendants are bound by the FLSA's minimum wage provision . . . regardless of what the H-2B regulations may require."). As explained by plaintiffs and conceded by defendants, nothing in the FLSA exempts H-2B workers or H-2B employers from its requirements, and, accordingly, H-2B employees are entitled to earn the federal minimum wage, "free and clear," for every work week just like any other worker. *See, e.g.,* DOL Wage-Hour Opinion Letter, 1990 WL 712744 (June 27, 1990) ("Under the FLSA, it has always been the position of [DOL] that no deduction . . . may be made for [inbound] transportation of workers. . . ."); DOL Wage-Hour Opinion Letter, 1970 WL 26461 (Nov. 10, 1970) ("We have consistently regarded the cost of transporting employees to and from the point of hire as a cost to be borne by the employer. . . .").

*Castellanos-Contreras* does not help defendants. First, the Fifth Circuit did not definitively hold that employers need not reimburse H-2B workers for transportation costs. Instead, citing the anti-retroactivity presumption in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Court explicitly declined to consider the case in light of DOL Bulletin 2009-2, explaining that the DOL's interpretation was "issued long after the events in question" and that it does not "in any way purport to apply retroactively." *Castellanos-Contreras*, 622 F.3d at 401.

Here, however, the DOL's interpretation of the FLSA as found in DOL Bulletin 2009-2 *does* apply to the H-2B workers' employment in 2010 and 2011.[5]

Second, the majority's cursory analysis of the FLSA's requirements in *Castellanos-Contreras* is simply incorrect. The Fifth Circuit noted that the FLSA does not explicitly require reimbursement of transportation costs to H-2B workers, altogether disregarding that the FLSA also does not exclude H-2B workers from its requirements. Then, the Fifth Circuit compounded its error by overlooking that 29 C.F.R. § 531.35 explicitly cross-references 29 C.F.R. § 531.32(c), which makes plain that when "transportation is an incident of and necessary to the employment," it is to be regarded as "primarily for the benefit or convenience of the employer and [is] not therefore considered to be 'facilities' within the meaning of section 3(m)." *See Castellanos-Contreras*, 622 F.3d at 401; 29 C.F.R. § 531.32(c).[6] *See also* DOL-Bulletin 2009-2 at 9-10, Ex. A ("under 29 C.F.R. §531.29(c), these travel and visa costs are an inevitable and inescapable consequence of having foreign workers employed in the United States, and these

---

[5] Indeed, since 1960, the DOL's position has consistently been that the cost of transporting remotely hired temporary employees to and from the point of hire is a cost that must be borne by the employer, as an expense incidental to the employer's recruitment program, because the transportation is primarily for the employer's benefit. DOL Bulletin 2009-2 (Ex. A) at 9-12. DOL Bulletin 2009-2 is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944), which concluded that the DOL's FLSA interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *See also Teoba v. Trugreen Landcare LLC,* 769 F. Supp. 2d 175, 185 (W.D.N.Y. 2011) ("Pursuant to *Skidmore*, the Court gives considerable weight to Bulletin 2009–2. In that regard, the Court finds that the bulletin is thorough, well-reasoned, and consistent with the Department of Labor's longstanding view that employers should bear the visa and transportation costs for remotely-hired temporary workers.").

[6] Also overlooked by the majority opinion in *Castellanos-Contreras*, among other things, is the fact that for "nearly fifty years, the DOL has interpreted its regulations . . . to mean that employers must bear the visa, transportation and recruitment costs incidental to their hiring of temporary foreign guest workers, and that they must reimburse these costs to workers whenever the employer's failure to do so would effectively reduce the employee's wage below the statutory minimum in the first pay period." *Castellanos-Contreras* at 409 (Dennis, Elrod, King, Davis, Stewart & Prado, JJs, dissenting).

8

costs arise out of the employment of such workers. . . Therefore, under 29 C.F.R. § 531.3(c), these travel and visa expenses should be viewed as an incident of and necessary to the employment because they are not ordinary living expenses (*i.e.* unlike board and lodging, or electricity, water, or gas for personal use, they do not have substantial value to an employee that can be used independent of the job performed), and they do not ordinarily arise in an employment relationship (unlike daily home-to-work commuting costs).") (internal quotations and citations omitted).

A plain reading of the FLSA regulations demonstrates that a foreign guest worker's (whether H-2A or H-2B) inbound transportation costs are an incident of and necessary to the employment, primarily benefit or convenience the employer, and, accordingly, is a cost that must be borne by the employer. *Arriaga,* 305 F.3d at 1242.

### B.    Visas/Passports/Border Crossing Fees

Citing 22 C.F.R. § 41107, defendants also claim that visa fees are non-reimbursable expenses, because, according to them, the "cost of obtaining a visa is peculiar to the individual employee," and visas are "personal." Defs. Resp. at 9-10. But, again defendants have it wrong. First, defendants' argument is foreclosed by and contrary to both the plain language of the FLSA regulations and the DOL's interpretation of the FLSA regulations. *See* DOL Bulletin 2009-2 (Ex. A) at 1 ("this Bulletin clarifies that employers are responsible for paying the . . . visa expenses of H–2B employees, where shifting these costs to employees would effectively bring their wages below the FLSA minimum wage in their first workweek of employment.").

Second, contrary to defendants' suggestion, plaintiffs here, like all H-2B workers, do not obtain a general travel visa for their *own* use for entry into the United States to do as they wish, for as long as they wish and for whom they wish. Quite the opposite is true: the type of visa

9

plaintiffs have secured here, an H-2B visa, ties them to defendants for virtually all purposes. Plaintiffs' H-2B visas permit plaintiffs to enter the U.S. *only* to work (and for no other reason) and *only* to work specifically for defendants (and no one else) and for a specific period of time (and no longer). *See Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 126 (E.D.N.C. 2011) (holding that visa expenses are reimbursable because the "type of visa required for H–2B workers has no value outside of the employment and arises directly out of the employment. Additionally, the visa restricts a worker to one employer for one season, and the visas are integral to the program and are required for employment.").

DOL Bulletin 2009-2 explains that the employer's choice to utilize the H-2B process, and its proof that it is unable to find qualified and available U.S. workers, is evidence of its specific need for, and the benefit and convenience derived from, foreign H-2B workers. The entire application process is designed to demonstrate that the employer would not otherwise be able to fulfill its employment needs without H-2B workers. DOL Bulletin 2009-2 (Ex. A) at 8-9. On the other hand, H-2B workers' rights are severely limited by virtue of their visas. By definition, the H-2B worker's job is temporary, and there is no possibility of permanent employment, as with the typical worker. *See* 20 C.F.R. § 655.22(h) (repealed).[7] The employee's visa requires him to work for a particular employer and does not permit the employee to quit his job and use his visa to seek work from another employer or to simply quit and remain in the United States. *See* 20 C.F.R. §§ 655.22(k), (l), (m). Indeed, the H-2B employer must notify the Department of Homeland Security if a worker quits, is fired or does not arrive for work. *See* 8 U.S.C. § 1184; 20 C.F.R. § 655.22(f). An H-2B worker will be considered unlawfully present in the United States if he quits his employment with the employer identified on his H-2B visa or stays longer

---

[7] Though the regulations at 20 C.F.R. § 655.22 *et seq.* have been repealed, they were in effect during the time period relevant to plaintiffs' claims, and, moreover, the H-2B visa, with its strict limitations, remains the same.

10

than the time period permitted by the H-2B visa. *See, e.g.*, *Yasinskyy v. Holder*, 724 F.3d 983, 985 (7th Cir. 2013) (citing 8 U.S.C. § 1227(a)(1)(C)(i)). When defendants chose to use the H-2B program, they made an H-2B visa "required for the performance of the employer's particular work," and, therefore, the FLSA has been violated in any workweek that the cost of the visa "purchased by the employee cuts into the minimum . . . wages required to be paid" under the FLSA. 29 C.F.R. § 531.35.

The same analysis applies with equal force to the border-crossing fees and passport costs that plaintiffs necessarily incurred to work for GLK. In order to work for GLK, plaintiffs had to cross the border into the United States and, to do so, paid a border crossing fee out of their own pockets. Likewise, those plaintiffs who did not already have passports, had to necessarily pay for them—just like they paid for an H-2B visa—in order to cross the border and work for GLK. As with other transportation and visa costs, these expenses were compulsory, "incident to and necessary" for the job and were primarily for the benefit or convenience of defendants, who voluntarily sought to employ H-2B workers in the first place. *Perez-Benites v. Candy Brand, LLC*, No. 1:07-CV-1048, 2011 WL 1978414, *14 (W.D. Ark. May 20, 2011) (holding defendants liable under the FLSA for not reimbursing passport, visa processing, visa, transportation, and border crossing expenses); *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 706 (E.D.N.C. 2009) (holding defendants liable under the FLSA because transportation costs, including border crossing fees, incurred by H-2B plaintiffs operated as *de facto* deductions which drove first week's wages below the statutory minimum); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1312 (N.D. Ga. 2008) ("Plaintiffs who did not have passports were required to obtain passports as a necessary first step to participating in the H-2B

11

program, as nonimmigrant temporary workers, such as H-2B workers, cannot enter the United States without a valid passport.").

### C. Lodging/Subsistence

Defendants contend that in two cases, *Martinez-Bautista v. D&S Produce*, 447 F. Supp. 2d 954 (E.D. Ark. 2006), and *Ojeda-Sanchez v. Bland Farms, LLC*, No. 608CV096, 2010 WL 3282984 (S.D. Ga. Aug. 18, 2010), the district courts held that the cost of the foreign guest worker's hotel stay while waiting to be issued his visa was not reimbursable. Defs. Resp. at 11. These courts held no such thing, and, in fact, the court in *Ojeda-Sanchez* held just the opposite.

In *Ojeda-Sanchez,* the court concluded that, for purposes of the FLSA, the plaintiffs' lodging costs "are not normal living expenses and were incident and necessary to employment with Bland Farms," and were, thus, reimbursable to the extent that they drove wages below the federal minimum. *Id*. at *9 n.15. The question on summary judgment in *Ojeda-Sanchez* was whether there were genuine disputes of material fact concerning the amount of various expenses incurred by the plaintiffs and the number of hours worked by plaintiffs during the first work week—not whether, as a matter of FLSA law, plaintiffs were entitled to reimbursement of lodging expenses. *Id*. at *9. The same is true in *Martinez-Bautista*. The court in *Martinez-Bautista* made no ruling with respect to whether lodging expenses were reimbursable under the FLSA. Rather, it concluded that plaintiffs were not entitled to reimbursement of hotel costs under the work contract—not the FLSA—because, in that case, the H-2A workers had not completed fifty percent of the employment period necessary for contractual reimbursement. *Martinez-Bautista*, 447 F. Supp. 2d 954, 963. The holdings in these cases are not what defendants represent them to be.

12

Similarly, without any analysis, defendants reference two cases, *De Luna-Guerrero v. North Carolina Growers' Ass'n*, 338 F. Supp. 2d 649 (E.D.N.C. 2004), and *Morales-Arcadio v. Shannon Produce Farms, Inc.*, No. 605CV062, 2007 WL 2106188 (S.D. Ga. 2007), to argue that failure to reimburse meal expenses do not violate the FLSA. These courts, however, misapplied and overlooked the express language in 29 C.F.R. § 531.32(a), and did not consider the FLSA regulation specifically addressing the reimbursement of "living expenses" away from home.

The expenses incurred by plaintiffs here, including meal costs while away from home, in traveling from Mexico to Wisconsin to work for defendants are not normal expenses that they would have incurred in their everyday lives. Indeed, the FLSA regulations permit an employer to take a credit for meals (and hotel expenses) only when the employer *provides* such meals (and hotel expenses) in the first place. Only when "[m]eals furnished at company restaurants or cafeterias or by hospitals, hotels, or restaurants to their employees" are provided can those costs be passed along to the employee for FLSA purposes. 29 C.F.R. § 531.32(a). When "living expenses away from home [and] other travel expenses" are incurred by an employee, such costs are reimbursable to the employee. 29 C.F.R. § 778.217(b)(3). *See also Arriaga*, 305 F.3d 1228, 1243 ("it is apparent that the line is drawn based on whether the employment-related cost is a personal expense that would arise as a normal living expense").

Here, the hotel and the meal expenses incurred by plaintiffs while on their way to work for GLK and waiting for their H-2B visas to issue would not have arisen during the course of plaintiffs' ordinary lives, and those expenses primarily benefitted GLK just as much as their other travel and visa costs benefitted GLK. For that reason, plaintiffs' lodging and subsistence expenses must be reimbursed by defendants, as a matter of law, if defendants are to comply with the requirements of the FLSA.

13

### D. Recruitment Fees

Defendants agree that charging its H-2B workers recruitment fees is illegal, and point out that even the court in *Arriaga* did not require the reimbursement of recruitment fees. Defs. Resp. at 11.[8] Defendants are correct that the *Arriaga* court did not conclude that the plaintiffs in that case were entitled to reimbursement of recruitment fees, but its conclusion was based on a specific finding of fact, namely, the absence of "facts to support the creation of apparent authority" vis-à-vis the recruiters sufficient to hold the employer liable for the recruitment fees paid. *Arriaga,* 305 F.3d at 1245-46. Here, however, as demonstrated by plaintiffs in their memorandum in support of their motion for partial summary judgment, the opposite is true, and defendants have not denied it. *See* Plaintiffs' Brief in Support of Their Motion for Summary Judgment (Dkt. No. 86), at 18-21.

Plaintiffs have set forth uncontested facts that show that: (1) defendant Downs asked a long-time GLK employee, Rafael Jimenez Arroyo, to be the primary contact for GLK in recruiting H-2B workers; (2) Jimenez Arroyo traveled to Mexico every year and recruited H-2B workers in and around Santiago Capitiro; (3) Downs authorized Jimenez Arroyo to recruit the workers from Mexico for hiring by GLK; and (4) in 2010 and 2011, Jimenez Arroyo appointed Elias Vera Ramirez to help him with recruitment. Defs. Resp. to PSUF ¶¶28-33. Further, defendants do not specifically deny that Jimenez Arroyo, GLK's agent, required plaintiffs to pay between $1,000 and $1,200 to be considered for employment at GLK, that Jimenez Arroyo and

---

[8] Defendants also generally maintain that the "statutory and regulatory silence as to reimbursement of pre-employment expenses demonstrates a legislative intent not to require reimbursement of such expenses for H-2B workers." Defs. Resp. at 11. That argument has no merit. The FLSA is a statute of broad remedial purpose, *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947), and Congress could not have accounted for each and every type of expense for which an employer is responsible in order to meet its minimum wage obligations. It does not matter that the FLSA is silent when it comes to reimbursement of certain expenses incurred by H-2B workers, because the *analysis* under the FLSA as to whom those expenses primarily benefit or convenience remains the same no matter the circumstances.

14

Vera Ramirez told plaintiffs that the recruitment fee was a requirement for employment with GLK, and that workers had to pay a recruitment fee in exchange for employment with defendants. Defs. Resp. to PSUF ¶¶ 49-51. These uncontested facts demonstrate Jimenez Arroyo's and Vera Ramirez's apparent authority to act on defendants' behalf, so that defendants may be held liable for their recruiters' actions. Moreover, these facts indisputably demonstrate that defendants structured their recruiting of workers in a way that H-2B employees had no choice but to pay a recruitment fee for an opportunity to work for GLK. On these two bases, this case is easily differentiated from *Arriaga*. *See Salazar-Martinez v. Fowler Bros.*, 781 F. Supp. 2d 183, 195 (W.D.N.Y. 2011) ("An employer's use of a recruiter to find workers to fill positions in the United States, for which it has been unable to fill with workers within the United States, and the employer's use of recruiters to ensure that the visa application process is completed properly for such workers, demonstrates that the employer is the primary beneficiary of the recruiter's efforts, because the employer created the need for the employee to utilize the recruiter."); *Rivera v. Brickman Grp., Ltd.*, No. CIV. 05-1518, 2008 WL 81570, at *13-14 (E.D. Pa. Jan. 7, 2008) (holding that if workers had to go through a representative in order to be employed, then the costs associated with that process are incurred primarily for the employer's benefit).

Because GLK employees with apparent authority acted on behalf of defendants to recruit the plaintiffs in this case and charged them illegal recruitment fees for the opportunity to work at GLK, those fees are reimbursable to the plaintiffs under the FLSA to the extent they reduced their first week's wages below the federal minimum.

15

**III.     Defendant Downs Was a Joint Employer.**

Plaintiffs have shown that Ryan Downs was an employer for purposes of the FLSA, and defendants neither materially dispute plaintiffs' uncontested facts nor do they cite any relevant authority to the contrary. Instead, inappositely, defendants rely on a single case that concerns whether an employee, with no ownership interest in a company, could be considered an employer under the FLSA. *See Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (concluding that employee manager was not an employer for the purposes of FLSA because he did not have sufficient supervisory authority over plaintiff). In fact, *Riordan* illustrates the expansiveness of the FLSA definition of employer, which can include a mere employee in certain circumstances. *See Driver v. AppleIllinois, LLC*, 2012 WL 4175010, at *5 (N.D. Ill. 2012) (citing *Riordan* for the proposition that the FLSA definition of employer is so expansive even an employee with no ownership interest can be held personally liable).

In this case, it is undisputed that Downs was not merely an employee but president and owner of GLK and involved in the company's daily operations, including determination of the terms and conditions of plaintiffs' employment. *See* Defs. Resp. to PSUF ¶¶ 10-14, 16, 23, 27, 31, 32 and 46. Owners and corporate officers with some operational control of a company are regularly held individually liable as employers under FLSA. *Donovan v. Agnew,* 712 F.2d 1509, 1514 (1st Cir. 1983) (corporate officers with significant ownership interest and operational control of significant aspects of day-to-day functions were employers); *see, e.g., Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008) (personal liability of corporate officer where there was some involvement in day-to-day operation or direct responsibility for supervision of employee); *Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 139 (2d Cir.1999); *Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962, 965–66 (6th Cir. 1991).

16

Moreover, to have operational control does not mean that an employer was in "control[ ] [of] every aspect of the employees' conduct" but rather "control over the alleged violation of the statute." *Driver v. AppleIllinois, LLC*, 2012 WL 4175010, at *5.

Defendants do not materially dispute any of plaintiffs' undisputed facts establishing that Downs was an employer for purposes of the FLSA. They admit, for example, that Downs initialed and signed documents from LaborQuest in 2010, on behalf of GLK, acknowledging GLK's legal obligation to reimburse the H-2B workers for incoming expenses and confirming that GLK would do so. *See* Defs. Resp. to PSUF ¶¶ 12, 46 and 47. These admissions alone justify a finding that Downs was an employer under the FLSA as he clearly had "control over the alleged violation of the statute." *See Driver* at *5. Yet, this evidence does not stand on its own; abundant evidence in the record reflects Downs' intimate and consistent involvement in the day to day operations of GLK and the H-2B workers' employment: Downs was involved with recruitment of the H-2B workers (Defs. Resp. to PSUF ¶ 11); Downs selected Jimenez as GLK's recruiter of H-2B workers and counseled him on the terms that GLK would offer to the workers (Defs. Resp. to PSUF ¶¶ 11, 27, 32); Downs accompanied Jimenez on many of his recruitment trips (Defs. Resp. to PSUF ¶ 31); Downs was involved in setting H-2B workers' overtime hours (Defs. Resp. to PSUF ¶ 15); Downs objected to wage increases in the H-2B program (Response to PSUF ¶ 13); and Downs made the determination to terminate plaintiffs prior to the end of their contract (Defs. Resp. to PSUF ¶ 16). For all these reasons, Defendant Downs was clearly—and indisputably—an employer under the FLSA.

## IV. Presumptive Double Damages Are Appropriate.

Defendants simply have no basis upon which they can claim that GLK's violations of the FLSA were in good faith. It is undisputed that, in 2010, GLK was informed in writing by

LaborQuest, the labor recruiting company GLK had hired to provide assistance with the legal aspects of the H-2B employment process, that it was legally obligated to pay for incoming expenses including a daily per diem and transportation. *See* Defs. Resp. to PSUF ¶¶ 12, 47. GLK agreed that it would provide these reimbursements and then simply did not do it. *See* Defs. Resp. to PSUF ¶ 48. It is also undisputed that during the relevant period, 2010 and 2011, the DOL's interpretation of the FLSA requiring the reimbursements at issue here was clear and both publically and readily available. *See* DOL Bulletin 2009-2 (Ex. A). Indeed, as mentioned above, the DOL's interpretation regarding, at a minimum, inbound transportation costs for foreign workers under the FLSA has been exactly the same for decades. GLK simply chose to ignore its requirements under the FLSA, and, accordingly, it cannot demonstrate that its violations of the FLSA were in good faith. Accordingly, an award of presumptive double damages is appropriate and proper under the circumstances.

## CONCLUSION

For all these reasons, plaintiffs' motion for partial summary judgment should be granted in its entirety and defendants' motion for partial summary judgment should be denied.

Dated: November 7, 2014

Respectfully submitted,

/s/ Claudia Flores
One of Plaintiffs' Attorneys

Matthew J. Piers
José J. Behar
Joshua Karsh
Claudia Flores
Jenna Miara
Attorneys for Plaintiffs
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000

Ali Beydoun
Attorney for Plaintiffs
Farmworker Justice
1126 16th Street, N.W., Suite 270
Washington, D.C. 20036
(202) 293-5420 ext. 308
E-mail: abeydoun@farmworkerjustice.org

Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
       jbehar@hsplegal.com
       jkarsh@hsplegal.com
       jmiara@hsplegal.com
       cflores@hsplegal.com

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document will be served on counsel listed below by

CM/ECF on November 7, 2014.


Michael Aldana, Esq.
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202
Michael.Aldana@quarles.com


                                                          s/ Claudia Flores
                                                          One of Plaintiffs' Attorneys