IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALEJANDRO JURADO JIMENEZ, et al.,

    Plaintiffs,

v.                                  Case No. 12-cv-209

                                        JURY DEMAND

GLK FOODS, LLC and RYAN A. DOWNS,

    Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

## ARGUMENT

**I.    Plaintiffs Are Not Entitled To Relief Under the FLSA.**

Plaintiffs' response brief begins with the odd argument that the Defendants' brief fails to address their FLSA claims and instead focuses on the argument that the H-2B regulations do not require reimbursement of the claimed expenses. Defendants' brief actually begins with a lengthy and detailed analysis of how the Plaintiffs' FLSA claims fail.

The cases Plaintiffs rely upon are not controlling in the 7th circuit and are wrongly decided and distinguishable. None properly analyzes the issue of whether the Plaintiffs' transportation, visa, and living expenses were *primarily* for the benefit or convenience of the employer, the proper analysis under the FLSA. For the reasons set forth in Defendants' principal brief, the analysis in *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1244-46 (11th Cir. 2002) is fatally flawed and the Fifth Circuit's decision in *Castellanos-Contreras v. Decatur*

*Hotel, LLC.*, 622 F.3d 393, 400-01 (5th Cir. 2010) is the authoritative decision on this issue and should be followed here.

*Arriaga* and its progeny both concern workers hired through the H-2A visa program, which requires that employers advance or provide transportation where customarily provided non-H-2A workers or extended to H-2A workers. Nothing in the FLSA imposes the costs at issue upon the employer.

Specific statutory provisions of the IRCA and numerous other congressional enactments demonstrate Congress' intent and understanding that relocation costs are not costs required to be borne by the employer in order to comply with the FLSA. The regulatory provisions of IRCA expressly address the issue of guest worker transportation costs under both sections H-2A and sections H-1B and H-2B. The FLSA does not specifically address the issue of guest worker transportation costs. Interpretations promulgated under the FLSA should not now be construed in a way that conflicts with express statutory and regulatory provisions of the IRCA as set forth in Defendants' Principal Brief. It is axiomatic that statutes should be interpreted in a way that allows them to be reasonably harmonized. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intl, Inc.*, 534 U.S. 124, 143-44, 122 S.Ct. 593 (2002). In this case, proper interpretation of FLSA as not requiring payment of relocation costs poses no conflict, and in fact, allows synergy with IRCA and other laws.

Although their claims arise under the FLSA, the context of their status as H-2B workers cannot be ignored, and indeed, Plaintiffs' arguments rely heavily on their allegedly unique status as H-2B workers. Nonetheless, when convenient for them, Plaintiffs ask this Court to consider their claims in a vacuum, without considering Congress' intent as demonstrated in the statutory

scope of 29 U.S.C. §203(m) and without considering that the IRCA specifically addresses the issue of guest worker transportation and does not provide for reimbursement of such costs in the H-2B context except in one narrow circumstance not at issue here (for certain return travel expenses).

Plaintiffs also ask this Court to ignore the express language of 29 C.F.R. §531.3(d)(1), and essentially read the term "primarily" out of the regulation. They further demand that this Court ignore the language "an incident of and necessary *to the employment as in the case of maintenance of way workers of the railroad*," and essentially graft a living expenses test onto the rule which deviates significantly from the "primarily for the employer's benefit" test the regulations prescribe. Under Plaintiffs' analysis, GLK would owe reimbursement for transportation, visa and recruitment expenses to those who absconded from their employment in the first workweek and continued to live in this country illegally.

The regulations and interpretations promulgated under §203(m) are intended to clarify the items an employer can and cannot count in satisfaction of its wage payment requirement by providing that credit cannot be taken for costs that are *primarily* for the benefit of the employer. 29 C.F.R. §531.3(d)(1). The list of items for which an employer cannot claim credit against its wage payment obligation are all business expenses which are direct costs of carrying out the employer's day-to-day business: "tools of the trade…incidental to carrying on the employer's business;" "the cost of any construction by and for the employer;" and "the cost of uniforms …where the nature of the business requires the employee to wear a uniform." 29 C.F.R. §531.3(d)(2). These regulations reflect that an employer may not claim credit under §203(m) against an employee's wages for or require an employee to bear the cost of tools and uniforms "used in or required for performance of the employer's particular work." 29 C.F.R. §531.35.

3

QB\31549919.1

Case 1:12-cv-00209-WCG   Filed 12/02/14   Page 3 of 10   Document 103

**A.     Plaintiffs' Reliance on the DOL's 2009 Field Assistance Bulletin Is Misplaced**

Plaintiffs' essentially ignore Defendants' arguments regarding the 2009 DOL-issued Field Assistance Bulletin. That Bulletin asserted that pre-employment expenses are primarily for the benefit of the H-2B employer. *See Travel and Visa Expenses of H-2B Workers Under the FLSA*, U.S. DOL Wage and Hour Division, Field Assistance Bulletin No. 2009-2 (Aug. 21, 2009). The bulletin, however, was published less than a year after the DOL had issued a Final Rule concluding that pre-employment expenses were *not* primarily for the benefit of the H-2B employer. *See Labor Certification Process and Enforcement for H-2B Workers and other Technical Changes*, 73 Fed. Reg. 78,020 (Dec. 19, 2008) (withdrawn by 74 Fed. Reg. 13,261 (Mar. 26, 2009). As demonstrated by Defendants in their Principal Brief, an agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view.[1]

The DOL's subsequent attempt to force an interpretation consistent with *Arriaga* into the H-2B regulations was enjoined in federal court, with the Eleventh Circuit Court of Appeals upholding a district court's injunction and holding that the rule was beyond DOL's legal authority, on the basis that Congress had not extended rule making authority to the DOL for H-2B regulations. *Bayou Lawn and Landscape Services, et al. v. Solis et al.*, 713 F.3d at 1080, 1084-85.

Plaintiffs' response brief fails to demonstrate that in these circumstances, the DOL's shifting guidance (and subsequent failed attempt to achieve its goals through an improper

---

[1] Contrary to Plaintiffs' assertions, the Fifth Circuit's decision in *Castellanos-Contreras v. Decatur Hotel, LLC.*, 622 F.3d 393 (5th Cir. 2010) did consider the DOL's 2009 bulletin and specifically rejected its reasoning and refused to defer to it. *Id.* at 401-02 & fn. 9. Indeed, the court there signaled that the FLSA regulations actually foreclosed the DOL's interpretation *du jour*, which "stretches" the regulations too far. *Id.* at 400-01.

promulgation of new H-2B regulations) is entitled to any deference and this Court should not defer to or grant any authority to the DOL's 2009 bulletin.

**B.      Transportation Costs**

The interpretations promulgated under §203(m) state that transportation charges that are "an incident of and necessary to the employment (as in the case of maintenance of way workers of the railroad) are primarily for the benefit of the employer." In other words, transportation engaged in while working.  Plaintiffs would have the Court disregard the language "an incident of and necessary *to the employment as in the case of maintenance of way employees of the railroad*" and substitute the language "an incident of the employer's decision to recruit outside of the country." This is a complete re-write of the rule and circumvents the obvious intention that the transportation charges be an incident of and necessary to the  performance of the principal activity of the employment itself as it is in the case of maintenance of way employees of a railroad who travel along the rail on a car provided by their employer which carries their tools, as they perform maintenance work on the railway.  This interpretation is consistent with the interpretation of the same language under the Portal-to-Portal Act.  Travel that precedes employment and is not an integral part of the performance of the activity of the job, is nothing more than an extended commute, for the benefit of the employee.  Plaintiffs construe the interpretations so broadly as to articulate a new test that anything that is not an expense that a person would incur in the ordinary course of living regardless of his employment, is primarily for the benefit of the employer. This approach is not supported by the FLSA and is clear error.

The question presented is not whether Plaintiffs' expenditures were ordinary living expenses or whether they arose from GLK's decision to recruit outside of the U.S.  Indeed, these costs also arose from Plaintiffs' decision to seek to legally enter, live and work in the U.S. The

question is whether the expenses were an incident of and necessary to the employment itself as in the case of maintenance of way workers of the railroad. The focus is on the activity of the employment itself. Workers' travel was not an incident of and necessary to the principal activity of their employment as hotel workers; therefore, it was **not** *primarily* for the benefit of the employer within the express meaning of the regulations.

### C. Visa, Passport and Border Crossing Fees

Similarly, Visa, Passport and Border Crossing Fees and expenses are not like tools of the trade or uniforms which will be "used in or are specifically required for the performance of the employer's particular work." *See* 29 C.F.R. §531.35. The cost of obtaining a visa is peculiar to the individual employee. Visa costs are more akin to qualifications for employment, such as certain skills, training, degrees in education, and commercial licenses. Employees routinely pay for training, education and licenses without the requirement of reimbursement from their employers under the FLSA. Visa costs are not incidental to carrying on the employer's business or integrally connected with the nature of the business. The Plaintiffs' personal visas enabled them to legally enter the U.S. and to live and work here. Their personal visa costs were not incurred on GLK's behalf or solely for its benefit so as to be reimbursable. They were incurred prior to their hire in order for them to become legally qualified to present themselves for employment in the U.S. Accordingly, such costs are not primarily for the benefit of GLK.

### D. Lodging and Subsistence Expenses

Plaintiffs' attempts to shift their pre-employment hotel and meal expenses should be rejected. Plaintiffs argue that *De Luna-Guerrero v. North Carolina Growers' Ass'n., Inc.*, 338 F.Supp.2d 649 (E.D. N.C. 2004) and *Morales-Arcadio v. Shannon Produce Farms, Inc.*, 2007 WL 2106188 at *16-17 (S.D. Ga. 2007) were wrongly decided, but reiterate nothing further than

6

that the Plaintiffs' lodging and subsistence expenses were "not normal" expenses.  But as demonstrated above, the FLSA does not contain a "normal" or "ordinary" expense requirement; instead, the question is whether such expenses are primarily for the benefit of the employer.  And as demonstrated above and in Defendants' principal brief, any lodging or subsistence expenses incurred by the Plaintiffs were not the type contemplated by the FLSA (or IRCA or the H-2B regulations) as primarily for the benefit of the employer.

**E.      Recruitment Costs**

The FLSA has not been construed to require employers to pay recruitment costs on the employee's behalf as a cost that primarily benefitted the employer.  Likewise, the courts had not imposed the costs on employers of foreign workers. *See, Reich v. Japan Enterprises Corp.*, 91 F.3d 154, 1996 WL 387667 (9th Cir. 1996).  Even the Eleventh Circuit in *Arriaga* held the employer not liable for recruitment fees.  *Id.*, 305 F.3d at 1246.

Here, Plaintiffs produced no evidence that to the extent any recruitment fees were actually paid by any worker, that it was primarily for the benefit of GLK.   Plaintiffs produced no evidence that either GLK, or its contractors, Florida East Coast Travel or LaborQuest, authorized any individual to require such payment, and in fact, the evidence that GLK and its contractors specifically prohibited such fees is undisputed.  It is also undisputed that GLK did not receive any alleged recruiting fees.  Plaintiffs' arguments that the manner in which GLK structured its recruiting program in a way that H-2B workers had "no choice" but to pay the recruiting fees is nothing but unsupported argument and speculation.

Similarly, Plaintiffs' arguments that the alleged recipients of the recruiting fees were acting under "apparent authority," is unsupported by any fact and the cases cited at p. 15 of their response/reply brief are inapposite.  If any worker paid any recruiting fees to an individual

7

during the process of coming to GLK, there is no evidence that those workers believed GLK had authorized the collection of such fees on its behalf.

### F. Defendant Downs Is Not Individually Liable

As demonstrated earlier, while Ryan A. Downs was an officer and an owner of GLK during the period in question, Plaintiffs have failed to point to any evidence that he was directly supervising the Plaintiffs or directly responsible for the management of payroll at that time. Their Statement of Undisputed Facts and its supporting evidence does not demonstrate that he was overseeing the H-2B program details. *See,* Defendants' Responses to Plaintiffs' Statement of Undisputed Facts, 10-12, 15, and 46. Plaintiffs have produced no evidence showing that he made any decisions as to whether to reimburse Plaintiffs for any in-bound expenses in 2010 and 2011.

In their reply brief, Plaintiffs still point only to the fact that he was the CEO and an owner of GLK during the relevant time period. The other evidence pointed to by Plaintiffs does not demonstrate the requisite operational control required by the FLSA to impose individual liability. Whether Downs previously had traveled to Mexico to participate in recruiting (which occurred *before* the relevant time frame for these claims), that he previously asked Rafael Jimenez to coordinate recruiting in Mexico (again *before* the relevant time frame) or that he objected to the DOL's wage increase in 2011, does not demonstrate that he maintained operational control of the manner in which GLK administered its payroll and wage and hour compliance. There is no evidence that Ryan A. Downs made any decisions as to whether to reimburse Plaintiffs for the disputed expenses and thus was not "responsible in whole or part for the alleged violation." *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987) (emphasis supplied). Accordingly,

8
QB\31549919.1
Case 1:12-cv-00209-WCG   Filed 12/02/14   Page 8 of 10   Document 103

during the process of coming to GLK, there is no evidence that those workers believed GLK had authorized the collection of such fees on its behalf.

### F. Defendant Downs Is Not Individually Liable

As demonstrated earlier, while Ryan A. Downs was an officer and an owner of GLK during the period in question, Plaintiffs have failed to point to any evidence that he was directly supervising the Plaintiffs or directly responsible for the management of payroll at that time. Their Statement of Undisputed Facts and its supporting evidence does not demonstrate that he was overseeing the H-2B program details. *See,* Defendants' Responses to Plaintiffs' Statement of Undisputed Facts, 10-12, 15, and 46. Plaintiffs have produced no evidence showing that he made any decisions as to whether to reimburse Plaintiffs for any in-bound expenses in 2010 and 2011.

In their reply brief, Plaintiffs still point only to the fact that he was the CEO and an owner of GLK during the relevant time period. The other evidence pointed to by Plaintiffs does not demonstrate the requisite operational control required by the FLSA to impose individual liability. Whether Downs previously had traveled to Mexico to participate in recruiting (which occurred *before* the relevant time frame for these claims), that he previously asked Rafael Jimenez to coordinate recruiting in Mexico (again *before* the relevant time frame) or that he objected to the DOL's wage increase in 2011, does not demonstrate that he maintained operational control of the manner in which GLK administered its payroll and wage and hour compliance. There is no evidence that Ryan A. Downs made any decisions as to whether to reimburse Plaintiffs for the disputed expenses and thus was not "responsible in whole or part for the alleged violation." *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987) (emphasis supplied). Accordingly,

Ryan A. Downs should not be held personally or individually responsible for any FLSA violations.

**G.     Double Damages Are Inappropriate Here**

Plaintiffs are entitled to no damages under the FLSA, for all of the reasons described above and in Defendants' Principal Brief. Plaintiffs reiterate their conclusory statements. However, it is undisputed that the courts in other circuits have split on this issue, the DOL's guidance has been ambiguous and shifting, and there is no authority on the issue from the Seventh Circuit. Accordingly, there is no basis to impose double damages in this situation.

## **CONCLUSION**

For all of the above stated reasons and for the reasons stated in Defendants' principal brief, its motion for partial summary judgment on Count I should be granted and that count dismissed.

Dated: December 2, 2014.

Michael Aldana
State Bar No. 1020233
Sean M. Scullen
State Bar No. 1034221

s/Michael Aldana
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2350
Milwaukee, WI 53202-4426
(414) 277-5000
Attorneys for Defendants

Direct inquires to:

Michael Aldana
(414) 277-5151
michael.aldana@quarles.com

10

QB\31549919.1
Case 1:12-cv-00209-WCG   Filed 12/02/14   Page 10 of 10   Document 103