IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| ALEJANDRO JURADO JIMENEZ et al., | ) |
| Plaintiffs, | ) Civil Action No. 12-C-0209 |
| v. | ) Judge Griesbach |
| GLK FOODS, LLC and RYAN A. DOWNS, | ) |
| Defendants. | ) |

**CLASS MEMBERS' REPLY IN SUPPORT OF THEIR MOTION
FOR PARTIAL SUMMARY JUDGMENT FOR VIOLATIONS OF THE AWPA AND
WMLA —ARISING FROM DEFENDANTS' FAILURES TO:
(1) PROVIDE WRITTEN DISCLOSURES AT THE TIME OF RECRUITMENT,
(2) PROVIDE WRITTEN WORK AGREEMENTS,
(3) MAKE AND KEEP RECORDS, AND
(4) REFRAIN FROM TAKING UNAUTHORIZED WAGE DEDUCTIONS**

As explained in class members' opening brief on this motion ("Opening Brief," ECF No. 114), the undisputed facts in this case establish multiple violations by the Defendants of both the AWPA and Wisconsin's Migrant Labor Act (the WMLA), resulting from Defendants' failure to:

(a) Provide workers with required written disclosures, in Spanish, at the time of recruitment, in violation of both 29 U.S.C. § 1821(a & g) and Wis. Stat. § 103.915;

(b) Provide workers with written work agreements, in violation of 29 U.S.C. § 1822(c), 29 C.F.R. § 500.72, and Wis. Stat. § 103.915(1)(b);

(c) Refrain from taking deductions from wages without written authorizations, in violation of Wis. Stat. § 103.93(3); and,

(d) Make and keep records of workers' permanent addresses, in violation of 29 C.F.R. § 500.80(a).

Defendants have filed only 1½ pages responding to these claims. That 1½ page response is found at pages 23-25 of ECF No. 125. This reply addresses Defendants' cursory response.

1

**ARGUMENT**

I.  **The undisputed facts and the law compel entry of judgment against Defendants for their failure to provide both required recruitment disclosures and the mandatory written work agreement.**

Defendants do not dispute that the law requires that every migrant agricultural worker must be provided with both: (a) detailed written recruitment disclosures and (b) a written work agreement. Defendants also concede that they never provided, and class members never received, either document. As their sole attempt to defend these statutory violations, Defendants argue, perfunctorily, in four conclusory sentences, that judgment nevertheless should not be entered against them because class members allegedly have failed to show "damage"; because all violations should be deemed merely "technical" and were not "intentional"; or because GLK did not "benefit" from them." Ds' Brief at 24 (ECF No. 125). Those arguments are meritless.

First, as we explained in the Opening Brief, a failure to provide disclosures required by the AWPA gives rise to statutory damages—for which no showing of actual injury or harm is required. 29 U.S.C. § 1854 (c)(1); *Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir. 1981) (construing the AWPA's predecessor statute, the FLCRA); *Martinez v. Shinn*, 992 F.2d 997, 999 (9th Cir. 1993). *See also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (noting that the difficulty or impossibility of showing actual injury "is why" many statutes provide for statutory damages). The plain language of the AWPA expressly permits either actual damages *or* statutory damages, 29 U.S.C. § 1854(c)(1), making it clear that actual damages are not a prerequisite to recovery of statutory damages. The Defendants' response is silent on this point.

Second, as the Opening Brief also explains, Defendants' failures to provide written disclosures and written work agreements were not mere "technical" violations. Congress's

avowed purpose in enacting the AWPA was to eliminate one of the primary risks otherwise faced by migrant workers: traveling long distances—and often relinquishing other jobs, leaving their homes and families, and incurring debt to make the trip—without guaranteed, written terms and conditions of employment. Opening Brief at 25-26. Defendants' attempt to mischaracterize their violations of these disclosure requirements as "technical" is deeply cynical: if the required documents had been provided to class members in this case, those documents would have protected class members by specifying the contractually-agreed upon period of employment. It is only Defendants' illegal failure to provide these documents that enables Defendants to construct an argument that employment was at will. The AWPA and the WMLA each require documentation to assure that a key term of employment—how long the job will last—is memorialized. That is not a mere technicality. Defendants should not be permitted to flout statutory documentation requirements and then make the disingenuous argument that because they evaded documentation requirements, class members' employment was unprotected and terminable at will.

Third, the Defendants contend that their violations were unintentional. They adduce no facts in support of that contention and, indeed, the record establishes the contrary. As the Opening Brief explains, Defendants' violations were far too regular to be characterized as "isolated" or as "mistakes." Opening Brief at 18-20. Indeed, Defendants have stipulated to their failure to provide required disclosures for a period spanning at least 2006, 2007, 2008, 2010 and 2011. PSUF ¶¶ 163-67. They have also admitted their receipt of express, undisputed warnings from regulators that migrant workers *must be give written work agreements*. PSUF ¶¶ 136-139, 141. And they have provided false sworn interrogatory responses in this case denying any such previous fines or investigations. PSUF ¶ 162. Defendants' response is silent on these points.

3
Case 1:12-cv-00209-WCG    Filed 06/05/15    Page 3 of 8    Document 128

AWPA's intent standard is not demanding. Opening Brief at 18-20. And the undisputed facts here amply establish that Defendants' violations were intentional within the meaning of that term under the AWPA.

## II. The undisputed facts and the law compel entry of judgment against Defendants for their failure to make and keep records of workers' permanent addresses.

Defendants concede that the law required them to keep a record of every worker's permanent address. They also concede that they failed to do that. As their sole defenses to this violation, Defendants argue that there has been no showing of harm—and, further, that a judgment against Defendant Ryan Downs would be improper because he was allegedly "not involved in any of these record-keeping requirements." Ds' Brief at 25.[1] Neither defense holds water.

The "no harm" defense ignores, once again, that proof of actual injury is not required. The plain language of the AWPA expressly permits either actual damages *or* statutory damages, 29 U.S.C. § 1854(c)(1), making it clear that actual damages are not a prerequisite to recovery of statutory damages.

Defendant Downs's "not me" defense is likewise insufficient. It ignores both the law and the facts. As explained in the Opening Brief, because Downs qualifies as a statutory "employer" within the meaning of the AWPA, he is liable to the same extent as the corporation. Opening Brief at 16-18 & n.9; *Montalvo v. Larchmont Farms, Inc.,* 2009 WL 4573279, at *4-5 (D.N.J. 2009). Further, the undisputed facts show that, in 2002, the U.S. Department of Labor cited GLK

---

[1] As explained in the Opening Brief, making and keeping records of workers' permanent addresses serves important purposes and is no mere "technical" requirement. IRS wage and tax statements cannot be completed without a migrant worker's permanent address; the DOL's ability to conduct enforcement investigations and, in the wake of those investigations, to deliver back wages, is impeded when workers' addresses are not available; the feasibility of notice of private collective or class actions is similarly impeded; and under the AWPA, "migrant" workers are distinguished from "seasonal" workers largely on the basis of their permanent address. Opening Brief at 14.

for this same address-records violations *and met with Defendant Downs personally* to go over the issue and assure future compliance—although to no avail, as this case proves. PSUF ¶¶ 135-36. Recidivism after earlier punished violations and warnings easily satisfies AWPA's relaxed standard for an ""intentional" violation. Opening Brief at 18. Indeed, it would satisfy a more demanding standard. Defendants' response stands silent on these points.

**III.    The undisputed facts and the law compel entry of judgment against Defendants for the unauthorized deductions they took from class members' paychecks in 2011.**

As pointed out in the Opening Brief, under Wisconsin law, deductions from wages must be authorized in writing. Opening Brief at 22-23; Wis. Stat. 103.93(3), This kind of "authorized only if in writing" requirement exists to prevent disputes about whether consent or authorization are knowing and voluntary and to forestall costly inquiries into the parties' subjective states of mind. It is, by its nature, a bright-line rule. When a legislature requires authorizations in writing, the legislative intent is clear—an unambiguous clear, express, written authorization is valid; all others are invalid.

From 2006 through 2010, workers at GLK signed a form specifically and expressly authorizing wage deductions, titled "Authorized Deductions." That form stated, in English and Spanish, "I authorize Great Lakes Kraut Co. to deduct from my weekly payroll, room and board at a rate of $ [the applicable rate] per week." PSUF ¶ 180. Those forms were sufficient to authorize housing deductions.

By contrast, in 2011, no comparable form was used. Workers were neither presented with, nor did they sign, any writing using the word "deduct" or deduction" or "authorize" or "authorization." PSUF ¶ 187. These facts are undisputed. And as a matter of law they entitle class members to judgment in their favor on their claim that wage deductions for housing in 2011 were illegal because they were taken without any clear written authorization.

5

In an effort to defend this violation of the law, Defendants offer two arguments. First, they argue that even if written authorizations satisfying Wis. Stat. § 103.93(3) were never obtained, class members were not harmed because class members received a "benefit …—the room and boarding during their time in Wisconsin—[which] offsets any alleged damages." Ds' Brief at 24. This defense lacks any legal basis. It appears nowhere in the statute. The relevant statutory section states "[n]o employer or migrant labor contractor may deduct or withhold from the wages of any migrant worker any amount on account of debts accrued or anticipated unless the worker has previously authorized such deduction or withholding in writing." Wis. Stat. § 103.93(3). And the penalty for violating that section is "for each such violation …, not less than $10 nor more than $100," with "each day of continued violation" constituting a separate offense. Wis. Stat. § 103.97(1)(a). This is a strict liability offense. The statute defines a statutory harm—unauthorized deductions—and it creates a statutory damages remedy for violations that neither requires actual injury nor mentions nor allows reduction of the statutory penalty by the amount of any claimed offsetting "benefit."[2]

Second, Defendants also argue that "at most, an issue of fact exists as to whether the workers[ ] provided knowing authorization." Ds' Brief at 24. But the issue here is *not* factual. It is legal. The reason Wis. Stat. § 103.93(3) requires written authorizations is to preclude factual disputes. The only document class members signed in 2011 (see Group Exhibit 96, filed with Plaintiffs' PSUF) speaks for itself, and no extrinsic evidence can or needs to be admitted to determine its legal effect. There was no document in 2011 mentioning "deduct" or "deduction"

---

[2] Indeed, allowing such an offset would render the statutory mandate meaningless—because in except in situations where a deduction was made without either room or board being provided, the statute would afford no protection or relief. And in circumstances where a deduction was made but no room and board was provided, the statute would not be needed: the prohibitions against fraud, or at least wage theft, would suffice.

or "authorize" or "authorization." As a matter of law, there was therefore no written authorization for deductions. This issue can and should be decided as a matter of law.

## CONCLUSION

For all the reasons stated above, Class Members request the Court grant their motion for partial summary judgment on claims that Defendants failed to provide proper disclosures and work agreements, keep proper records and take legal deductions from Class Members pay and deny Defendants' motion on the same counts.

Dated: June 5, 2015

                                                    s/ Joshua Karsh
                                                   One of Plaintiffs' Attorneys

Matthew J. Piers  
Joshua Karsh  
José J. Behar  
Attorneys for Plaintiffs  
Hughes Socol Piers Resnick & Dym, Ltd.  
70 W. Madison Street, Suite 4000  
Chicago, IL 60602  
Telephone: (312) 580-0100  
Fax: (312) 580-1994  
E-mail:  mpiers@hsplegal.com  
        jkarsh@hsplegal.com  
        jbehar@hsplegal.com  

Ali Beydoun  
Attorney for Plaintiffs  
Farmworker Justice  
1126 16th Street, N.W., Suite 270  
Washington, D.C. 20036  
(202) 293-5420 ext. 308  
E-mail: abeydoun@farmworkerjustice.org

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on counsel listed below by CM/ECF on June 5, 2015.


Michael Aldana, Esq.
Quarles & Brady LLP
411 E. Wisconsin Ave., Suite 2040
Milwaukee, WI 53202
Michael.aldana@quarles.com


                                                      s/ Joshua Karsh
                                                     One of Plaintiffs' Attorneys