# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

| | |
|---|---|
| ALEJANDRO JURADO JIMENEZ et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 12-C-0209 |
| v. | ) |
| | ) Judge Griesbach |
| GLK FOODS, LLC and RYAN A. DOWNS, | ) |
| | ) |
| Defendants. | ) |

## CLASS MEMBERS' REPLY IN SUPPORT OF
## THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON
## COUNTS III, VI, VII AND VIII

### Introduction

The parties' pending cross motions for summary judgment on Counts III, VI, VII, and VIII present two questions, above all others, which can be summarized as follows. First, were class members employed by GLK for a definite term, requiring employment and payment of wages through the end of that term—or were they, instead, employed on at-will basis, subject to termination at any time, with or without cause? Second, does the Court's March 24, 2015 ruling—addressing reimbursement of "in country" expenses under the FLSA—resolve class members' similar claims for reimbursement under the AWPA?

As we discussed in the opening brief (ECF No. 116), the answer to the first question—whether class members were employed on a strictly at-will basis—is "No." Employment for a definite term is a required element of every employment relationship governed by the WMLA or the AWPA. Yet, as we explain in this reply, rather than addressing the requirements of the WMLA and the AWPA, Defendants try to change the subject—pretending that the issue and claims in this case can be resolved with reference to H-2B regulations instead (even as they

1

dispute the validity of those regulations). Ds' Brief at 6-9 (ECF No. 125). Defendants are wrong. The claims at issue on this motion do not arise under, and cannot be resolved by reference to, H-2B regulations. The claims at issue here are for violations of the WMLA and the AWPA.

Turning to the second principle question before the Court—whether expenses reimbursable under the FLSA are also reimbursable under the AWPA—the answer to that question is "Yes." As we explain in this reply, this Court's liability ruling on class members' FLSA claims, on March 24, 2015 (ECF No. 119), *ipso facto* leads to the conclusion that Defendants also violated the AWPA—because violations of the FLSA constitute violations of the AWPA. Defendants' response is notably silent on this point.

## **Argument**

I. **Judgment should be entered for class members on Counts III and VII—because both the AWPA (Count III) and the WMLA (Count VII) required GLK to employ class members for the full, certified period of employment.**

Class members' employment with GLK was protected by both the WMLA and the AWPA. Defendants do not dispute coverage under either statute. The dispute between the parties concerns is limited to whether the WMLA and/or the AWPA displace at employment at will.

As we discussed in the opening brief, both the WMLA and the AWPA require employers to hire covered workers for a definite term or period of employment, displacing employment at will. Opening Brief at 18-23 (ECF No. 116).

Under the WMLA, every migrant worker must be employed pursuant to a "written work agreement," which must include an explicitly specified "term of employment" and a "minimum work guarantee." Wis. Stat. § 103.915(1)(b); Wis. Stat. § 103.915(4)(a); Wis. Admin. Code

§ DWD 301.06(8).[1] The plain and obvious purpose and meaning of this "minimum work guarantee" is to create a mandatory guaranteed term of employment for covered workers, which is the absolute antithesis of employment at will.

Similarly, under the AWPA, employment is governed by a mandatory "working arrangement," 29 U.S.C. §§ 1822(c); 29 U.S.C. § 1832(c); 29 C.F.R. § 500.72, which:

- Functions as a "statutory contract." *De Leon-Granados v. Eller & Sons Trees, Inc.* ("Eller & Sons"), 581 F. Supp. 2d 1295, 1317 (N.D. Ga. 2008); and

- Must contain or incorporate a defined, contractually agreed upon *"period of employment,"* 29 U.S.C. § 1821(a), including specific dates for the beginning and end of employment; and

- Must incorporate federal and state employment laws and regulations in effect at the time of contracting—including, for workers employed in Wisconsin, *the minimum work guarantee* required by Wis. Admin Code § DWD 301.06(8).

Although these points are critical to the issues raised by the parties' cross motions, Defendants' brief contains neither any express discussion of nor any citations to these statutory and regulatory provisions. Nor do Defendants mention or address (let alone attempt to distinguish) *Eller & Sons*, which is a seminal case in this area. Instead, Defendants focus on tangential points, all of them wrong. We turn to those tangential points now.

---

[1] Wisconsin's guarantee of employment for a minimum term for migrant workers is set forth in Wis. Admin. Code § DWD 301.06(8). which provides that:

> *The minimum work guarantee* shall cover the period from the date the worker is notified by the employer to report for work, *which date shall be no later than 10 days from the approximate beginning date specified in the work agreement*, or the date the worker reports for work, whichever is later, and continuing until the date of the final termination of employment, *which date shall be no sooner than 7 days before the approximate ending date specified in the work agreement*, or earlier if the worker is terminated for cause or due to seriously adverse circumstances beyond the employer's control .... (Emphasis added).

The plain and obvious purpose and meaning of this "minimum work guarantee" is to create a mandatory, minimum, guaranteed term of employment for covered workers— which is the antithesis of employment at will.

### A. This case is not about whether H-2B certifications create a contract or whether H-2B regulations require employment for a definite term.

Defendants devote three pages to arguing that "H-2B petitions do not create a contract" and that neither H-2B certifications nor H-2B regulations guaranteed class members employment for a definite term. Ds' Brief at 7-10 (ECF No. 125). For that proposition Defendants cite *Garcia v. Frog Island Seafood, Inc.,* 644 F. Supp. 2d 696 (E.D.N.C. 2009). But both their argument and their citation to *Frog Island* are an attempt avoid the issue in this case. *Frog Island* addressed whether H-2B certifications, standing alone, create contracts for employment for a definite term (under North Carolina law). 644 F. Supp.2d at 719. By contrast, the claim in this case, neither addressed nor resolved in *Frog Island,* is that the WMLA and the AWPA require employment for a definite term, *not* that H-2B regulations require it—or that an H-2B labor certification application, standing alone, creates it.

Defendants' blindness to this issue is chronic. Wisconsin regulators have repeatedly advised Defendants that migrant agricultural workers are not at-will employees. PSUF ¶¶ 150-154. In both 2007 and 2008, the Wisconsin Department of Workforce Development (DWD) specifically advised Defendants that migrant agricultural workers employed in Wisconsin are protected by Wisconsin's minimum work guarantee requirement and cannot be dismissed at will. In both seasons, DWD found that GLK had violated the law by discharging even non-H-2B workers before the end of the minimum guarantee period required by Wisconsin law. And in both 2007 and 2008, the DWD ordered GLK to provide the same relief that class members seek in this case—payment of wages to all wrongfully discharged workers for the remainder of the contract period. PSUF ¶¶ 150-154.

4

### 1. Defendants did not become obligated to employ class members for a definite term by filing H-2B labor certification applications; the WMLA and the AWPA independently imposed that obligation.

Defendants next suggestion is that class members' claims in this case should stand or fall on the proposition that when an employer files an H-2B labor certification application, listing the "intended" dates of employment, the employer irrevocably commits to employ all H-2B visa workers it recruits for that entire period. That straw man argument is not a basis of any claim in this case.

Employment for a guaranteed period was a mandatory term of every class member's employment because of the requirements of Wisconsin law and the AWPA—not because of H-2B program requirements. Notwithstanding the time frames GLK specified in its H-2B labor certifications applications, GLK still could have contracted with class members to employ them for a shorter period—by specifically stating a shorter period of employment in the written work agreement required by Wis. Stat. § 103.915(1)(b) and in the written disclosures required by the AWPA. GLK's liability arises because GLK never did that.

But for its H-2B labor certification applications, GLK created no other writings defining the period of employment. PSUF ¶¶ 163-177. And that fact is dispositive here—because in the absence of any other writing substituting different dates, the dates specified in a labor certification application filed with the DOL become the contractual basis for employment. *See Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 349-50 (4th Cir. Cir 1991); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1325 (N.D. Ga. 2008). What was true in *Donaldson* and in *Eller & Sons* is likewise true in this case: because employment for a term is a *required* element of every AWPA (or WMLA) employment relationship and must be stated in

5

writing, absent evidence that an employer has defined the period of employment in another document, the terms and conditions listed in a labor certification application govern.

To be clear: GLK could have—but did not—contract for employment for a shorter period—by issuing disclosures, compliant with the WMLA and the AWPA, specifying a shorter, but definite, guarantee period. PSUF ¶¶ 163-177. GLK is therefore bound by the only disclosure of the period of employment it ever made—the disclosure in the H-2B petitions.

Multiple wrongs cannot make a right. But, laid bare, that is Defendants' theory here. Their argument to this Court is that:

- Although GLK's H-2B labor certification applications specify beginning and ending dates of employment, those dates don't count;

- Although the WMLA and the AWPA require written disclosures of the period of employment, including beginning and ending dates, violations of those requirements should be excused in this case (for reasons never explained); and

- The only repercussion for circumventing required disclosures of the period of employment should be a *reward*—class members' employment, which would have been guaranteed for a term, in those disclosures, if proper disclosures had been made, should be treated as at-will employment instead.

In short, Defendants are asking this Court to rule that, by violating the law, they bettered their position. No party should be heard to make that argument.

### B. The claims in this case do not rest on the proposition that *Reyes v. Remington Hybrid Steel* and *Colon v. Casco* eliminated at-will employment for H-2B workers.

On page 9 of their response (ECF No. 125), Defendants argue that neither *Reyes v. Remington Hybrid Seed Co., Inc.*, 495 F.3d 403 (7th Cir. 2007), nor *Colon v. Casco, Inc.*, 716 F. Supp. 688 (D. Mass. 1989), "addressed, let alone held, than an H-2B petition, by virtue of the certified period of employment contained in [it], create[s] a contract for a defined period of time." There is no dispute on this particular point, and our opening brief did not rely on those

cases for that proposition. Once again, Defendants have missed the critical point. While the H-2B application and regulations do not require a specific or stated period of employment, both Wisconsin law and the AWPA do. And given the requirement of a writing specifically establishing the duration of employment, under both Wisconsin law and the AWPA, when the only writing that meets that requirement is the H-2B labor certification application, then the period stated in that application governs.

The discussions we rely on in *Reyes* and *Colon* address the AWPA's requirement obliging employers to disclose the "period of employment." *Reyes* and *Colon* do not discuss and we have not relied on them to create any such requirement under the H-2B regulations. Rather, *Reyes* explains that AWPA's reference to a "period of employment" means "the beginning and ending dates of work." 495 F.3d at 406 n.1.[2] *Colon*, in turn, explains that the AWPA makes this period of employment a "required term" of every AWPA working arrangement. 716 F. Supp. at 694. And Defendants' liability arises because they terminated class members' employment before the end of the only period of employment they ever disclosed.

---

[2]Class members' claims for unpaid wages for the remainder of their contract terms differ from and are stronger than the workers' claims in *Reyes—*for at least four independent reasons. First, the express "minimum work guarantee" afforded to migrant workers by Wisconsin law gives class members in this case a state-law right to wages through the end of the contract term that the plaintiffs in *Reyes—*who had worked in Illinois, not Wisconsin—did not have. Second, because the AWPA incorporates state-law protections, Wisconsin's minimum work guarantee also gives class members in this case broader protection *under the AWPA* than was available to the plaintiffs in *Reyes*. Third, the undisputed evidence in this case establishes what the plaintiffs in *Reyes* did not establish—that if workers had been told before they left their homes that there was only enough work for a few weeks, they would not have accepted the job. PSUF ¶ 109 (ECF No. 68). Compares *Reyes,* 495 F.3d at 406 ("Yet plaintiffs do not assert that … a guaranteed number of hours is essential"). Fourth, unlike class members in this case, the plaintiffs in *Reyes* had no writing to point to defining the length of the contracted-for period of employment; they were not H-2 workers; they could not support their claim with representations made by their employer in an H-2 labor certification application.

### C. Defendants' attempted parsing of the wording of the H-2B labor certification application form is a red herring.

Next, Defendants invite the Court to scrutinize the language of the H-2B labor certification application form and, in particular, its use of the phrases "period of intended employment" and "validity period." Ds' Brief at 7 and 10. Their focus on the wording of the document is a red herring.

First, as we have repeatedly made clear, there is no claim in this case either that: (a) a labor certification application, standing alone, constitutes a contract; or (b) the obligation to employ WMLA and AWPA covered workers for a defined period is necessarily created by statements in an H-2B application. Employment for a term is required by the WMLA and the AWPA. The labor certification application form simply provides one opportunity to disclose the length of the required period of employment—and absent any other written disclosure of the duration of employment, it is controlling.

Second, Defendants' efforts to argue that at-will employment is somehow suggested by the wording of the H-2B labor certification application is both acontextual and wrong. In making this argument, Defendants point to two phrases used on the labor certification application—"period of intended employment" and "validity period." This is again a misplaced attempt by Defendants to defend claims that arise under the AWPA and the WMLA by reference to H-2B program requirements. But in addition, their focus on the wording of the H-2B labor certification application both misconstrues that wording and ignores a binding U.S. Department of Labor regulation, in force in 2010 and 2011, titled "Obligations of H-2B Employers," which both: (a) addresses the narrow circumstances under which workers' employment can terminate prior to the end of the date of employment specified in the employer's labor certification application, and (b) affirmatively underscores that H-2B workers are *not* at-will employees—by using "for cause"

language that is absolutely inconsistent with the concept of employment at will. The text of the regulation states:

> Upon the separation from employment of the H-2B worker(s) employed under the labor certification application, if such separation occurs prior to the end date of employment specified in the application, the employer will notify the Department and DHS in writing … of the separation from employment not later than 2 work days after such separation is discovered by the employer. An abandonment or abscondment shall be deemed to begin after a worker fails to report for work at the regularly scheduled time for 5 consecutive working days without the consent of the employer. ***Employees may be terminated for cause.*** (Emphasis added).

20 C.F.R. § 655.22(f) (2010) ("Obligations of H-2B Employers"). The regulation identifies two narrow circumstances under which employment could terminate "prior to the end date of employment specified in the application": namely, in the event of (1) the employee's abandonment or abscondment or (2) terminations "for cause." The statement in this regulation that "Employees may be terminated *for cause*" is flatly inconsistent with Defendants' suggestion that H-2B employment is presumptively employment at will. By definition, at-will employees can be discharged with *or without* cause. If H-2B employees were presumptively terminable at-will, then the language of 20 C.F.R. § 655.22(f), allowing terminations "for cause," would be rendered inoperative, superfluous, void or insignificant. Where employment is terminable at will, "cause" is irrelevant. Defendants' arguments ignore and are inconsistent with the "for cause" language in 20 C.F.R. § 655.22(f). *See United States v. Grandberry,* 730 F.3d 968, 981-82 (9th Cir. 2013) (applying the canon that statutes and regulations should be construed to avoid rendering any provision inoperative, superfluous, void or insignificant).

**D. Defendants attempted parsing of the WMLA ignores and contradicts Wis. Admin. Code § DWD 301.06(8).**

Wisconsin law independently rejects employment at will for covered migrant workers—by requiring that every worker must receive a written, "minimum work guarantee." Wis. Admin.

9

Code § DWD 301.06(8). This guarantee of a minimum term of employment for every covered worker—cannot be reconciled with employment at will. It is the absolute antithesis of employment at will. Confronted with this reality, Defendants have elected to substantially ignore this statutory minimum work guarantee. This is effectively a concession of defeat on their part. Defendants assign only a single sentence in their brief to discussing the WMLA's requirement that every contract with a migrant worker employed in Wisconsin must explicitly specify the duration of employment. In that sentence, they state that: "[T]he WMLA only requires a work agreement with 'approximate' beginning and ending dates." Brief at 11 (ECF No. 125). Their statement is a reference to Wis. Stat. § 103.915, which mandates that every migrant worker must be employed pursuant to a written work agreement, which "shall include":

> A statement of the place of employment, kind of work available, applicable wage rates, pay period, approximate hours of employment including overtime applicable, *term of employment including approximate beginning and ending dates,* kind of housing and any charges in connection therewith, cost of meals if provided by the employer, transportation arrangements, the names of all persons in the family employed if a family is employed and any other charges or deductions from wages beyond those required by law.

Wis. Stat. 103.915(4)(a) (emphasis added). Defendants' reliance on the italicized language in the passage quoted above is disingenuous. As we pointed out in the opening brief (p. 20), this provision has been implemented by regulations that carry the force of law and which strictly limit how "approximate" the beginning and ending dates can be. Wis. Admin. Code § DWD 301.06(8). Under that regulation, the actual beginning date of employment must be no more than 10 days later than the date specified in the work agreement; the actual date of termination must be no earlier than 7 days before the date specified in the work agreement; and the time period between those dates constitutes "the minimum work guarantee." *Id.* Defendants' suggestion in

their brief that the WMLA only requires a work agreement with "approximate" dates is incorrect, and ignores and contradicts Wis. Admin. Code § DWD 301.06(8).

### E. No cognizable justification or defense exists for Defendants' premature termination of class members' employment.

Both the AWPA and the WMLA allow for a narrowly drawn affirmative defense to breaches of a working arrangement or work agreement—in the rare event that performance would have been impossible or seriously impracticable. But as we explained in the opening brief (pp. 27-36), that defense is, as a matter of law, unavailable to the Defendants here, for several independently dispositive reasons, including the following:

- Defendants have pleaded no such affirmative defense, and have therefore waived it. *Castro v. Chic. Housing Authority*, 360 F.3d 721, 735 (7th Cir. 2004); *Operating Engineers Local 139 Health Benefit Fund v. Lake States Indus. Servs., Inc.*, No. 05-C-0020, 2005 WL 1563332 * 2 (E.D. Wis. June 30, 2005); and

- The wage increase for H-2B workers announced (but never implemented) by the federal government in 2011 provides, as a matter of law, an insufficient basis for excusing Defendants' performance. Increased costs attributable to changes the regulatory environment often make performance more economically burdensome or unattractive; but they do not excuse performance. *N. Ind. Public Serv. Co. v. Carbon County Coal* Co., 799 F.2d 265, 278 (7th Cir. 1986); *Neal-Cooper Grain Co. v. Texas Gulf Sulphur Co.*, 508 F.2d 283, 293-94 (7th Cir. 1974). Opening Brief at 28-33(ECF No. 116).

- The crop failure in 2010 likewise provides, as a matter of law, an insufficient basis for excusing Defendants' performance. *Cruz v. Vel-A-Da, Inc.*, 1993 WL 658968 * 4 (N.D. Ohio June 9, 1993); Opening Brief at 33-36 (ECF No. 116).

In response to these points, Defendants attempt an ostrich defense, burying their heads in the sand. The argument section of their brief contains no legal argument addressing these points. They respond with a single sentence, stating: "Further, GLK had cause to terminate the workers' employment … the much higher than anticipated wage rates to be imposed by the Federal Government in 2011." Ds' Brief at 11 (ECF No. 125). Defendants do not dispute—or address— their waiver. They do not dispute—or address—the proposition that, even if they had not waived

the defense, it could not succeed—because, as the Seventh Circuit has noted, government regulation is a pervasive factor in the economy, so that performance cannot be excused simply because it has become economically burdensome or unattractive due to regulatory changes. *N. Ind. Public Serv. Co. v. Carbon County Coal Co.,* 799 F.2d 265, 278 (7th Cir. 1986); *Neal-Cooper Grain Co. v. Texas Gulf Sulphur Co.*, 508 F.2d 283, 293-94 (7th Cir. 1974). They do not dispute—or address— the proposition that crop failure provides an insufficient basis for any defense in this case, given: (a) Defendants' knowledge of the crop problems *before* class members started work (PSUF ¶¶ 103-106); (b) Defendants' superior ability to insure against the risk of crop failure; and (c) Defendants' demonstrably opportunistic behavior. *See* Opening Brief at 33-35 (ECF No. 116).

Defendants have elected to put all their eggs in one basket—arguing that class members were employees at will, subject to termination at any time, for any reason. They present no legal authority supporting a "cause" defense. And they have no legally cognizable or viable "cause" defense. *Cf. Maxwell v. KPMG, LLP*, No. 07-2819, 2008 WL 6140730, at *2 (7th Cir. Aug. 19, 2008) (" When a litigant utterly fails to address or challenge … grounds for ruling against him, his arguments can fairly be called lacking in substance" ). Any attempt to assert such a defense must either be deemed waived, or, as an alternative, denied for lack of merit.

**II. Judgment should also be entered for class members on Count VI, for common law breach of contract.**

With respect to Count VI, for breach of contract, we made three main points in the opening brief. Opening Brief at 36-37 (ECF No. 116). First, every employment relationship is at heart a contractual relationship. Opening Brief at 36. Second, in every contractual relationship, laws in force at the time enter and become part of the contract—including, here, the requirements of the WMLA and the AWPA. *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S.

117, 130 (1991); *Dairyland Greyhound Park, Inc. v. Doyle*, 295 Wis. 2d 1, 48-49 (Wis. 2006). Third, this doctrine of incorporation means that to the same extent that the WMLA and the AWPA have been violated, entitling class members to judgment in their favor on Counts III and VII, class members are also, therefore, entitled to judgment on Count VI, for breach of contract—and for the very same reasons.

In their response, Defendants have disputed none of these propositions. Defendants seem to make only one argument specific to Count VI, for breach of contract. They argue that "The H-2B applications were submitted by GLK to the Department of Labor, not to the Plaintiffs." Ds' Brief at 20. That point, however, avails them nothing. The whole point of the rule that relevant laws existing at the time and place of the making of a contract enter into and become a part of every contract is that no discussion or meeting of the minds on such points is needed. The incorporation of the WMLA and the AWPA into GLK's contract with every class member was automatic, regardless of whether the parties discussed it— indeed, regardless of whether either party was even aware of it. That is what the incorporation doctrine recognized in *Norfolk* and *Dairyland* means. The parties here had no discretion to lawfully contract for employment at will or to omit to contract for employment for a definite duration, explicitly or implicitly, consciously or unconsciously.

### III. This Court's March 24, 2015 ruling addressing Defendants' liability for reimbursement of "in country" expenses under the FLSA likewise resolves class members' similar claims under the AWPA.

On March 24, 2015, this Court addressed class members' claims for reimbursement of "in country" expenses under the FLSA under Count I. The Court ruled in favor of class members with regard to transportation and visa expenses. As we explained in our opening brief, because violations of the FLSA constitute violations of the AWPA, this adjudication of claims under the

13

FLSA likewise resolves all similar issues under the AWPA. Opening Brief at 23-24; *Smith v. Bonds*, 1993 WL 556781, *8 (E.D.N.C. Sept. 28, 1993) ("The court's finding of liability on plaintiffs' FLSA claims *ipso facto* leads to the conclusion that defendants . . . also violated Section 1822(a) [of the AWPA]."); see also *Eller & Sons,* 581 F. Supp. 2d at 1319 ("Defendants violated § 1822 of the AWPA by … making deductions for its own benefit that reduce employee pay below the mandated prevailing wage.")

In their response to this motion, Defendants present no argument distinguishing reimbursement obligations owed to the workers in this case under the AWPA from the reimbursement obligations owed to workers under the FLSA, as to which this Court has already ruled. They do not dispute that violations of the FLSA are *ipso facto* violations of the AWPA. With one exception, they simply rehash arguments addressed and rejected by the Court in its March 24, 2015 ruling. The exception is immaterial: Defendants refer to a demonstrative chart comparing H-2B regulations issued in 2009 and an Interim Final Rule issued on April 29, 2015. Ds' Brief at 19. Even if that demonstrative chart were competent evidence of the matters it purports to summarize, it could have no conceivable bearing on this motion—or on the Court's March 24, 2015 ruling.

The issue addressed by the Court on March 24th was reimbursement of travel, visa and other expenses under the FLSA. The issue before the Court now is reimbursement of those expenses under the AWPA (through its incorporation of the protections of the FLSA). The DOL chart, by contrast, summarizes reimbursement obligations under H-2B regulations. There is no connection. Indeed, making exactly this point, in addressing "visa and visa-related expenses," the chart states that obligations not independently addressed by H-2B regulations "may be covered under FLSA in first workweek"—acknowledging that obligations under the FLSA and the

AWPA exist, and are enforceable, independently of H-2B regulations. *Eller & Sons,* 581 F. Supp. 2d at 1309.

Defendants' citation to this chart is, once again, simply a misguided attempt to change the subject— by pretending, again, that the issues and claims in this case can be resolved with reference to H-2B regulations, rather than under the WMLA, AWPA and FLSA. There is no claim or cause of action in this case for violation of H-2B rules or regulations. The claims in this case are for violation of the WMLA, AWPA, FLSA, the Wisconsin Living Wage Law, and for common law breach of contract.[3]

**IV.     Judgment should be entered for class members on Count VIII for reimbursement of "in country" expenses under Wisconsin Living Wage Laws.**

As Defendants concede, "[i]n the absence of specific state-law statutory or regulatory authority, Wisconsin courts look generally to the interpretation of the FLSA in applying Wisconsin's wage law statutes." Ds' Brief at 23. This Court has already adjudicated Defendants' liability for visa and travel expenses under the FLSA, in its March 24, 2015 ruling. Given the preference for construing Wisconsin's Living Wage Laws to be consistent with the FLSA, judgment on Count VIII should mirror this Court's FLSA ruling on Count I.

---

[3] In another effort to shift the focus of this case from the WMLA, AWPA and the FLSA, which form the basis for the claims at issue on this motion, to H-2B regulations, which do not, Defendants spend three pages on a tangent, discussing the Eleventh Circuit's, and a Florida district court's rulings rejecting the DOL's authority to engage in H-2B rule making. Notably, Defendants omit to mention that the Third Circuit has taken a different view. *Louisiana Forestry Ass'n, Inc. v, Secretary U.S. Dept. of Labor,* 745 F.3d 653 & n.17 (3rd Cir. 2014).

**CONCLUSION**

For all the reasons stated above, Class Members request the Court grant their motion for partial summary judgment on Counts III, VI, VII and VIII and deny Defendants' motion on the same counts.

Dated: June 5, 2015

                                               s/ Joshua Karsh
                                               One of Plaintiffs' Attorneys

| | |
|---|---|
| Matthew J. Piers | Ali Beydoun |
| Joshua Karsh | Attorney for Plaintiffs |
| José J. Behar | Farmworker Justice |
| Attorneys for Plaintiffs | 1126 16th Street, N.W., Suite 270 |
| Hughes Socol Piers Resnick & Dym, Ltd. | Washington, D.C. 20036 |
| 70 W. Madison Street, Suite 4000 | (202) 293-5420 ext. 308 |
| Chicago, IL 60602 | E-mail: abeydoun@farmworkerjustice.org |
| Telephone: (312) 580-0100 | |
| Fax: (312) 580-1994 | |
| E-mail: mpiers@hsplegal.com | |
|         jkarsh@hsplegal.com | |
|         jbehar@hsplegal.com | |

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on counsel listed below by CM/ECF on June 5, 2015.

Michael Aldana, Esq.
Quarles & Brady LLP
411 E. Wisconsin Ave., Suite 2040
Milwaukee, WI 53202
Michael.aldana@quarles.com

                 s/ Joshua Karsh
                 One of Plaintiffs' Attorneys