IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALEJANDRO JURADO JIMENEZ, et al.,

    Plaintiffs,

    v.    Case No. 12-cv-209

GLK FOODS, LLC and RYAN A. DOWNS,

    Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT ON COUNTS III, VI AND VIII OF
PLAINTIFFS' SECOND AMENDED COMPLAINT**

## I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT III OF THE SECOND AMENDED COMPLAINT.

Plaintiffs, in their response brief, argue that liability under the FLSA for failure to reimburse certain pre-travel expenses during the first week of work "leads to the conclusion that, to the same extent, Defendants also violated AWPA." (Plaintiffs' Brief, pp. 1-3; Dkt. 123). For support, they largely rely on this Court's decision on cross-motions for summary judgment on Count I (Dkt. 119), arguing that the Court's analysis on the FLSA claims in Count I control the outcome here. But far from establishing the law of the case on AWPA claims (as Plaintiffs seem to suggest), this Court noted with deep skepticism the theories that AWPA and the H-2B program required reimbursement of the types of expenses sought by Plaintiffs, given the structural differences between the H-2A and H-2B programs. But at that point, the Court was solely rendering a decision on Plaintiffs' Count I FLSA claims, and reserved for another day the argument on whether AWPA required employers to reimburse workers for the various pre-

employment expenses sought by Plaintiffs. That day is here, and despite Plaintiffs' attempts to conflate FLSA and AWPA requirements, it is clear from both the statutory and regulatory structure of AWPA, reinforced by recent court rulings, that AWPA does not require such reimbursement.

### 1. Plaintiffs' Claims For Reimbursement of Pre-Employment Travel and Other Expenses Must Be Dismissed.

As noted in both Defendants' Brief in support of its motion for summary judgment, and in response to Plaintiffs' motion for summary judgment, nothing in the statutory or regulatory regime for the H-2B program expressly states that inbound travel expenses must be advanced or reimbursed by an employer of an H-2B worker. *See Castellanos-Contreras*, *supra*, 622 F.3d at 400 (noting the H-2B Program requires *outbound* travel expenses to be paid for H-2B workers under certain circumstances, but not inbound travel); *see also* 8 U.S.C. §1184(c)(5)(A) (requiring payment of outbound transportation costs in certain circumstances for H-2B workers). By contrast, inbound transportation costs are expressly required to be paid under certain circumstances for *H-2A* workers. *See* 20 C.F.R. §655.122(h) (requiring payment of inbound transportation costs in certain circumstances for H-2A workers).

These differences are significant, because the H-2 Program was specifically redesigned by Congress in 1986 to "separat[e] agricultural from non-agricultural workers in the administrative scheme." *See Sweet Life v. Dole,* 876 F.2d 402, 406 (5th Cir. 1989). Accordingly, the regulations governing the H-2A visa have historically contained a number of requirements designed to prevent the exploitation of H-2A workers that were not present in the H-2B regulations. For instance, the H-2A regulations specify that the agricultural job offer must include free housing, meals or cooking facilities, guaranteed employment for at least 3/4 of a

contract period, and reimbursement for the employee's transportation costs. *See* 20 C.F.R. §655.122.

Historically, the regulations governing H-2B workers contain no such requirements. As noted above, no law or regulation specifically provides that fees for the employee side of the visa application process must be paid by the employer. *See* 22 C.F.R. §40.1(l)(1) (requiring non-immigrant visa applicants, such as Plaintiffs, to submit processing fees when they apply for visas). On the other hand, an H-2B employer is required to pay its own fees for the application to hire H-2B workers. *See* 8 C.F.R. §§103.7(a) and (b) (requiring that a U.S. employer submit certain forms and filing fees to become an H-2B visa sponsor). These regulations thus provide that each party will bear his or its respective costs associated with the H-2B Program.

Congress specifically addressed transportation of H-2B guest workers and prescribed a single circumstance in which the employer would be responsible for transportation costs - when an employer returns an H-2B worker to his/her home country before the end of the certified period of employment. In statutory construction, the specific controls the general and statutory language is to be given effect over non-binding interpretations. *See Radzanower v. Touche-Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989 (1976); *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S.Ct. 2474 (1974); *Varity Corp. v. Howe*, 516 U.S. 489, 511, 116 S.Ct. 1065 (1996) (no conflict is required, specific provisions control general). Thus it is clear from the statutory framework that Defendants were not required, under AWPA or state law, to provide reimbursement of travel, visa, and recruitment expenses of H-2B workers.

As further noted in Defendants' brief in opposition to Plaintiffs' Motion for Summary Judgment (pp. 13-19), proposed Department of Labor regulations and interpretations which have attempted to expand the scope of the H-2B regulations beyond Congress's clear intent and to

impose obligations on employers clearly never intended by Congress have been recently and repeatedly thwarted by courts.

In 2012, the DOL issued a final rule on the H-2B Program attempting to amend its regulations and, among other things, extending the inbound transportation reimbursement requirements to the H-2B Program. *See Temporary Non-agricultural Employment of H-2B Aliens in the United States*, 77 Fed. Reg. 10038 (Feb. 21, 2012) (codified at 20 C.F.R. §655.18) ("2012 Final Rule"). Among other things, the 2012 Rule decreased the maximum number of months an employer may employ an H-2B worker from ten to nine; r*equired employers to guarantee that H-2B employees work at least seventy-five percent of the hours certified in any twelve-week period* and, if not, pay the employees the difference for the time not worked; required employers to pay non-H-2B workers wages and benefits at least equal to those paid to H-2B employees if the two perform "substantially the same work;" and required employers to pay the round-trip airfare and subsistence costs of H-2B employees. *Id.* at 10039. However, DOL's 2012 H-2B program rule was enjoined in federal court, with the Eleventh Circuit Court of Appeals upholding a district court's injunction and holding that the rule was beyond DOL's legal authority, on the basis that Congress had not extended rule making authority to the DOL for H-2B regulations. *Bayou Lawn and Landscape Services, et al. v. Solis et al.*, 713 F.3d 1080, 1084-85 (11th Cir. 2013).

In *Bayou*, the DOL attempted to defend its efforts at rulemaking on several bases, all rejected by the Eleventh Circuit. Notably, DOL argued that the section of the Immigration and Nationality Act from which the program draws its name – 8 U.S.C. §§1101(a)(15)*(*H)(ii)(b) – granted it indirect authority to promulgate the rules. The Eleventh Circuit, however, distinguished this provision from the immediately preceding statutory section – (H)(2)(A) –

4

which expressly grants DOL rulemaking authority over the agricultural worker H-2A program. "The absence of a delegation of rulemaking authority to DOL over the non-agricultural H-2B program in the presence of a specific delegation to it of rulemaking authority over the agricultural worker H-2A program persuades us that Congress knew what it was doing when it crafted these sections." *Id.*

Similarly, the court rejected the DOL's argument that the "text, structure and object" of the law evidenced a congressional intent that DOL exercise rulemaking authority over the H-2B program. The court noted that agency authority flows from express delegations from Congress. *Id.* Since that injunction was issued, these rules have never been implemented.

On remand, the District Court for the Northern District of Florida, granted summary judgment on behalf of the plaintiffs, vacating and permanently enjoining the DOL H-2B rules, finding that DOL lacked legislatively delegated authority to issue the rules. *Bayou Lawn & Landscape Services v. Perez*, No. 3:12cv183, 2014 WL 7496045 (N.D. FL. 2014). In its Order, the Court found that the INA itself contains no express delegation of authority to DOL. Comparing Congress's express grant of rulemaking authority to DOL with respect to the H-2A program, the Court found that Congress plainly never granted DOL such authority under the H-2B program. *See Bayou Lawn*, 2014 WL 7496045, at *4-*5.

The District Court also found that the Wagner-Peyser Act, 29 U.S.C. § 49, *et seq.*, likewise conferred no rulemaking authority on DOL with respect to the H-2B program because the statute did not apply to the H-2B program. *See id.* at *5. Finally, the Court addressed the Third Circuit Court of Appeals contrary decision in *Louisiana Forestry Ass'n, Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653 (3d Cir. 2014), and deemed the case distinguishable, specifically rejecting DOL's argument that its rulemaking authority under the H-2B program derives from its

consultative role under 8 U.S.C. § 1184(c)(1), which DOL had argued in both *Bayou Lawn* and *Louisiana Forestry*. Accordingly, the Court concluded that "DOL lacks authority to engage in legislative rulemaking under the H-2B program," and vacated the DOL's 2012 Rule and permanently enjoined its enforcement. *Id*.

Immediately afterwards, a new suit was filed in the Northern District of Florida, challenging DOL's enforcement of its 2008 H-2B regulations. *Perez v. Perez*, 3:14-cv-00682 (N.D. FL. 2015). The Plaintiff argued that because DOL's 2008 regulations were issued pursuant to the same claim of authority deemed invalid in *Bayou Lawn*, DOL's 2008 regulations are equally invalid. In its decision on March 4, 2015, the Court noted that the DOL's defenses in the new *Perez* case as to its rulemaking authority were the same which were considered and rejected in *Bayou Lawn*. Accordingly, and for the reasons set forth in its decision in *Bayou Lawn*, the Court also found that DOL lacked authority to enact the 2008 regulations at issue, such that Perez was entitled to judgment as a matter of law and permanently enjoined the DOL from enforcing its 2008 regulations. It subsequently stayed its order, pending an appeal. As a result of that order, the DOL's prohibition on the collection of recruitment fees, first found in the 2008 regulations, was also found invalid, as well as the requirement that employers notify the Department of Homeland Security if the H-2B worker is terminated prior to the end of the certified period of employment. 20 CFR Part 655.

Despite the DOL's efforts in the last few years to impose new liabilities on H-2B employers, it is clear that it does not have the authority to promulgate such regulations and thus, any interpretation seeking to impose such liabilities on employers is misguided. The 2012 regulations attempted to shift pre-employment and transportation costs and require guaranteed employment for H-2B workers. Those regulations have been found invalid, and the Plaintiffs'

6

attempt here to apply an interpretation of AWPA consistent with those now invalid regulations is baseless.

Accordingly, Plaintiffs' claims for reimbursement of pre-employment expenses, alleged recruitment fees and for pay for a guaranteed or for the entire certified period of employment fail as a matter of law. Thus, for all of the reasons stated in Defendants' initial brief in support of its motion for summary judgment and in its response brief to Plaintiffs' motion for summary judgment (incorporated herein by reference), Defendants' motion for summary judgment must be granted.

### 2. The AWPA Does Not Require GLK To Employ Plaintiffs and Class Members For The Entire Certified Period of Employment.

Plaintiffs' brief response to Defendants' motion for summary judgment on Plaintiffs' allegations that AWPA guarantees employment for a defined term is similarly unpersuasive, in light of the structure of the statute and H-2B regulations. Defendants' briefs in support of their motion for summary judgment and in response to Plaintiffs' motion for summary judgment on this issue are incorporated herein by reference.

The 2008 H-2B regulations do not speak directly to whether an H-2B job order can form the basis of an actionable breach of contract claim between a worker and his or her employer. Plaintiffs' arguments that H-2B petitions or job orders constitute contracts also heavily rely upon cases decided before the DOL's issuance of the H-2A and H-2B rules referenced above; however, the holdings of these cases were never incorporated into the most recent H-2B regulations, and as noted above, which have been struck down. *See, e.g., Western Colorado Fruit Grower v. Marshall*, 473 F. Supp. 693, 696 (D. Colo. 1979)(a "clearance order is essentially an offer for a contract of employment"); *see also* S*alazar v. Presidio Valley Farmers Assn.*, 765 F.2d 1334, 1341-1342 (5th Cir. 1985).

7

QB\35377811.1
Case 1:12-cv-00209-WCG   Filed 06/05/15   Page 7 of 11   Document 130

As noted in Defendants' principal brief, the few cases which have substantively passed upon the issue of whether H-2B applications or job orders create contracts have held that they do not. *See Garcia v. Frog Island Seafood, Inc.*, 64 F.Supp.2d 696 (E.D.N.C. 2009). The *Garcia* holding is consistent with dicta in a 2007 case, in which another federal district court observed that "[a]n H-2B worker . . . has no employment contract or work guarantee." *Olivera-Morales v. Intern. Labor Mgmt. Corp.*, 246 F.R.D. 250 (M.D.N.C. 2007).

Moreover, and as previously noted, the DOL acknowledged the impact of the *Garcia* case in its Notice of Proposed Rulemaking *for its now invalid H-2B rules*, when it observed:

> Few legal options exist for H-2B workers who feel their work contracts have been violated. An initial barrier to legal recourse is purely practical: H-2B workers are not eligible for services from federally-funded legal aid programs. As a result, most H-2B workers have no access to lawyers or information about their legal rights. Furthermore, the H-2B job order, which specifies the terms and conditions of employment, including work hours, may not be enforceable through private litigation. *See Garcia v. Frog Island Seafood, Inc*., 644 F.Supp.2d 696, 716-18 (E.D.N.C. 2009) (holding H-2B job orders would not be treated as enforceable contracts). A guaranteed number of hours, enforceable by WHD, may well be the only protection H-2B workers have if employers misrepresent the amount of work the worker will actually be provided. 76 Fed. Reg. 15130-01 (March 18, 2011).

Accordingly, Plaintiffs' claims for pay for a guaranteed employment for the entire certified period of employment fail as a matter of law and Count III must be dismissed as to those claims.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT VI - BREACH OF CONTRACT.

Plaintiffs' Response Brief on this Court reiterates their arguments made in support of their motion for summary judgment on this count. But as noted in Defendants' principal brief, and in their brief in opposition to Plaintiffs' motion, this claim is not supported by either the facts or the law. Defendants' briefs in support of their motion for summary judgment and in response to Plaintiffs' motion for summary judgment on this issue are incorporated herein by reference.

Under Wisconsin law, a valid contract requires an offer, acceptance and consideration. *Briggs v. Miller,* 176 Wis. 321, 325, 186 N.W.2d 163 (1922). Offer and acceptance exist when the parties mutually express assent, and consideration exists if the parties manifest an intent to be bound to the contract. *Gustafson v. Physicians Ins. Co.,* 223 Wis. 2d 164, 173, 588 N.W.2d 363 (Ct. App. 1998). Plaintiffs contend that GLK's H-2B application are the basis for a contract between the workers and GLK.

No contract of a specific duration was formed and GLK's decision to terminate the workers was within its rights under the AWPA and under state law. Wisconsin has long adopted the doctrine of employment at will, allowing employers or employees to terminate without cause at the will of either party. *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 572, 335 N.W.2d 834 (1983). To the extent the Plaintiffs rely on the H-2B application as the basis for the contract terms, it is clear from the wording of those forms that the certified period of employment was just that – the period in which the worker was authorized or certified to work. As demonstrated above, GLK's 2010 and 2011 Applications for Temporary Employment Certification did not, by its own terms, create a contract for a defined period of time.

The applications refer to a "Period of *Intended* Employment" or "validity period." In the Employer Declaration portion of the application, there is no declaration or representation as to a guaranteed, minimum or defined period of employment. To the contrary, the application specifically contemplates employment for periods shorter than the certified or valid period of employment. On page 7, paragraph #10 states:

> "Unless the H-2B worker is being sponsored by another subsequent employer, the employer will inform H-2B workers of the requirement that they leave the U.S. at *the end of the period certified by the Department or separation from the employer, whichever is earlier*, as required under § 655.35, and *that if dismissed by the employer prior to the end of the period*, the employer is liable for return transportation. " (emphasis supplied).

9

The declaration in paragraph #11 similarly contemplates work for less than the entire certified period: "Upon the separation from employment of any foreign worker(s) employed under the labor certification application, *if such separation occurs prior to the end of the period specified in the application*, the employer will notify the Department and DHS in writing …." (emphasis supplied). Nowhere in either application does GLK guarantee a specific period of employment. Thus, the 2010 and 2011 applications cannot form the basis of a contract claim for a defined period of employment, as they lack the fundamental term upon which such a contract could be formed.

Moreover, as demonstrated above, AWPA does not guarantee H-2B workers of a certain term of employment and thus there is no statutory right which could somehow be construed to create a contract for a defined period of employment. *Garcia v. Frog Island Seafood, Inc.*, 64 F.Supp.2d 696 (E.D.N.C. 2009).

Similarly, Plaintiffs have no evidence that Defendants or anyone acting on their behalf promised them reimbursement for pre-employment expenses; to the contrary, they testified no one made such promises to them. Nothing in the H-2B petitions refers to, let alone requires or promises reimbursement of pre-employment expenses by the employer. And as demonstrated above, no law requires reimbursement of such expenses. Accordingly, Defendants are entitled to summary judgment on Count VI.

### III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT VIII: (2010 AND 2011 CLASSES)

Count VIII alleges GLK violated Wis. Stat. §§ 104.02, 104.03, 109.03(1) as a result of GLK's alleged failure to reimburse the 2010 and 2011 Plaintiffs and Class Members for recruitment, immigration, travel and other expenses that Plaintiffs and Class Members incurred primarily for the benefit of Defendants. This claim is based on the same facts as Plaintiffs'

10

QB\35377811.1

Case 1:12-cv-00209-WCG   Filed 06/05/15   Page 10 of 11   Document 130

claims in Counts III and VI - that Plaintiffs incurred recruitment, travel and immigration expenses primarily for the benefit of the Defendants. Plaintiffs' response to Defendants' motion for summary judgment on this count reiterates their arguments made in support of their own motion for summary judgment on this count. Defendants' briefs in support of their motion for summary judgment and in response to Plaintiffs' motion for summary judgment on this issue are incorporated herein by reference and Defendants will not repeat those arguments here. For all of the reasons stated above and in Defendants' brief in opposition to Plaintiffs' motion for summary judgment, Defendants are entitled to summary judgment on this Count VIII.

## CONCLUSION

For all of the above stated reasons, Defendants' motion for summary judgment on Counts III, VI and VIII should be granted and those counts dismissed as discussed above.

Dated: June 5, 2015.

        Michael Aldana
        State Bar No. 1020233
        Sean M. Scullen
        State Bar No. 1034221


        s/Michael Aldana
        QUARLES & BRADY LLP
        411 East Wisconsin Avenue
        Suite 2400
        Milwaukee, WI 53202-4426
        (414) 277-5000
        Attorneys for Defendants

Direct inquires to:

Michael Aldana
(414) 277-5151
michael.aldana@quarles.com